**This Declaration Page is attached to and forms part of Certificate Provisions.**

| | |
|---|---|
| Previous Account No.   765541 | Account ID 868399 |
| Name and address of the Insured | Producer |
| Dupuy Storage & Forwarding, LLC | CRC Group |
| P.O. Box 52381 | 32 Old Slip 4th Floor |
| New Orleans, LA 70152 | New York, NY 10005 |

| Effective From | 07/01/2021 | To | 07/01/2022 | ; |
|---|---|---|---|---|

Both days at 12:01 a.m. standard time at the Insured's mailing address.

Insurance is effective with: Insurer(s) as stated on Form AR CA - Contract Allocation Endorsement

**This Policy consists of the following coverage parts for which a premium is indicated - This premium may be subject to adjustment.**

COMMERCIAL PROPERTY COVERAGE PART

| | Certificate/Policy No. | | Premium |
|---|---|---|---|
| Certain Underwriters at Lloyds, London | AMR-56365-05 | Property | $ _____ |
| One Lime Street, London EC3M 7HA | | TRIA | $ _____ |
| c/o Thompson Heath and Bond Limited, 107 Leadenhall Street, London  EC3A 4AF | | | |
| Indian Harbor Insurance Company | AMP7531173-05 | Property | $ _____ |
| 505 Eagleview Blvd., Suite 100; Dept: Regulatory | | TRIA | $ _____ |
| Exton, PA 19341-1120 | | | |
| QBE Specialty Insurance Company | MSP-23280-05 | Property | $ _____ |
| 88 Pine Street, 16th Floor, Wall Street Plaza | | TRIA | $ _____ |
| New York, NY 10005 | | | |
| Steadfast Insurance Company | CPP1009980-05 | Property | $ _____ |
| 1299 Zurich Way | | TRIA | $ _____ |
| Schaumburg, IL 60196 | | | |
| General Security Indemnity Company of Arizona | 10T029659-06889-21-05 | Property | $ _____ |
| 26 Liberty Street, Suite 5400 | | TRIA | $ _____ |
| New York, NY 10005 | | | |
| United Specialty Insurance Company | USI-19829-05 | Property | $ _____ |
| 1900 L. Don Dodson Drive | | TRIA | $ _____ |
| Bedford, TX 76021 | | | |
| Lexington Insurance Company | LEX-014709549-05 | Property | $ _____ |
| 99 High Street | | TRIA | $ _____ |
| Boston, MA 02110 | | | |
| HDI Global Specialty SE | HAN-16628-05 | Property | $ _____ |
| Roderbruchstrasse 26, 30655 Hannover, Germany | | TRIA | $ _____ |
| Attn: Ralph Beutler | | | |
| Old Republic Union Insurance Company | ORAMPR002325-04 | Property | $ _____ |
| 370 North Michigan Avenue | | TRIA | $ _____ |
| Chicago, IL 60601 | | | |
| GeoVera Specialty Insurance Company | GVS-14140-00 | Property | $ _____ |
| 1455 Oliver Road | | TRIA | $ _____ |
| Fairfield, CA 94534 | | | |
| Transverse Specialty Insurance Company | TSAMPR0003612-00 | Property | $ _____ |
| 155 Village Boulevard, Ste 205 | | TRIA | $ _____ |
| Princeton, NJ 08540 | | | |
| | | Inspection Fee | $ _____ |
| | | **Total** | $ _____ |

Minimum Earned Premium =   $

| Dated | 07/30/21 | By | _signature_ |
|---|---|---|---|

Correspondent  and/or  Program  Manager  for  the  Company(ies)
AmRisc, LLC, 20405 SH 249, Suite 430, Houston, TX 77070

| State stamp if applicable | The Correspondent and/or Program Manager is not an Insurer hereunder and neither |
|---|---|
| CERTCO 01 19 | is nor shall be liable for any loss or claim whatsoever. |

EXHIBIT C

# SCHEDULE OF FORMS AND ENDORSEMENTS

Account No.                    NAMED INSURED
868399                         Dupuy Storage & Forwarding, LLC

### Forms and Endorsements

| | |
|---|---|
| CERTCO 01 19 | DECLARATION PAGE |
| FORMS SCHEDULE | SCHEDULE OF FORMS AND ENDORSEMENTS |
| CHANGE END PAGE | POLICY ENDORSEMENT PAGE |
| AR CA 03 18 | CONTRACT ALLOCATION ENDORSEMENT |
| COMPASS CCP 01 17 | CAT COVERED PROPERTY ENDORSEMENT |
| COMPASS SUP DECL 04 18 | COMPASS SUPPLEMENTAL DECLARATIONS |
| COMPASS 04 18 | COMPASS COMMERCIAL PROPERTY FORM |
| AR Compass Change  AR EP 04 20 | COMPASS CHANGE - EARNED PREMIUM ENDORSEMENT |
| AR Compass Change PCDE 02 20 | COMPASS CHANGE - PROPERTY CYBER AND DATA ENDORSEMENT |
| LLOYDS SOS 10 19 | LLOYDS OF LONDON AMENDATORY ENDT |
| XL SOP 01 18 | INDIAN HARBOR INSURANCE COMPANY AMENDATORY ENDT |
| PN CW 01 0719 | FRAUD NOTICE |
| IL-2002 12-20 | QBE SERVICE OF PROCESS ENDT |
| STF-CL-111-A CW 11.08 | STEADFAST INSURANCE COMPANY AMENDATORY ENDT |
| U-GU- 873-A CW 6.11 | ZURICH DISCLOSURE STATEMENT |
| U-GU- 874-A CW 6.11 | ZURICH DISCLOSURE NOTICE |
| U-GU-1041-A LMA3100 | OFAC NOTICE AND SANCTION LIMITATION CLAUSES |
| VRS COS SOS - 02 21 | VARIOUS COMPANIES SERVICE OF SUIT CLAUSES ENDT |
| AR CYBER 03 18 | CYBER SUITE COVERAGE |
| AR CYNS 08 14 | CALENDAR YEAR NAMED STORM DEDUCTIBLE |
| AR COMPASS SINKHOLE 04 18 | COMPASS SINKHOLE LOSS EXTENSION |
| AR TERR 07 20 | TERRORISM ENDORSEMENT |
| LSW1667A 01.01.10-LA SLN 11.13 | LOUISIANA NOTICES |
| AR CAC 01 20 | CONTACT AND COMPLAINTS NOTICE |
| AR TRIA EXCL 03 21 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM ENDT |

### Additional Miscellaneous Forms

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 1

This endorsement, effective on _____07/01/2021_____, at 12:01 A.M. standard time, forms a part of:

Account No.    868399

| | |
|---|---|
| Certain Underwriters at Lloyds, London | AMR-56365-05 |
| Indian Harbor Insurance Company | AMP7531173-05 |
| QBE Specialty Insurance Company | MSP-23280-05 |
| Steadfast Insurance Company | CPP1009980-05 |
| General Security Indemnity Company of Arizona | 10T029659-06889-21-05 |
| United Specialty Insurance Company | USI-19829-05 |
| Lexington Insurance Company | LEX-014709549-05 |
| HDI Global Specialty SE | HAN-16628-05 |
| Old Republic Union Insurance Company | ORAMPR002325-04 |
| GeoVera Specialty Insurance Company | GVS-14140-00 |
| Transverse Specialty Insurance Company | TSAMPR0003612-00 |

Issued to:    Dupuy Storage & Forwarding, LLC

By:    See Contract Allocation Endorsement AR CA

_____
Authorized Representative

1. This policy shall comply with laws and regulations of the controlling jurisdiction regarding cancellation and nonrenewal, and any provisions that conflict are hereby modified to comply minimally with such laws or regulations.

2. The Compass Commercial Property Form, Section II, B, Exclusion 14 is deleted and replaced by the following:

   Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an Occurrence away from the Location(s) insured under this Policy, unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

3. Terrorism is provided as per Form AR TERR 07 20, subject to:

   a. Limit - As Per Schedule, Per Occurrence.
   b. Deductible - $25,000 Per Occurrence.

4. Replacement Cost Valuation shall apply as regards to Real & Personal Property; Except roof coverings to be Actual Cash Value if originally installed or last fully replaced prior to 2009.

5. Coverage explicitly excludes all Flood including but not limited to Flood during windstorm events.

6. Coverage excludes all loss or damage directly or indirectly caused by any Named Storm in existence at time of written request to bind or inception of any new or additional exposure.

Printed/Issued On: **07/30/2021**

Page 2

7. All Buildings with outstanding damage are excluded. Contact Underwriter if waiver needed.

8. Any additional premium or return premium under $500 shall be waived, except for new perils or coverages added.

9. Warrant fire protection sprinklers are provided throughout all buildings, as noted in Property Application.

10. The complete Named Insured listing (if any) is per schedule on file with the Program Manager.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  7/1/2021

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".
The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.
The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPITATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $100,000 excess of | Deductibles | CYB | QBE21 | QBE | MSP-23280-05 | $100,000 | 100.0000% | $0.000 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | GSI21 | GSI | 10T029659-06889-21-05 | $3,217,385 | 6.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | GSI21 | GSI | 10T029659-06889-21-05 | $3,217,385 | 6.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | XLA21-TECH | IndianH | AMP7531173-05 | $1,237,456 | 2.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | XLA21-TECH | IndianH | AMP7531173-05 | $1,237,456 | 2.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | B123021AMR1022 | Lloyds | AMR-56365-05 | $742,473 | 1.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,732,438 | 3.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | B123021AMR253-2 | Lloyds | AMR-56365-05 | $3,464,876 | 7.0000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | B123021AMR1022 | Lloyds | AMR-56365-05 | $742,473 | 1.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | NW,Q | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,732,438 | 3.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | NW,Q | B123021AMR252 | Lloyds | AMR-56365-05 | $3,464,876 | 7.0000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | STF21-TECH | Steadfast | CPP1009980-05 | $8,167,208 | 16.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | STF21-TECH | Steadfast | CPP1009980-05 | $8,167,208 | 16.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | GVS21 | GVS | GVS-14140-00 | $3,464,876 | 7.0000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | GVS21 | GVS | GVS-14140-00 | $3,464,876 | 7.0000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | HAN21 | HAN | HAN-16628-05 | $2,474,912 | 5.0000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | HAN21 | HAN | HAN-16628-05 | $2,474,912 | 5.0000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | LEX21 | LEX | LEX-014709549-05 | $4,454,841 | 9.0000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | LEX21 | LEX | LEX-014709549-05 | $4,454,841 | 9.0000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | QBE21 | QBE | MSP-23280-05 | $9,157,173 | 18.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | QBE21 | QBE | MSP-23280-05 | $9,157,173 | 18.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | ORU21 | ORU | ORAMPR002325-04 | $2,474,912 | 5.0000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | ORU21 | ORU | ORAMPR002325-04 | $2,474,912 | 5.0000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | TSIC21 | TSIC | TSAMPR0003612-00 | $5,692,296 | 11.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | TSIC21 | TSIC | TSAMPR0003612-00 | $5,692,296 | 11.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | AR EXCL NW | USI21 | USI | USI-19829-05 | $3,217,385 | 6.5000% | $0.214 |
| $49,498,230 excess of | Deductibles | NW,Q | USI21 | USI | USI-19829-05 | $3,217,385 | 6.5000% | $0.543 |
| $49,498,230 excess of | Deductibles | T | B123020AMR917-2 | Lloyds | AMR-56365-05 | $49,498,230 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | HAN | HDI Global Specialty SE |
| | Named Storm Flood | NF | ORU | Old Republic Union Insurance Company |
| | Flood | F | GVS | GeoVera Specialty Insurance Company |
| | All Other Flood | AOF | TSIC | Transverse Specialty Insurance Company |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber/Data Compromise or Cyber Suite | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          868399

by

Authorized Signature

## CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:** 868399

**Certificate #:** AMR-56365-05

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 510 | KLN |
| 2987 | BRT |
| 510 | KLN |
| 1886 | QBP |
| 33 | HIS |
| 1880 | TMK |
| 1618 | KII |
| 510 | KLN |
| 1880 | TMK |
| 2988 | BRT |
| 1225 | AES |
| 2121 | ARG |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAT COVERED PROPERTY ENDORSEMENT

This endorsement modifies insurance provided by all insurance companies and Lloyd's of London (all hereinafter, the "Companies"), subject to the Contract Allocation Endorsement AR CA, under the following form (if attached to this policy):

COMPASS COMMERCIAL PROPERTY FORM

As used in this endorsement, the word "peril" is synonymous with "cause of loss"; and the term "limit of liability" is synonymous with "limit of insurance".  The word "you" shall refer to the Insured.

As respects the Perils of Hurricane, Windstorm and Hail, the following is added to Section III.B., PROPERTY EXCLUDED in the Commercial Property Compass Form:

**PROPERTY NOT COVERED**

1. **The Companies do not cover:**

   a.  Other structures

      **The Companies do not cover** other structures on the insured **Location** set apart from the **Building** by clear space.  This includes structures connected to the **Building** or mobile home by only a fence, utility line or similar connection.

   b.  Animals, birds, or fish, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside a **Building** described on the Statement of Values on file with the Program Manager;

   c.  Accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt; letters of credit, tickets and stamps, manuscripts, medals, money, notes, bank notes, passports, personal records, or securities;

   d.  Articles of gold, gold ware; gold-plated ware, silverware, silver-plated ware, platinum; or platinum ware, platinum-plated ware, pewter, pewter ware; or pewter-plated ware.  This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold, pewter or platinum.

   e.  Aircraft and parts.  Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo; or if owned by you, only as "stock" while inside an insured **Building;.**

   f.  Motor vehicles or all other motorized land conveyances; trailers on wheels.  This includes:
      (1) Their equipment and accessories; or
      (2) Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances.
         Electronic apparatus includes:
         (a)  Accessories or antennas; or
         (b) Tapes, wires, records, discs or other media for use with any electronic apparatus described in this item f.
      The exclusion of property described in f.(1) and f.(2) above, applies only while the property is in or upon the vehicle or conveyance.

**The Companies do cover** vehicles or conveyances, other than autos or vehicles you hold for sale, not subject to motor vehicle registration contained within an enclosed structure on the insured **Location** which are:
(a) contained within an enclosed structure; and
(b) used to service an insured **Location**; or
(c) designed for assisting the handicapped; and
(d) are self-propelled machines; and
(e) are not autos or vehicles you hold for sale.

g.  Watercraft and their furnishings, other than rowboats and canoes out of water at the insured **Location**, unless:
(1) owned by you only as "stock" when removed from, out of, or not over water; and
(2) located in or within 100 feet of the insured **Building**.

h.  Data, including data stored in:
(1)  Books of account, card index systems, drawings or other paper records; or
(2)  Electronic data processing tapes, wires, records, drums, cells, discs, magnetic recording, storage or other software media.

However, the Companies do cover up to $1,000 under item h.(2) the cost of blank or unexposed recording or storage media and of prerecorded computer programs available in the market.  This limit does not increase the contents Limit of Liability.

If Electronic Data Processing is covered by this policy, this exclusion does not apply to the extent that coverage is provided under such extension.

i.  Credit cards or fund transfer cards;

j.  Business personal property while airborne, waterborne or in transit;

k.  Pilings, piers, wharves, retaining walls, seawalls, bulkheads, beach or diving platforms or appurtenances, docks or boathouses;

l.  Trees, shrubs, plants, flowers, lawns, tee boxes, fairways, greens, landscaping, bunkers or sand traps, or artifical turf;

m.  Windmills, wind pumps or their towers, or smokestacks;

n.  Awnings, canopies or other roof like projection or covering, whether fabric or not, whether permanent or retractable;

o.  Steeples and fountains;

p.  Grain, hay, straw and other crops, crop silos or their contents;

q.  Bridges, boardwalks, trestles, catwalks, bleachers, dune walks, ramps, roadways, walks, decks, and patios and similar structures, or other paved or graveled surfaces, whether or not attached to the **Building**;

r.  Amusement equipment;

s.  Fabric windscreens on fences;

t.  Any structure or attachment, whether attached or separate from the insured **Building**, where that structure's roof coverings are of fabric, thatch, lattice, or slats and similar material; or where that

structure's exterior wall coverings are of fabric, thatch, lattice, or slats and similar material, and personal property within or on these structures;

u.   Slat houses, chickees, tiki huts, gazebos and pergolas or similar structures and personal property contained within or on these structures;

v.   Signs, scoreboards, radio or television antennas or aerials, satellite dishes (including lead-in wiring, masts or towers and their supports), fences, gates, fountains, statues, monuments, utility poles (including light fixtures), light poles, traffic lights and traffic signals.

However, the Companies **do cover** solar paneling and other similar water heating or electrical apparatus when:
(1) outside the **Building** (including lead-in pipes, wiring, masts or towers and their supports), and
(2) permanently installed, and
(3) located on the insured **Location**, and
(4) used for the service of the covered property.

w.   Land, including land on which the other structures are located.

2.   The Companies **do cover** the following property if, and only if, it is described as separate and specific items on the Statement of Values on file with the Program Manager::

a.   Any structure, whether attached or separate from the covered **Building**, where that structure's roof covering is of screen;
b.   Signs, scoreboards, light poles, fences, gates, fountains, statues, monuments, artificial turf, bleachers, property walls and similar structures separating parcels of land;
c.   Greenhouses, glasshouses, hothouses, open-sided sheds, carports, cabanas, gazebos, swimming pools, jacuzzis, hot tubs/spas, or similar structures, including their decking, but not:
(1) business personal property or contents contained within or on these structures, or
(2) when these structures are comprised of fabric, thatch, lattice, slats or similar material.
d.   Enclosed garages, enclosed tool sheds, enclosed sheds, enclosed pump houses, enclosed boiler sheds, enclosed pool houses, enclosed air conditioning sheds, enclosed guardhouses, enclosed workshops, enclosed maintenance sheds, and the business personal property or contents contained within or on the structures;
e.   Any structure, including the contents and business personal property contained within or on the structure, that is located in whole or in part over water;
f.   Mobile homes, temporary **Buildings**, portable **Buildings**, travel trailers and similar structures or conveyances, (including business personal property contained in or on or pertaining to these structures or conveyances);
g.   However, the Companies do not cover business personal property or contents of any structure or other property regardless of whether it is described as separate and specific item(s) in the Statement of Values on file with the Program Manager, when:
(1) Such structure is comprised of fabric, thatch, lattice, slats or similar material; or
(2) Not covered as explained in other sections of this policy.
h.   Self-supported, stand alone canopies.


**LIMIT**

As respects property covered by this Endorsement, the Companies' Limit of Liability shall be limited to the values shown on the Statement of Values on file with the Program Manager; however, in no event to exceed $100,000 per Occurrence as respects all property combined.

**DEDUCTIBLE**

As respects property covered by this Endorsement, the Deductible shall be equal to 10% of the total insurable values of the property covered by this endorsement, subject to a minimum deductible of $100,000 per Occurrence.

This deductible shall be a separate deductible from any other deductible stated elsewhere in the policy, but only the largest minimum deductible shall apply.

**DEFINITIONS**

As used in this endorsement these words have the following meaning:

1. "Windstorm" means wind, wind gusts, tornadoes or cyclones which result in direct physical loss or damage to property.

2. "Hurricane" means:
   a. Coverage for loss or damage caused by the peril of windstorm during a hurricane.
   b. "Windstorm" for the purposes of subparagraph a. means wind, wind gusts, hail, rain, or tornadoes or cyclones caused by or resulting from a hurricane which results in direct physical loss or damage to property.
   c. "Hurricane" for the purposes of subparagraphs a. and b. means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the hurricane includes the time period, in the state of the insured **Location**:
      (1) Beginning at the time of a hurricane watch or warning is issued by the National Hurricane Center of the National Weather Service;
      (2) Continuing for the time period during which the hurricane conditions exist; and
      (3) Ending 72 hours following the termination of the last hurricane watch or hurricane warning issued by the National Hurricane Center of the National Weather Service.

All other terms and conditions remain unchanged.

## COMPASS SUPPLEMENTAL DECLARATIONS

This Compass Supplemental Declarations shall be attached to and form a part of the Compass 04 18 Form.

A.  LIMIT OF LIABILITY ("Policy Limit"):  The total maximum liability for all insurance companies and Lloyd's of London, London England (all hereinafter referred to as the "Companies") in any one **Occurrence** as a result of all covered loss or damage regardless of the number of **Locations**, coverages, or perils insured under this Policy shall not exceed <u>the lesser of</u>: 1. (a. – f., as indicated by an 'X'); OR 2.:

    1.  a.    As respects each **Location** insured by this Policy:  of the total combined stated values for all categories of Covered Property and Time Element exposures shown for that **Location** on the Statement of Values or other documentation on file with the Program Manager for the Companies, as stated on the Policy Declaration page (hereinafter referred to as the "Program Manager");

        b.    As respects each item (e.g. Building, Personal Property, Outdoor Property, Time Element) insured by this Policy:  of the stated value shown for that item on the Statement of Values or other documentation on file with the Program Manager;

        c.  **X**  As respects each **Location** insured by this Policy: <u>100.00%</u> of the total combined stated values for all categories of Covered Property shown for that **Location**; and separately, <u>100.00%</u> of the total combined stated values for Time Element shown for that **Location**; all on the Statement of Values or other documentation on file with the Program Manager;

        d.    As respects all Locations insured by this policy:  Blanket over all Locations per the Statement of Values or other documentation on file with the Program Manager.

        e.    As respects each line of coverage (e.g. Building, Personal Property, Outdoor Property, Time Element), insured by this Policy:  Blanket for each line of coverage over all Locations per the Statement of Values or other documentation on file with the Program Manager.

        f.

    <u>OR</u>

    2.  $49,498,230 maximum limit of liability.

B.  SUBLIMITS OF LIABILITY:  Sublimits of Liability stated below are included within and not in addition to the Limit of Liability shown in Paragraph A., above.  These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence**, unless otherwise indicated.

If the words "NOT COVERED" are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.

1. **Earth Movement:**

   a.  $2,500,000          Annual Aggregate

   Subject to the Annual Aggregate Limit for all **Earth Movement** shown in B.1.a. above:

   b.  $NOT COVERED        Annual Aggregate for all **Earth Movement** in California, Alaska and Hawaii, combined.

   c.  $NOT COVERED        Annual Aggregate for **Pacific Northwest States**, combined.

   d.  $NOT COVERED        Annual Aggregate for **New Madrid Earthquake Zone Counties**, combined.

2. **Flood:**

   a.  $NOT COVERED        Annual Aggregate

   Subject to the Annual Aggregate Limit for all **Flood** shown in B.2.a. above:

   b.  $NOT COVERED        Annual Aggregate as respects **Flood** for all **Locations** combined, wholly or partially within **Special Flood Hazard Areas**.

3. **Named Storm:**

   $INCLUDED        Regardless of the number of Coverages, Locations or Perils involved, including, but not limited to, wind, wind gusts, tornados, cyclones, hail, or rain, all arising out of a Named Storm, the maximum amount the Companies will pay per Occurrence as respects all covered loss or damage.

In the event a loss involves more than one of the above perils (B.1. - B.3.) and provided it is a covered peril(s), each peril's sublimit above shall be considered a separate sublimit apart from the other peril's sublimit above.

However, the Sublimits below (B.4. - B.36.) shall also be considered sublimits within the above applicable covered peril sublimits (B.1. - B.3.).

4.  Accounts Receivable:          $1,000,000

5.  Civil or Military Authority:          30 Days; but in no event will the Companies pay more than $1,000,000.

6.  Contingent Time Element:          60 Days or $500,000; whichever is less.

7.  Contractor's Equipment:          $100,000 , as respects unscheduled: owned; leased; rented; or borrowed; but not to exceed:
                                      $25,000  any one unscheduled item

8.  Course of Construction:               $250,000   New Buildings or structures; excluding
                                          Soft Costs.

9.  Course of Construction Soft Costs:    $25,000

10. Debris Removal: The Companies' total liability for Debris Removal per **Occurrence** for all
    insured **Locations** sustaining covered direct physical loss or damage payable under this Policy
    shall not exceed the lesser of:
    a.  25% of the amount of covered physical loss or damage to Covered Property (excluding Time
        Element), payable for all insured **Locations**;  or
    b.  $5,000,000.

    However, in the event the covered loss is subject to a sublimit, as stated in Sublimits B.4. - B.9.
    and B.11 - B.36., the related Debris Removal shall be included in that sublimit.

11. **Electronic Data and Media:**         $100,000

12. Errors or Omissions:                   $25,000; subject to all other sublimits contained
                                           herein.

13. Extended Period of Indemnity:          180 Days

14. Extra Expense/ Expediting Expense:     $Included in Business Income

15. Fine Arts:                             $250,000

16. Fire Brigade Charges:                  $100,000

17. **Fungus, Molds, Mildew, Spores, Yeast:** $15,000 Annual Aggregate

18. Ingress/Egress Coverage:               30 Days ; but in no event will the Companies pay
                                           more than $100,000.

19. Leasehold Interest:                    $100,000

20. Limited Pollution Coverage:            $100,000 Annual Aggregate

21. Lock Replacement:                      $25,000

22. **Miscellaneous Unnamed Locations:**   $100,000; subject to all other sublimits contained
                                           herein.

23. Newly Acquired Property:                    60 Days , but in no event will the Companies pay
                                                more than $1,000,000, subject to all other sublimits
                                                contained herein.

24. Ordinance or Law:

    a.   Coverage A:                       Included in the **Building** Limit.

    b.   Coverage B:                       20% of the scheduled Building value, not to exceed
                                                $1,000,000.

    c.   Coverage C:                       Included with Coverage B.

    d.   Coverage D:                       Included in the Time Element (if covered).

    e.   Coverage E:                       Included in **Building** Limit.

25. Ordinary Payroll:                           30 Days (provided values are included in the reported
                                                Time Element Values).

26. Plants, lawns, trees or shrubs:             $100,000
    Any one plant, lawn, tree or shrub:         $25,000

27. Professional Fees:                          $100,000 Annual Aggregate

28. Reclaiming, restoring or repairing land:    $10,000

29. Reward Reimbursement:                       $25,000

30. Royalties:                                  $25,000

31. Service Interruption:                       $100,000; however, a qualifying period of 72 hours
                                                applies to this coverage (provided Time Element is
                                                reported and covered).

32. Spoilage:                                   $25,000

33. Time Element Monthly Limitation:            1/12 Monthly ; applicable to all Time Element
                                                coverages, except those that have a sublimit in this
                                                Paragraph B.

34. Transit:                                    $100,000

35. Underground tanks, pipes, flues & drains:  $50,000

36. **Valuable Papers and Records:**            $1,000,000

C. MAXIMUM AMOUNT PAYABLE:  In the event of a Covered Cause of Loss hereunder, the total liability of the Companies shall be limited to the least of the following:

1. The actual adjusted amount of loss, less applicable deductible(s), or

2. The limit of liability or applicable sublimit of liability shown in this Compass Supplemental Declarations or endorsed hereon.

D. DEDUCTIBLE:  Each claim for loss or damage under this Policy shall be subject to a per **Occurrence** deductible amount of:

1. $25,000  Property Damage & Time Element (if covered), combined; OR

   $N/A     Property Damage; and

   $N/A     Time Element (if covered).

unless a specific deductible shown below applies for the indicated peril(s).

2. **Flood:**

   a. $N/A Per **Occurrence**, except as follows in Subparagraphs D.2.b. & D.2.c.:

   b. As respects **Locations** wholly or partially within **Special Flood Hazard Areas**: $N/A

   c. As respects **Locations** wholly or partially within **Special Flood Hazard Areas** or Zones B, X500, or X-Shaded: $N/A

3. **Earth Movement:**

   a. $25,000  Per **Occurrence**, except as follows in Subparagraphs D.3.b., D.3.c., & D.3.d.:

   b. As respects **Locations** in California, Hawaii and Alaska:

      N/A% of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of $N/A any one **Occurrence.**

   c. As respects **Locations** in the **Pacific Northwest States**:

      N/A% of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of $N/A any one **Occurrence.**

COMPASS SUP DECL 04 18                    Page 5 of 7

    d.  As respects **Locations** in the **New Madrid Earthquake Zone Counties**:

        N/A% of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of $N/A any one **Occurrence.**

4.  **Windstorm or Hail:**

    a.  $100,000  Per **Occurrence**; or

       $N/A    Per **Occurrence**, Per **Location**;

except as follows in Subparagraphs D.4.b. & D.4.c.:

    b.  Any loss arising out of a **Named Storm** (which includes **Hurricane**):

        1)  5.0%  of the **TIV** at each **Location**, subject to a minimum deductible of $100,000  any one **Occurrence**; as respects **Locations** in:

           All Locations, as per Statement of Values on file with the Program Manager.

        2)  N/A% of the **TIV** at each **Building** or structure or outdoor property, subject to a minimum deductible of $N/A any one **Occurrence**; as respects **Locations** in:

           N/A.

    c.  Any loss arising out of a **Hurricane** only:

        1)  N/A% of the **TIV** at each **Location**, subject to a minimum deductible of $N/A any one **Occurrence**; as respects **Locations** in:

           N/A.

        2)  N/A% of the **TIV** at each **Building** or structure or outdoor property, subject to a minimum deductible of $N/A any one **Occurrence**; as respects **Locations** in:

           N/A.

5.  The following five paragraphs (a - e) apply to Paragraphs D.1. through D.4., inclusive:

    a.  **TIV** at each **Location** shall mean the sum of all reported values for Real Property, Personal Property, Time Element, and any other values for that scheduled **Location**, as per the Statement of Values on file with the Program Manager.

    b.  **TIV** at each **Building** or structure or outdoor property shall mean the sum of all reported values for Real Property, Personal Property, Time Element, and any other values for that scheduled **Building** or scheduled structure or scheduled outdoor property, as per the Statement of Values on file with the Program Manager.

    c.  In each case of loss or damage covered by this Policy, the Companies shall not be liable unless the Insured sustains loss or damage in a single Occurrence greater than any applicable deductible described herein and then, if this is a quota share Policy, only for each Companies' share in excess of such deductible.  When this Policy covers more than one Location, the deductible shall apply against the total loss or damage covered by this Policy in any one Occurrence, unless otherwise stated in this Paragraph D.

d.  If two or more peril deductible amounts provided in this Policy apply to a single Occurrence, the total to be deducted shall not exceed the largest deductible applicable, unless otherwise stated in this Policy.  However, if a Time Element deductible and another deductible apply to a single occurrence, then the Companies shall apply both deductibles to the Occurrence.

e.  In the event the Deductible is "per Building" and, at the time of loss, the values shown on the Statement of Values on file with the Program Manager are not individually stated for each Building, Structure, Business Personal Property, or Time Element at each Location, the following shall apply to determine the breakdown of values (Building, Business Personal Property and Time Element) for each Building:

  1)  The value for each Building and structure will be determined by multiplying the total reported Buildings and Structures value for that Location by the proportion that the square footage of the individual Building or Structure bears to the total square footage reported for all Buildings and Structures for that Location.

  2)  The value for Business Personal Property for each Building will be determined by multiplying the total reported Business Personal Property value for that Location by the proportion that the square footage of the individual Building and Structure for that Location bears to the total square footage reported for all Buildings and Structures for that Location.

  3)  The value for the Business Income or Loss of Rents for each Building will be determined by multiplying the total reported Business Income or Loss of Rents for that Location by the proportion that the rentable square footage of the individual Building or Structure for that Location bears to the total rentable square footage reported for all Buildings and Structures for that Location.

# COMPASS COMMERCIAL PROPERTY FORM

In consideration of the premium charged, this policy covers for direct physical loss of or damage to the Covered Property caused by a Covered Cause of Loss occurring during the policy period. Coverage shall be subject to the terms, conditions, definitions, exclusions, limitations and provisions contained herein.

### SECTION I – INSURED, ADDITIONAL INTERESTS & COVERAGE TERRITORY

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A. NAMED INSURED:  First Named Insured (as shown in the Declarations) and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is responsible or legally obligated to insure.

B. LOSS PAYEE(S), LENDER'S LOSS PAYEE(S), MORTGAGEE(S), AND ADDITIONAL INSURED(S): Per Certificates of Insurance (or similar document, list or schedule) on file with the Program Manager for the Companies, as stated on the Policy Declaration Page (hereafter referred to as the "Program Manager").  Any Certificates of Insurance issued in connection with this Policy shall be issued solely as a matter of convenience or information (and do not alter or amend coverage) for the addressee(s) or holders(s) of said Certificates of Insurance, except where any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) are named pursuant to the Special Provisions of said Certificate of Insurance.  In the event any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) are so named by contract, this Policy shall be deemed to have endorsed accordingly, subject to all other terms, conditions and exclusions stated herein, and provided the Certificate of Insurance is issued prior to a loss.  Such endorsement adding any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) will be deemed attached to the policy and the Insured will pay any required premium.

C. COVERAGE TERRITORY:  Coverage under this Policy applies to **Occurrences** within the United States of America and Canada.

### SECTION II – COVERED CAUSES OF LOSS

A. COVERED CAUSES OF LOSS:  This Policy insures against all risks of direct physical loss or damage to Covered Property, except as excluded.

B. EXCLUSIONS: The Companies do not insure for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

1. Nuclear, Biological, Chemical and Radiological

   a. The Companies will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

      1) Nuclear Hazard – including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

      2) Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

3) Chemical Hazard — including, but not limited to, any chemical agent, material, product or substance;

4) Radioactive Hazard — including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

b. The provisions of subparagraphs a.2) and a.3) will not apply where the agent, material, product or substance at issue is utilized in the course of business by an Insured.

c. Only if and to the extent required by state law, the following exception to the exclusions in Paragraph a. applies:

If a hazard excluded under Paragraph a. results in Fire (and provided Fire is a Covered Peril), the Companies will pay for the loss, damage, cost or expense caused by that Fire, subject to all applicable policy provisions including the Limit of Insurance on the affected Covered Property.  Such coverage for Fire applies only to direct loss or damage by Fire to Covered Property. This coverage does not apply to insurance provided under Time Element, including but not limited to, Business Income, Rental Value or Extra Expense coverage or endorsements that apply to those coverages.

2.   a.   War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

1)   By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

2)   By military, naval, or air forces; or

3)   By an agent of any such government, power, authority, or force;

b.   Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

c.   Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

including any consequence of Subparagraphs 2.a., 2.b., or 2.c. above.

3.   Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured (including leased employees), or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured (including leased employees), or others listed above without the knowledge of the Insured is covered.

4.   Asbestos

a.   The Companies will not pay for loss, damage or remediation expenses caused by or resulting from the presence of asbestos or asbestos-containing materials. As used in this exclusion, remediation expenses are expenses incurred for or in connection with the investigation, monitoring, removal, disposal, treatment, abatement or neutralization of asbestos or asbestos-containing materials to the extent required by federal, state or local laws, regulations or statutes or any subsequent amendments thereof to address asbestos.

b.  However, this Asbestos exclusion does not apply to the extent that coverage is provided under the following:

> This policy insures asbestos physically incorporated in an insured **Building** or structure, and then only that part of the asbestos which has been physically damaged during the policy period by a **Defined Cause of Loss**.
>
> This coverage is subject to all limitations in the policy and, in addition, to each of the following specific limitations:
>
> 1)  The said **Building** or structure must be insured under this policy for damage by this **Defined Cause of Loss**.
>
> 2)  The **Defined Cause of Loss** must be the immediate, sole cause of the damage to the asbestos.
>
> 3)  The Insured must report to the Companies the existence and cost of the damage as soon as practicable after the **Defined Cause of Loss** first damaged the asbestos. However, this policy does not insure any such damage first reported to the Companies more than 12 (twelve) months after the expiration, or termination, of the policy period.
>
> 4)  Insurance under this policy in respect of asbestos shall not include any sum relating to:
>     a) any faults in the design, manufacture or installation of the asbestos;
>     b) asbestos not physically damaged by a **Defined Cause of Loss** including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

5.  Pollution/Contamination
    NMA 2340 11/24/1988 (USA date) - amended

    <u>Seepage And/Or Pollution And/Or Contamination Exclusion</u>

    This Policy does not insure:

    a.  any loss, damage, cost or expense, or

    b.  any increase in insured loss, damage, cost or expense, or

    c.  any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation),

    which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

    The term "any kind of seepage or any kind of pollution and/or contamination" as used in this clause includes (but is not limited to):

    a.  seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic,

dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

b.  the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6.  Delay, loss of market, or loss of use.

7.  Indirect, remote, or consequential loss or damage.

8.  Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

9.  Voluntary parting with title or possession of any property, including voluntary parting which is the result of any fraudulent scheme, trick, devise, false pretenses, or any other similar act.

10. Faulty workmanship, material, construction, installation, or design from any cause; or faulty planning, zoning, development, surveying or siting; all unless physical damage not excluded by this Policy ensues, in which event, this Policy will cover only such resulting damage.

11. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

12. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

13. Settling, cracking, shrinking, bulging, or expansion of pavements, paved surfaces, walkways, drainage systems or roadways, foundations, walls, floors, or ceilings; all unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

14. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **Occurrence** away from the **Location**(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

15. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

16. Electronic Data & Media

    Damage or consequential loss directly or indirectly caused by, consisting of, or arising out of:

    a.  Any functioning or malfunctioning of the internet or similar facility, or of any intranet or private network or similar facility,

    b.  Any corruption, destruction, distortion, erasure, "computer virus", or any other loss or damage to data, media, software, or any kind or programming or instruction set,

    c.  Loss of use or functionality, whether partial or entire, of data, media, coding, program, software, any computer or computer system or other device dependent upon any microchip or embedded logic, and any ensuing inability or failure of the Insured to conduct business, as a result thereof.

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. "Computer Virus" includes, but is not limited to, "Trojan Horses," "worms" and "time or logic bombs".

However, in the event that a **Defined Cause of Loss** results from any of the matters described in paragraphs a. – c. above, this Policy, subject to all its terms, conditions and exclusions, will cover physical damage occurring during the policy period to property insured by this Policy directly caused by such **Defined Cause of Loss.**

17. Electronic Date Recognition
    NMA 2802 12/17/1997 (USA Date) - amended

    This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

    a. the calculations, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

    b. any change, alteration or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

    This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

18. Loss or damage in the form of, caused by, arising out of, contributed to, or resulting from **Fungus, Mold(s), Mildew, Spores or Yeast**; or any spores or toxins created or produced by or emanating from such **Fungus, Mold(s), Mildew, Spores or Yeast.**

    However, this exclusion shall not apply provided the Insured establishes that the fungus, mold(s), mildew, spores or yeast is a direct result of a covered loss from a **Defined Cause of Loss** or **Flood** (provided **Flood** is a covered peril) and provided this loss is reported to the Companies within twelve (12) months from the expiration date of the policy. The Companies' liability shall then be limited to the sublimit stated elsewhere.

19. Hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment, unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

20. Loss or damage arising out of:

    a. A **building** or any part of a **building** that is in danger of falling down or caving in,

    b. Any part of a **building** that has separated from another part of the **building**, or

    c. A **building** or any part of a **building** that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    However, the Companies do cover loss or damage arising out of **Collapse.**

21. **Equipment Breakdown** to vehicles (or any equipment on vehicles), or **contractors equipment**, including but not limited to draglines, cranes, excavation or construction equipment; all unless

physical damage not excluded by this Policy results to other insured Property, in which event, this Policy will cover only such resulting damage.

22. Terrorism
NMA 2920; 10/8/01 (USA Date) - amended

This policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this exclusion, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This clause also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Companies allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

23. Loss Due To Virus Or Bacteria
AR 01 40 07 - amended

a. The exclusion set forth in subparagraph b. below, applies to all coverage under all forms and endorsements that comprise this Policy, including but not limited to forms or endorsements that cover property damage to **buildings** or personal property and forms or endorsements that cover business income extra expense or action of civil authority.

b. The Companies will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from **fungus, mold(s), mildew, spores or yeast**.  Such loss or damage is addressed in a separate exclusion in this Policy.

c. With respect to any loss or damage subject to the exclusion in subparagraph b. above, such exclusion supersedes any exclusion relating to pollutants or contaminants.

d. The terms of the exclusion in subparagraph b. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded by this Policy.

24. Water under the ground surface pressing on, or flowing or seeping through:

a. Foundations, walls, floors or paved surfaces;

b. Basements, whether paved or not;

c. Doors, windows or other openings.

However: a) this exclusion shall not apply to water damage to Covered Property caused by the breakage of underground pipes or containment structures; or b) in the event the Insured has protective devices to abate damage due to water from under the ground surface pressing on, or flowing or seeping through a. or b. above, and such protective devices fail due to a Covered Cause of Loss or Equipment Breakdown, then this policy shall cover any resulting water damage.

25. Rain, snow, ice or sleet to personal property in the open.

26. Loss or damage by rain, snow, or dust, whether driven by wind or not, to the interior of any **building** or structure, or the property inside the **building** or structure, unless the **building** or structure first sustains wind or hail damage to its roof or walls through which the rain, snow, sand or dust enters.  The above exclusion shall not apply to loss or damage caused by or resulting from the thawing of snow, sleet or ice on the **Building** or structure (also known as ice damming).

This exclusion shall also apply to any Building or structure in the Course of Construction at any time when the roof or outside walls are incomplete.  "Incomplete" means at the time of loss or damage, the envelope of the Building or structure, which includes the exterior walls, windows and roofing system, are not watertight based on the Building's or structure's design.

27. Seizure or destruction of property by order of governmental authority.  However, coverage is provided for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire is a Covered Cause of Loss.

28. **Equipment Breakdown** (see Definitions); unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

29. Hot Testing; which means:

    a. Commissioning or performance testing;

    b. Any testing involving the introduction of flammable or explosive feedstock beginning when such feedstock is first introduced; or

    c. The rotational operation of any turbine or generator, except for rotational operation by turning gear only when the turbine or generator is not energized.

    Hot Testing does not mean the commissioning or performance testing of:

    Heating; Cooling; Air handling; Electrical; Mechanical; Hydraulic; Hydrostatic; or Pneumatic; all being systems that are part of the Building systems or construction works.

30. Loss, damage, cost, or expense covered under any express or implied guarantee or warranty from a manufacturer or supplier, whether or not such manufacturer or supplier is an Insured under this policy.

31. Named Storm Restriction: This policy shall exclude all damage directly or indirectly caused by a **Named Storm** that is in existence at the time that written request to bind is given to the Program Manager, until coverage for such **Named Storm** has been bound by written agreement between the Program Manager and the First Named Insured.  In addition, no increase in limits or additional coverages will be provided for any insured **Location(s)** threatened by such **Named Storm**, until coverage for such **Named Storm** has been bound by written agreement between the Program Manager and the First Named Insured.

32. Loss or damage to **contractor's equipment** caused by the weight of a load exceeding the registered lifting capacity of the machine.

33. Pre-existing Damage:  This policy shall exclude any loss or damage directly or indirectly caused by, resulting from or contributed to, any pre-existing **building** damage at the time of this Policy's

inception or attachment of coverage.  This exclusion shall not apply: a) upon the substantial completion of repair or reconstruction of the damaged **building**; or b) if the affected **building** is a renewal of an expiring policy written by the Program Manager.

34. Loss or damage arising out of any peril for which the words NOT COVERED or for which an amount is not shown in the Compass Supplemental Declarations, Subparagraph B.

    If Earth Movement is NOT COVERED, this policy shall still cover resulting Fire, Explosion or Sprinkler Leakage, provided Fire, Explosion or Sprinkler Leakage is a Covered Cause of Loss.

    If Flood is NOT COVERED, this policy shall still cover resulting Fire or Explosion, provided Fire or Explosion is a Covered Cause of Loss.

## SECTION III – COVERED PROPERTY

A.  COVERED PROPERTY:  Unless otherwise excluded, this Policy covers the following property owned by the Insured or in which the Insured has an insurable interest while at the scheduled **Locations** and within 1,000 feet thereof (except **contractor's equipment** shall be per the Policy Coverage Territory):

1.  Real and Personal property, including **Contractor's Equipment**;

2.  Buildings or structures while in the course of construction, including alterations and additions to completed buildings and structures, including all building materials, equipment, supplies and machinery intended to become a permanent part of the completed building or structure while on site and awaiting installation.

3.  Improvements and betterments to **buildings** or structures.  Such Improvements and Betterments shall be considered Real property.

4.  At the option of the Insured, Personal property, other than motor vehicles, of officers and employees of the Insured;

5.  Personal property of others, other than motor vehicles, in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against by this Policy;

6.  Contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage.  However, such interests will not extend to any Time Element coverage provided by this Policy.

7.  Real and Personal Property and related Time Element Loss at **Miscellaneous Unnamed Locations(s)** owned by the Insured or for which the Insured is legally responsible for, and within the Coverage Territory of the policy.  This shall also include Personal Property of the Insured while temporarily at **Miscellaneous Unnamed Location(s)**, including Property on Exhibitions and Salesman's Samples.

B.  PROPERTY EXCLUDED:  This Policy does not insure against loss or damage to:

1.  Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones.  This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2.  Air, **Land**, land values, and any substance in or on **Land**, or any alteration to the natural condition of the **Land**;  However, this exclusion does not apply to the cost of reclaiming, restoring or repairing **Land**, provided the loss is from a **Defined Cause of Loss**. However, this exclusion for

all causes of loss shall still apply to golf course: fairways; greens; tees; rough areas; out-of-bound areas; and sand traps; and driving ranges.

3. Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4. Standing timber, growing crops, plants, lawns, trees, shrubs or animals.  However, this exclusion does not apply to plants, lawns, trees or shrubs, provided the loss is from a **Defined Cause of Loss**.  However, this Exclusion for all causes of loss shall still apply to "Golf Course Outdoor Grounds", which means fairways, greens, tees, rough areas, out-of-bound areas, sand traps, driving ranges and plants, lawns, trees, or shrubs that are part of the golf course.

5. Pavements, paved surfaces, walkways, drainage systems or roadways; except: a) Builder's Risks, provided values are included in contract costs; or b) when scheduled as such on the Statement of Values on file with the Program Manager; or c) pool decking and spa decking which shall be considered part of the Pool or Spa, provided the Pool or Spa values are scheduled as such on the Statement of Values on file with the Program Manager;

6. Vehicles licensed for highway use, watercraft, aircraft and railroad rolling stock;

7. Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8. Property in transit, except expressly as provided elsewhere in this Policy;

9. Underground mines or mining shafts and any related mining property and equipment while underground, or wells;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft;

12. Dams, dikes, levees, bridges, tunnels, reservoirs, flood retaining walls, sea walls, and canals; except when scheduled as such on the Statement of Values on file with the Program Manager;

13. Docks, piers and wharves; except when scheduled as such on the Statement of Values on file with the Program Manager;

14. Transmission and distribution lines and related equipment, including but not limited to transformers, feeder lines, pipelines, and support structures of every type and description; except when located on the insured **Location** or within one thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire;

16. Contraband, or property in the course of illegal transportation or trade;

17. Property of Unit Owners within individual Condominium units, consisting of:

   a. Personal property and Improvements & Betterments; and

   b. Floor coverings, wall coverings and ceiling coverings which only serve that unit.

   However, provided that c. or d. below do not conflict with any state statute as to the insurance responsibility of the unit-owner, this exclusion shall not apply to:

   c. Appliances; refrigerators; air conditioning equipment (including air conditioning compressors); heating equipment; cooking ranges; dishwashers; clothes washers/dryers; and fixtures, installations or permanent additions initially installed in accordance with the original plans and specifications; all contained within the unit; or

    d. Any property within the individual unit (including the property excluded in a. and b., above) that the Condominium Association Agreement requires be covered by the Condominium Association.

18. Marijuana and Schedule 1 Controlled Substances, including all related Property, Expenses and Time Element.

## SECTION IV – VALUATION

Except as otherwise provided in this Paragraph, adjustment of loss or damage under this Policy shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. However, if the property is not repaired, rebuilt or replaced as soon as reasonably possible after the loss or damage, the value of the property will be determined on an **Actual Cash Value** basis. In the event the Insured elects to have the loss or damage settled on an **Actual Cash Value** basis, the Insured may still make a claim on a replacement cost basis, provided the Insured notifies the Companies within 180 days after the loss or damage.

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A. Stock in process: the cost of raw materials and labor expended, plus the proper proportion of overhead charges.

B. Finished goods manufactured by the Insured: the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred.

C. Raw materials, supplies and other merchandise not manufactured by the Insured: the replacement cost.

D. **Valuable Papers and Records**: the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Companies will only pay the blank value of the valuable papers or records.

E. **Electronic Data and Media**: the cost of the blank media, plus the costs of copying the **Electronic Data and Media** from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such **Electronic Data and Media**. If the **Electronic Data and Media** is not repaired, replaced or restored, the basis of valuation shall be the cost of the blank media. However, this Policy does not insure any amount pertaining to the value of such **Electronic Data and Media** to the Insured or any other party, even if such **Electronic Data and Media** cannot be recreated, gathered or assembled.

F. Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties: the replacement cost if replacement cost values have been reported to the Companies and if actually replaced; otherwise the **Actual Cash Value,** but not to exceed the cost to repair or replace the property with material of like kind and quality.

G. Leasehold improvements and betterments:

    1. If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments.

    2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost.

        The Companies will determine the proportionate value as follows:

    a.   Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    b.   Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3.   Nothing, if others pay for repairs or replacement.

H.  Fine Arts:

   1.   If there is no Agreed Value Schedule on file with the Program Manager, then the lesser of:

      a.   The cost to repair or replace the fine art, or

      b.   The appraised value, which will be determined as of the time of the loss.

   2.   If there is an Agreed Value Schedule on file with the Program Manager, then the Agreed Value Schedule shall be used.

   3.   If a Fine Arts article is part of a pair or set, and a physically damaged article cannot be replaced, or cannot be repaired or restored to the condition that existed immediately prior to the loss, the Companies will be liable for the lesser of the full value of such pair or set or the Agreed Value, as per the schedule on file with the Program Manager.  The Insured will surrender the pair or set to the Companies.

I.  Accounts Receivable: the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

   1.   Any collection expenses over and above the normal collection costs;

   2.   Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

   3.   Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Companies, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Companies by the Insured up to the total amount of loss paid by these Companies.  All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Companies shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

J.  Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

   1.   The cost to repair or replace the damaged property, or

   2.   The price at which the property is offered for sale less the market value of the **Land**.

K.  Property in Transit: In case of loss, the basis of adjustment shall be:

   1.  Property shipped to or for the account of the Insured: the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

   2.  Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder): the amount of the Insured's selling invoice, including prepaid or advanced freight;

   3.  Property of others not under invoice: the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

   4.  Property of the Insured not under invoice: valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

L.  Contractor's equipment and vehicles (if covered): **Actual Cash Value**, unless an agreed value applies.

M.  Catalyst: **Actual Cash Value.**

N.  Historic Building Replacement Cost: As respects buildings that are declared and designated by a local, state or federal authority to be of historical significance or of historic value, such rebuilding, repairing or replacement shall be with material, workmanship, processes, technologies and designs publicly available within the current marketplace that most closely resemble those that existed before the loss or damage occurred and are based on the most reasonable cost available at the time the loss occurred, and shall not include the cost of creating outdated, archaic or antiquated materials, workmanship, processes, technologies or designs. In no event shall the loss exceed the scheduled limit on the damaged Building.

O.  For all other property: At replacement cost if actually replaced; otherwise, the **Actual Cash Value**, but not to exceed the cost to repair or replace the property with material of like kind and quality.

With respect to Subparagraphs A. through O., inclusive, unless otherwise specifically stated, the Companies will compute the valuations at the time and place of the loss.


## SECTION V – TIME ELEMENT COVERAGE
## GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property.

A.  ACTUAL LOSS SUSTAINED: In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

   1.  To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

   2.  To continue business operations or services,

   all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an insured **Location** or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Companies shall be liable, subject to all other conditions of this Policy not inconsistent herewith, for the actual loss sustained of the following during the Period of Interruption:

1. GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services.  For the purpose of this coverage, GROSS EARNINGS means:

   a. For manufacturing operations:  The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

   b. For mercantile or non-manufacturing operations:  The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

   c. Plus all other earnings derived from the operation of the business.

   In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

   In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses, including payroll (subject to the Ordinary Payroll restriction below), that would have existed had no interruption of production or suspension of business operations or services occurred.

   There is no coverage for any portion of the Insured's Ordinary Payroll expense, unless a specified number of days for Ordinary Payroll are shown elsewhere and values have been included in the reported Time Element Values.  In such case, the Companies will pay Ordinary Payroll for that number of days only.  The number of days need not be consecutive, but must fall within the interruption of production or suspension of business operations or services, or fall within the extension of that period, if an extension is provided.  Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2. EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall these Companies be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B. PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1. The period from the time of physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

   a. normal operations resume; or

   b. physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

   whichever is less.  Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2. In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

   a. To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

      b.  To replace physically damaged or destroyed mercantile stock necessary to resume operations; or

      c.  To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3.  For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion.  In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

      a.  Required for re-staffing or re-training employees; or

      b.  Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above; or

      c.  Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Ordinance or Law coverage, if such coverage is provided by this Policy.

C.  ADDITIONAL TIME ELEMENT COVERAGES

1.  EXTRA EXPENSE/EXPEDITING EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Covered Property utilized by the Insured.  Extra Expense means:

      a.  The reasonable and necessary extra expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business;

      b.  The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others; and

      c.  The reasonable extra costs (expediting expenses) for temporary repair of damaged property and for expediting the permanent repair or replacement of such damaged property. This includes overtime wages and extra costs of express or other rapid means of transportation. This does not include expenses recoverable elsewhere under this policy.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2.  RENTAL VALUE: As respects Covered Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption, but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

Rental Value means the sum of:

      a.  The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

      b.  The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

    c.   The fair rental value of any portion of such property which is occupied by the Insured.

Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3.   ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party, only if such Royalties are shown as such on the Statement of Values on file with the Program Manager. When determining the amount payable, the Companies will consider the amount of income derived by the Insured from such agreements before, and the probable amount of income after, the date of loss or damage.

4.   SOFT COSTS (BUILDER'S RISK): For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during the Period of Interruption (described in Paragraph B. above).  Such Soft Costs must be the result of direct damage from a Covered Cause of Loss.

The Companies will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs means:

    a.   The amount of actual interim or construction financing interest, including loan fees and other one-time charges incurred to negotiate a new construction loan and/or extend the existing one;

    b.   Realty taxes and ground rent, if any;

    c.   Advertising and promotional expenses;

    d.   Cost of additional commissions;

    e.   Architects, surveyors, legal, consulting engineers, accounting, licenses, permits, or other fees not otherwise covered by this Policy;

    f.   Project administration expense, but not including development fees;

    g.   Insurance premiums;

    h.   Founder's fee refunds; and

    i.   Net Business Income or Net Rental Income.

5.   CONTINGENT TIME ELEMENT: If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

    a.   wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured; or

    b.   wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property.  The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Covered Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the Policy's Coverage Territory.

6.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY: This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's covered **Location** is prohibited by an order of civil or military authority, provided that such order is a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown elsewhere.

    With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

7.  INGRESS & EGRESS: This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's covered Location is prohibited as a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown elsewhere.

    With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

8.  INTERDEPENDENCY: This Policy is extended to cover a Time Element loss at an insured **Location** that involves interdependency at one or more other insured **Locations**, all within the Policy's Coverage Territory.  The loss, including the resulting interdependency loss, will be adjusted based on the Time Element coverage that applies at the insured **Location** where the covered physical loss or damage occurred.

9.  EXTENDED PERIOD OF INDEMNITY: Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

    a.  the date on which the liability of the Companies for loss or damage would otherwise terminate; or

    b.  the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed;

    but in no event for a period of time exceeding the number of days specified elsewhere starting with the later of a. or b. above.  This Extended Period of Indemnity does not apply to any Additional Time Element Coverages, except RENTAL VALUE (Par. 2. above) or SOFT COSTS (BUILDER'S RISK) Net Business Income or Net Rental Income (Par. 4.i. above).

    This additional coverage does not include coverage for any increase in loss due to fines or damages for breach of contract or for late or non-completion of orders, or penalties of any nature.

D.  ADDITIONAL EXCLUSIONS: Section V – Time Element Coverage does not cover:

1.  IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than physical loss or damage from a Covered Cause of Loss to which this coverage applies.

2. REMOTE LOSS –

    a. Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order; or

    b. Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

    c. Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

    Nor shall the Companies be liable for any other consequential or remote loss, other than as specifically provided in this Section V.

3. FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction.

4. TRANSIT - Any loss resulting from loss or damage to property in transit.

5. BERTH AND/OR PORT BLOCKAGE – Blockage means a blockage of any part of the ship channel, dock areas, port or berths caused by disabled, stranded or sunken vessels, or rigs or cargo, or other obstructions to navigation.

E. TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY: The Companies shall not be liable for more than the Monthly Limitation of Indemnity shown elsewhere.  This Monthly Limitation Of Indemnity shall apply to all Time Element coverages, except those that have a sublimit.

Time Element Monthly Limitation means the most the Companies will pay monthly for a Time Element loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property. This Monthly Limitation of Indemnity is payable for each period of 30 consecutive days after the beginning of the Period of Interruption and is calculated by multiplying the scheduled Time Element value by the fraction shown elsewhere.

## SECTION VI – ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this Policy, including the deductibles and sublimits of liability corresponding to each such additional coverage stated in the Compass Supplemental Declarations.  These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the **Earth Movement**, **Flood**, or **Named Storm** Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from a Covered Cause of Loss to Accounts Receivable Records.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the insured **Locations** of debris of Covered Property or property of others remaining as a result of direct physical loss or damage insured against under this Policy that occurs during the policy period when the Insured gives written notice of such direct physical loss or damage to the Companies, but no later

than 180 days after the loss.  There is no liability for the expense of removing contaminated or polluted uninsured property, nor the **Pollutants or Contaminants** therein or thereon, whether or not the contamination results from an insured event.

C. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to **Electronic Data and Media**.

D. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured or any property at an insured **Location**, if such loss or damage is not payable under this Policy solely due to:

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

    a. Include any **Location** of the Insured or any property at an insured **Location**, at the inception of the Policy; or

    b. Report any newly acquired location or property before the period of automatic coverage provided under this Policy for Newly Acquired Location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values on file with the Program Manager.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Companies when discovered and an additional premium be paid, as determined by the Companies.

There is no coverage under this Paragraph for loss or damage which is covered under the Newly Acquired Property or **Miscellaneous Unnamed Locations** provisions of this Policy.

E. FINE ARTS: This Policy is extended to cover direct physical loss or damage to **Fine Arts**.  However, no coverage is provided for:

1. Breakage, marring, scratching, chipping or denting; unless such breakage, marring, scratching, chipping or denting is caused by a **Defined Cause of Loss**; or

2. Physical loss or damage as a result of restoring, repairing or retouching processes.

F. FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES: This Policy covers the following expenses resulting from a Covered Cause of Loss:

1. Fire brigade charges and any extinguishing expenses which the Insured incurs; or

2. Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

G. LEASEHOLD IMPROVEMENTS & BETTERMENTS: This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an insured **Location**.  No sublimit of liability applies to this additional coverage, but in no event will the Companies be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

H.  LEASEHOLD INTEREST: If Covered Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Covered Property is located, then this Policy is extended to cover "The Interest of the Insured as Lessee" (as defined below) or "The Interest of the Insured as Lessor" (as defined below), whichever is applicable, but only for the first three months succeeding the date of the loss and the "Net Lease Interest" (as defined below) shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro-rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

1.  The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

2.  Improvements and betterments to real property which are not covered under any other section of this Policy; and

3.  The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions:  The following terms, wherever used in this Paragraph H. shall mean:

1.  The Interest of the Insured as Lessee is defined as:

    a.  the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

    b.  the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2.  The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3.  Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Companies shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease.  Furthermore, the Named Insured shall use due diligence, including all things reasonably practicable, to diminish loss under this additional coverage.

I.  LIMITED POLLUTION COVERAGE: This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **Pollutants or Contaminants** from **Land** or water at an insured **Location** when such **Land** or water is contaminated or polluted due to a Covered Cause of Loss that occurs during the policy period.  There will be no coverage unless such expenses are reported to the Companies within 180 days of the date of direct physical loss or damage.

J.  LOCK REPLACEMENT: This policy covers the necessary expense to repair or replace the exterior or interior door locks of a covered **Building**:

1.  If the door keys are stolen in a covered theft loss; or

2.  When the covered property is damaged and the door keys are stolen by burglars.

K.  NEWLY ACQUIRED PROPERTY: This Policy covers real or personal property of the type insured under this Policy for the perils insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy.  Coverage under this additional coverage ceases at the earlier of the following dates:

1.  See Compass Supplemental Declarations from the date of acquisition or lease of such property; or

2.  When the newly acquired location is bound by the Companies; or

3.  The Program Manager notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or **Miscellaneous Unnamed Locations** provisions of this Policy.

L.  ORDINANCE OR LAW: In the event of direct physical loss or damage under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Companies shall pay:

1.  Coverage A: For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

2.  Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

3.  Coverage C: For the increased cost of repair or replacement of the damaged and undamaged Building on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site.  However, these Companies shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced.

4.  Coverage D: For the additional loss in Time Element (if covered), that the Insured sustains during the increased period of suspension of operations caused by or resulting from a consequence of enforcement of an ordinance or law.

5.  Coverage E (Down-Zoning): In the event the enforcement of an applicable Ordinance or Law results in the requirement to demolish and not replace the damaged Building(s), the Companies agree to pay the greater of: a) the Actual Cash Value; or b) the outstanding loan balance including accrued fees, if applicable, as determined at the time of loss for the **Building(s)** not permitted to be rebuilt.

    In the event the damaged **Building(s)** is permitted to be repaired or rebuilt, but only to a more limited extent as a consequence of the enforcement of any applicable Ordinance or Law, the Companies agree to pay: a) Replacement Cost for the repair of or construction of the permitted structure(s); and b) Actual Cash Value for the incremental portion of the original building that is not permitted to be repaired or replaced.

    Loss of Rents (if covered) shall include rents for those units that are unable to be rebuilt due to an Ordinance or Law Down-Zoning. Loss of Rents for those units not rebuilt due to Down-Zoning shall cease no later than the number of days as granted by the Extended Period of Indemnity

Coverage under this clause does not increase the applicable scheduled Limit of Insurance for the damaged **Building(s)**.

The Companies shall not be liable for any cost of demolition or increased cost of reconstruction, repair, debris removal or loss of use (including Time Element) necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

M.  PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers the reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

N.  PROFESSIONAL FEES: This Policy is extended to cover reasonable and necessary "Claim Preparation Costs" (as defined below) incurred by the Insured at the request of the Companies for the purpose of determining the extent or amount of insured loss or damage as a result of a Covered Cause of Loss under this Policy, provided that, the Insured obtains the prior written approval of the Companies for the vendor to be engaged by the Insured.

Claim Preparation Costs means:

1.  The cost of taking inventory and the cost of gathering and preparing other data to substantiate the extent or amount of loss or damage; and

2.  The cost of services provided by accountants, contractors and engineers solely for the purpose of determining the extent or amount of loss.

Claim Preparation Costs does not mean and does not include:

1.  Legal fees, charges and expenses;

2.  Fees and costs of a public claims adjuster, claim consultant, insurance broker or agent (except forensic accounting services), or any person acting for or on behalf of a public claims adjuster, claim consultant, or insurance broker or agent;

3.  Costs associated with negotiation or presentation of any claim or part of a claim that the Companies have advised the Insured is disputed or denied;

4.  Costs associated with establishing that any claim or part of a claim is covered by the Policy; or

5.  Costs which represent overhead or operating expense of any Insured, including salaries of such Insured's employees.

O.  PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any **Location** within the Coverage Territory when such personal property is removed from the insured **Locations** for the purpose of being repaired or serviced, excluding:

1.  Personal property insured under another policy or floater;

2.  Personal property excluded under this Policy; or

3.  Personal property removed from the insured **Locations** for normal storage or processing or preparation for sale or delivery.

P.  REWARD REIMBURSEMENT: This Policy covers monetary rewards for information that leads to a criminal conviction in connection with loss or damage to covered property by a Covered Cause of Loss.

Q.  SERVICE INTERRUPTION:   This Policy is extended to cover the loss or damage to Covered Property and Time Element (provided Time Element values are reported) resulting from direct

physical loss or damage from a Covered Cause of Loss to: (1) incoming electrical, gas, water and telecommunication equipment and outgoing sewer; or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines; all situated outside the insured **Locations**.

However, this extension of coverage DOES NOT apply to any loss caused by damage to any utility service listed in (1) or (2) above, if located more than five (5) statute miles from the Insured's covered **Location**.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown elsewhere. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, is restored.

The Sublimit shown elsewhere applies to all loss or damage to Covered Property and/or Time Element Coverage, combined arising out of one Service Interruption.  None of the additional Time Element Coverages set forth in Section V.C. apply to the Time Element Coverage provided herein, except Rental Value.

R.  SPOILAGE: This policy is extended to cover spoilage as a direct result of a Covered Cause of Loss and subject to the additional exclusions listed below.  The Companies shall be liable for direct physical loss or damage to:

1.  Perishable goods due to spoilage;

2.  Perishable goods due to contamination from the release of refrigerant, including but not limited to ammonia;

3.  Perishable goods due to spoilage caused by a Covered Cause of Loss to equipment that is owned by a utility, landlord, or other supplier of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have been incurred. Otherwise, payment will be determined in accordance with the Valuation provision of this Policy.

Perishable Goods means personal property:

1.  maintained under controlled conditions for its preservation, and

2.  susceptible to loss or damage if the controlled conditions change.

Additional Exclusions: The Companies shall not be liable for loss or damage caused by or resulting from:

1. The disconnection of any refrigerating, cooling or humidity control system from the source of power.

2. The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

S.  TRANSIT: This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

1.  Personal property shipped to customers on F.O.B., C&F, or similar terms.  The Insured's contingent interest in such shipments is admitted.

2.  The interest of the Insured in, and legal liability for, personal property of others in the actual or constructive custody of the Insured.

3.  Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage:

1.  Property insured under import or export ocean cargo policies.

2.  Waterborne shipments to and from the Policy's Coverage Territory.

3.  Shipments made by air, unless via regularly scheduled airlines.

4.  Property shipped by mail.

5.  Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

6.  Any transporting vehicle or conveyance.

7.  Waterborne shipments via the Panama Canal, or waterborne to and from the United States territories or possessions, Alaska, Puerto Rico, and Hawaii.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Policy's Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts.  The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

T.  VALUABLE PAPERS AND RECORDS: This Policy is extended to cover **Valuable Papers and Records.**


## SECTION VII – CONDITIONS

A.  ABANDONMENT: There can be no abandonment to the Companies of any property.

B.  ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE: Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any Certificates of Insurance on file with the Program Manager which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations and duties under this Policy.  Payment of

loss or return premium under this Policy to the First Named Insured shall satisfy the Companies' obligations with respect to all Insureds.

C.   ARBITRATION CLAUSE: All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent. Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection be made by a judge of a New York court.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

D.   ASSIGNMENT: The Insured may not assign this Policy without the Companies' prior written consent.

E.   BRANDS AND LABELS: If branded or labeled merchandise covered by this Policy is physically damaged and the Companies elect to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

F.   CANCELLATION AND ADDITIONS OR DELETIONS:

   1.   This Policy can be canceled by the First Named Insured by providing the Companies with:

    a.  An advanced written request for cancellation stating when the cancellation shall be effective, and

    b.  The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2.  This Policy may be canceled by the Companies by giving to the Insured at least ninety (90) days written notice of cancellation or in the case of non-payment of premium or material mis-statement, at least ten (10) days written notice of cancellation.

3.  The cancellation will be effective even if the Companies have not made or offered a refund.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  If this Policy is canceled, the Companies will send the First Named Insured any premium refund due.

5.  Earned Premium:

    a.  For **Locations** NOT "Exposed to Hurricanes", if the Insured cancels this Policy or removes a **Location,** the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the Policy.

    b.  For **Locations** "Exposed to Hurricanes", if the Insured cancels this Policy, removes a **Location** or reduces the amount of insurance on a **Location** and coverage existed any time during the period of June 1st to November 1st, the amount of premium the Companies will return will be the Unearned Premium for the **Location**. The Unearned Premium is the **Location** premium times the Unearned Factor noted below:

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-180 | 20.0% |
| 181-210 | 15.0% |
| 211-240 | 10.0% |
| 241-270 | 7.5% |
| 271-300 | 5.0% |
| 301-330 | 2.5% |
| 331 more | 0% |

    c.  However, subject to receipt of closing documents within 30 days of closing, this Policy allows pro-rata return premium for locations sold, but not for loss of a management contract (unless the management contract is lost due to the sale of the property).

    d.  For **Locations** "Exposed to Hurricanes", if added (or coverage increased at an existing **location** which is "Exposed to Hurricanes") during the term of the Policy and coverage exists at any time during the period of June 1st to November 1st, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in b. above.  Otherwise, it shall be pro-rata.

However, subject to receipt of closing documents, this Policy allows pro-rata additional premium for **Locations** purchased during the policy term.

    e. **Locations** of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in b. above.  **Locations** of differing kind or quality or locations in Dade, Broward or Palm Beach counties of Florida must be approved by the Program Manager prior to attachment.

    f. If a **Location** is "Exposed to Hurricanes", the provisions of this clause replace any short rate provisions stipulated in this Policy, all subject to the Minimum Earned Premium provisions.

    g. "Exposed to Hurricanes" is defined to include any **Location** within 100 miles of the closest salt water of the Atlantic Ocean or the Gulf of Mexico.

    h. Coverage cannot be increased nor additional **Locations** added if they are "Exposed to Hurricanes" and a **Named Storm** is in existence, unless with the express written consent of the Program Manager.

    i. Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the Policy.

    j. Proof of mailing will be sufficient proof of notice of cancellation.

    k. In the event of a total loss or constructive total loss to Covered Property by a Covered Cause of Loss, the premium applicable to that Covered Property shall be fully earned and no return premium will be due to the Insured.

G. CLAIMS REPORTING AND ADJUSTMENT:

| | |
|---|---|
| All Claims shall be reported to: | AmRisc, LLC Claims Department |
| | E-Mail: claims@amrisc.com |
| | Ph: 252-247-8796 |
| | Fax: 252-726-2855 |
| All Claims shall be adjusted by: | CJW and Associates |
| | 1420 Edgewater Drive, Suite 101, Orlando, FL 32804 |

and/or its assigned adjusters and the costs of such adjustments shall be borne by each Company in proportion to its pro-rata participation in this policy.

In the event the Company(s) elects to use its own adjusters or independent adjusters or consultants other than as listed above, expenses so incurred shall be borne solely by the Company.

It is further understood and agreed that, notwithstanding any provision contained elsewhere in this policy to the contrary, the Insured will be deemed to be in full compliance with any claim notice requirements, if notice of an occurrence is made to the Company[s] as soon as practicable after knowledge by the Insured or their representatives, that such occurrence will, or is likely to result in a claim under the policy. Any unintentional failure to report any occurrence or claim shall not invalidate coverage with respect to any such occurrence or claim.

H. CONTROL OF DAMAGED MERCHANDISE: The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption.  No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Companies any salvage obtained by the Insured on any sale or other disposition of such goods.  The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I. CONTROL OF PROPERTY: Any act or neglect of any person other than the Insured beyond the Insured's direction or control will not affect this insurance.

J. CURRENCY: Any amount of money specified in the Policy, including Limits of Liability, Deductibles, Premiums, and any loss payments shall be in the currency of the United States of America.

K.  DIVISIBLE CONTRACT: Subject to Condition O. below, if the **Locations** described in this Policy include two or more **buildings** or the contents of two or more **buildings**, the breach of any condition of this Policy in respect to any one or more of the **buildings** insured or containing the Covered Property, shall not prejudice the right to recover for physical loss or damage occurring in any **building** insured or containing the Covered Property where, at the time of such loss or damage, a breach of condition does not exist.

L.  INSPECTION AND AUDIT: The Companies, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy. Neither the Companies' right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Companies, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Companies may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

M.  JOINT LOSS AGREEMENT: In the event the insurance company, if any, providing Equipment Breakdown insurance ('EBD insurer') disputes any portion of the claim made against that EBD insurer, but these Companies believe the EBD insurer should have paid that portion of the claim, then these Companies shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than these Companies would have paid if there had been no Equipment Breakdown policy in effect, subject to the following conditions:

1.  The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and all of the insurers, is limited to the minimum amount remaining payable under the Equipment Breakdown policy;

2.  The EBD insurer shall simultaneously pay to the Insured one-half of said amount which is in disagreement;

3.  The payments by all of the insurers hereunder and acceptance of the same by the Insured signify the agreement of all the insurers to submit to and proceed with arbitration within 90 days of such payments; the arbitrators shall be three in number, one of whom shall be appointed by the Property insurance Companies and one of whom shall be appointed by the EBD insurer and the third shall be appointed with the consent of the Property insurance Companies and the EBD insurer, and the decision by the arbitrators shall be binding upon all the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

4.  The Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

5.  The provisions of this clause shall not apply unless such other policy issued by the EBD insurer is similarly endorsed;

6.  Acceptance by the Insured of sums paid pursuant to the provisions of this clause, including an arbitration award, shall not operate to alter, waive, surrender, or in any way affect the rights of the Insured against any of the insurers.

N.  LOSS PAYEES, LENDER'S LOSS PAYEES, AND MORTGAGEES (OR TRUSTEES):

1.  Loss, or damage, if any, under this Policy shall be payable to:

    a.  any Loss Payee or Lender's Loss Payee as its interest may appear; and
    b.  any Mortgagee (or Trustee) as its interest may appear under all present or future mortgages upon the insured property in which the aforesaid may have an interest as Mortgagee (or Trustee), in order of precedence of said mortgages.

c. Insurance Trustee: If the Insured names an Insurance Trustee, the Companies will adjust the loss with the Insured, but will pay the Insurance Trustee.  If the Companies pay the Insurance Trustee, the payments will satisfy the Insured's claim against the Companies.

2. As to the interest of the Lender's Loss Payee or Mortgagee (or Trustee) only,  this insurance shall not be invalidated by any act or neglect of the Insured nor by any foreclosure or other proceedings or notice of sale relating to said property nor by any change in the title or ownership of said property, nor by the occupation of the insured **Locations** for purposes more hazardous than are permitted by this Policy; provided, that in case the Insured shall neglect to pay any premium due under this Policy, the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand pay the same.

The Lender's Loss Payee or Mortgagee (or Trustee) must notify the Program Manager of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the Lender's Loss Payee or Mortgagee (or Trustee) and, unless permitted by this Policy it shall be noted hereon and the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand, pay the premium for such increased hazard; otherwise, this entire Clause 2. shall be null and void.

3. If the Companies cancel this Policy, they will give:

a. ten (10) days before the effective date, if cancellation is for non-payment of premium or material mis-statement; or

b. ninety (90) days before the effective date, if cancellation is for any other reason.

4. Nothing herein shall affect the rights of the Companies to suspend insurance [which shall include any insurance applying to the interest of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee)] on any machine, vessel or part thereof in accordance with the Suspension Clause of Equipment Breakdown (if such coverage is provided by endorsement to this policy).  The Companies agree to furnish the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) with a copy of the suspension notice at the Loss Payee's, Lender's Loss Payee's, or Mortgagee's (or Trustee's) address.

5. Whenever the Companies shall pay the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) any sum for loss under this Policy and shall claim that, as to the Insured, no liability therefor existed, the Companies shall, to the extent of such payment, be subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at their option pay to the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of all rights and securities; but no subrogation shall impair the right of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) to recover the full amount of the Loss Payee's, Lender's Loss Payee's or Mortgagee's (or Trustee's) claim.

O. MISREPRESENTATION AND FRAUD: This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

P. OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE: In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible.  Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

However, in the event the Named Insured is a Condominium Association, the Unit-Owner may have other insurance covering the same property as this insurance. This insurance is intended to be Primary, and not to contribute with other such Unit-Owner insurance.

Q. PROTECTION AND PRESERVATION OF PROPERTY: In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Covered Property hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy and be subject to the applicable deductible, sublimit of liability and the Policy Limit.

If, as a result of the Insured's efforts to protect the insured property, no direct physical loss or damage occurs to the insured property, the applicable Deductible shall be that deductible that would have applied to the Covered Cause of Loss from which the Insured protected the property.

R. REINSTATEMENT OF LIMITS: Except for any Covered Cause of Loss which is subject to an aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

S. REQUIREMENTS IN CASE OF LOSS: The Insured shall:

1.  Give immediate written notice of any loss or damage to the Program Manager's Claims Department;

2.  Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3.  Protect the property from further loss or damage;

4.  Separate the damaged and undamaged personal property;

5.  Maintain such property in the best possible order;

6.  Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7.  Furnish all other documents or insurance policies that the Companies may reasonably require;

8.  Allow the Companies to access and inspect any of the damaged or undamaged property; and

9.  Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within ninety (90) days after the loss, unless such time is extended in writing by the Companies, the Insured shall provide the Companies with a Proof of Loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1.  The time and origin of the loss;

2.  The interest of the Insured and of all others in the property;

3.  The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon;

4.  All other contracts of insurance, whether collectible or not, covering any of said property; and

5.  Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

T.  REVIEW OF VALUES: The Insured shall provide the Program Manager at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all insured **Locations**.

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**. The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost basis and on an **Actual Cash Value** basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values.   Time Element values (if covered) shall be provided in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to the Program Manager.   Receipt of said Statement of Values by the Program Manager shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with the Program Manager, or attached to this Policy.

U.  SALVAGE AND RECOVERIES: All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

V.  SETTLEMENT OF CLAIMS: The amount of loss for which the Companies may be liable shall be payable within thirty (30) days after Proof of Loss, as herein required, is received and accepted by the Companies and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Companies or an amount is determined by binding Arbitration in accordance with the provisions of this Policy.

The Companies shall have the option to take all, or any part of the property at the agreed or arbitrated value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so within sixty (60) days after receipt of the Proof of Loss herein required.

W.  SEVERAL LIABILITY NOTICE
LMA5096 03/08 (Combined Certificate) - amended

The liability of an insurer under this Policy is several and not joint with other insurers party to this Policy.  An insurer is liable only for the proportion of liability it has underwritten.  An insurer is not jointly liable for the proportion of liability underwritten by any other insurer.   Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this Policy.
The proportion of liability under this Policy underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this Policy.
In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer.  Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members.  A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this Policy.  The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA United Kingdom.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.  Although reference is made at various points in this clause to "this Policy" in the singular, where the circumstances so require this should be read as a reference to Policies in the plural.

Wherever the word Insurers is mentioned in this clause, this is deemed to also mean reinsured in respect of reinsurance business.

X. SUBROGATION: The Companies may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment has been made by the Companies, but the Companies shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

The Companies do waive rights of recovery against any unit-owner of a Condominium Association.

However, notwithstanding the foregoing, the Companies shall be subrogated to all the Insured's rights of recover against:

    1.   any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

    2.   any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Companies and, upon the Companies' request and expense will:

    1.  Attend hearings and trials; and

    2.  Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

Y. SUIT AGAINST COMPANIES: No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

Z. TERRITORIAL LIMITATIONS: Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

AA. TITLES OF PARAGRAPHS: The titles of the various paragraphs of this Policy (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

BB. VACANCY: The Insured has permission to cease operations or remain vacant or unoccupied at an insured **Location** for up to 90 days. Beyond the 90th consecutive day of cessation of operations, vacancy or not occupied, whether or not that period of time commenced prior to or during the Policy Period, any loss or damage caused by or resulting, directly or indirectly, from **Vandalism and Malicious Mischief**, sprinkler leakage, glass breakage, water, theft or attempted theft is excluded; however these restrictions in coverage will not apply if the Insured maintains existing heat, fire protection, security and alarm services.

This restriction does not apply to any **Location** in the course of construction or renovation.

## SECTION VIII – POLICY DEFINITIONS

A. **Actual Cash Value:** The following is added to any provision which uses the term Actual Cash Value:

Actual Cash Value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.  Actual Cash Value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The Actual Cash Value of the lost or damaged property may be significantly less than its replacement cost.

B. **Aircraft or Vehicle Impact** means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

C. **Average Daily Value (ADV):** Average Daily Value shall be the total 100% Time Element Value that would have been projected for the Period of Interruption for the **Location(s)** where the physical loss or damage occurs, had no physical loss or damage occurred, divided by the number of working days in such period.  The sum shall include all Time Element values to which the operations of the **Locations(s)** directly or indirectly contribute.

D. **Building:** Building is defined as a fully enclosed permanent structure with walls and a continuous roof; and such structure while in the course of construction.

E. **Catastrophic Ground Cover Collapse** means direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

1. The abrupt collapse of the ground cover;

2. A depression in the ground cover clearly visible to the naked eye;

3. Structural damage to the building, including the foundation; and

4. The insured **Building** or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

The Earth Movement exclusion does not apply to coverage for Catastrophic Ground Cover Collapse.

Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance.  Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earth Movement (if either or both of these causes of loss are covered), only one Limit of Insurance will apply to such loss or damage.

F. **Collapse** means an abrupt falling down or caving in of a **building** or any part of a **building** with the result that the **building** or part of the **building** cannot be occupied for its current intended purpose.  The Collapse must be caused by or resulting from one or more of the following:

1. Building decay that is hidden from view, unless the presence of such decay is known to the Insured prior to collapse;

2. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to the Insured prior to collapse;

3. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of construction, remodeling or renovation.

    4. Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

        a. A cause of loss listed in F.1. or F.2;

        b. One or more of the **Defined Causes of Loss**;

        c. Breakage of building glass;

        d. Weight of people or personal property; or

        e. Weight of rain or snow or ice that collects on a roof.

    5. **Catastrophic Ground Cover Collapse**.

G. **Companies:** The following words shall be synonymous with each other:  "Underwriters", "Insurers" and "Companies".

H. **Contractor's Equipment**: Machinery, accessories, equipment, spare parts or tools of a mobile nature that are used in contracting, installation, erection, repair or moving operations and projects. It includes self-propelled vehicles that transport mounted equipment and any vehicle not registered or licensed and not used on public roads, even though designed for highway use.

I. **Defined Cause of Loss** means Fire, Lightning, **Explosion**, **Windstorm or Hail**, **Smoke**, **Aircraft or Vehicle Impact**, **Riot, Strike or Civil Commotion**, **Vandalism and Malicious Mischief**, or **Leakage from Fire Protection Equipment**.

J. **Earth Movement** means any natural or manmade:

    1. Earthquake, including any earth sinking, rising or shifting related to such event;

    2. Landslide, including any earth sinking, rising or shifting related to such event;

    3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

    4. Earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface

    5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, **Sinkhole Loss**, subsidence or any other **Earth Movement**.

K. **Earth Movement Counties**: As referenced in this Policy, designated Earthquake Zones shall be defined as all **Locations** situated within the States or Counties as specified below:

    1. **Pacific Northwest States:**

    Oregon and Washington.

    2. **New Madrid Earthquake Zone Counties:**

    <u>Arkansas:</u> Arkansas, Clay, Cleburne, Conway, Craighead, Crittenden, Cross, Desha, Faulkner, Fulton, Independence, Izard, Greene, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Prairie, Poinsett, Pulaski, Randolph, Sharp, St. Francis, Stone, Van Buren, White, and Woodruff.

Illinois: Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Moultrie, Perry, Pope, Pulaski, Randolph, Richland, Saline, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, and Williamson.

Indiana: Daviess, Dubois, Gibson, Knox, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, and Warrick.

Kentucky: Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Todd, Trigg, Union, and Webster.

Mississippi: Alcorn, Benton, Bolivar, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tunica, and Union.

Missouri: Bollinger, Butler, Cape Girardeau, Carter, Crawford, Dent, Dunklin, Franklin, Howell, Iron, Jefferson, Lincoln, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis City, St. Louis, Ste. Genevieve, Stoddard, Warren, Washington, and Wayne.

Tennessee: Benton, Carroll, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, and Weakley.

L. **Electronic Data and Media** means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

M. **Equipment Breakdown** means physical damage to covered equipment that is a direct result of an Accident. Accident means a fortuitous event that causes direct physical loss or damage to Covered Property. The event must be one of the following:

1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

N. **Explosion**: Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured:

1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

3. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

COMPASS 04 18                    Page 34 of 42

Explosion will include loss or damage arising or resulting from:

1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, or within the flues or passages which conduct the gases of combustion therefrom;

2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition:

1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

2. Bursting or rupture caused by freezing;

3. Sonic shock waves, generally known as Sonic Boom;

4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

O. **Exterior Insulation and Finish Systems (EIFS):** means a non-load bearing, exterior wall cladding system that consists of an expanded foam insulation board attached either adhesively or mechanically, or both, to a substrate; an integrally reinforced base coat; and a textured protective finish coat.

P. **Fine Arts** means: paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metal, watercraft, aircraft, money and securities.

Q. **Flood** means, whether natural or manmade: Flood waters, surface water, waves, tide or tidal water, tsunami, overflow or rupture of a dam, levee, dike, floodgates, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.

Water which backs up or discharges from sewers, drains or sumps is a separate Covered Cause of Loss and is not considered Flood; unless such backup or discharge was caused by Flood as defined above, at which point the backup or discharge shall be considered Flood.

R. **Fungus, Mold(s), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms.

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s).

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

S. **Hurricane:** A hurricane is a storm system that has been declared to be a Hurricane by the National Hurricane Center of the National Weather Service. If **Flood** is caused by, results from, or accompanies a Hurricane, then any physical loss or damage caused by, resulting from, or arising out of that **Flood** shall be treated as **Flood**, and not Hurricane, for purposes of exclusions, deductibles, limits and sublimits hereunder.

T. **Land** means land (except land for which values are reported and premiums are charged hereunder), including dikes, levees, and other surface containment structures.  Surface containment structures are not land to a depth of six inches below such surface containment structures.

U. **Leakage From Fire Protection Equipment** means direct physical loss or damage from:

1. Water or other substances discharged from within any part of the **Fire Protection Equipment** for the insured **Location** or for any adjoining **Locations**;

2. Collapse or fall of tanks forming a part of the **Fire Protection Equipment** or the component parts or supports of such tanks.

The term **Fire Protection Equipment** includes tanks, water mains, hydrants or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include:

1. Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2. Any underground water mains or appurtenances located outside of the insured **Location** and forming a part of the public water distribution system;

3. Any pond or reservoir in which the water is impounded by a dam.

V. **Location** means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear land space or open waterways, each not less than two hundred feet wide.  Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

W. **Miscellaneous Unnamed Location(s)** means a location that has not been included in the Statement of Values on file with the Program Manager and has not been reported to the Program Manager as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

X. **Named Storm:** The term "Named Storm" shall include, but not be limited to, storm, cyclone, typhoon, atmospheric disturbance, depression or other weather phenomena designated by the US National Hurricane Center and where a name (and not only a number) has been applied. If **Flood** is caused by, results from, or accompanies a Named Storm, then any physical loss or damage caused by, resulting from, or arising out of that **Flood** shall be treated as **Flood**, and not Named Storm, for purposes of exclusions, deductibles, limits and sublimits hereunder.

Y. **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses.  The **occurrence** must occur during the policy period.

If more than one event for **Windstorm & Hail, Named Storm, Riot Strike Or Civil Commotion, Vandalism & Malicious Mischief, Flood,** or Terrorism covered by this Policy occurs within any period of 72 hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence**.  When filing Proof of Loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Covered Property.

If more than one event for **Earth Movement** covered by this Policy occurs within any period of 168 hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence**.  When filing Proof of Loss, the Insured may elect the moment at which the 168 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Covered Property.

Z. **Pollutants or Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smog, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder,

including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

AA.  **Riot, Strike or Civil Commotion** means riot and civil commotion including:

1. Acts of striking employees while occupying the insured **Location**; and

2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

BB.  **Sinkhole Loss**

1.  As respects locations in all states, EXCEPT Florida:

Sinkhole Loss means: The sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This does not include:

a.   The cost of filling sinkholes; or

b.   Sinking or collapse of land into man-made underground cavities.

2.  As respects locations in Florida:

a.  **Sinkhole Loss,** means loss or damage to Covered Property when "structural damage" to the covered **Building**, including the foundation, is caused by settlement or systematic weakening of the earth supporting the covered **Building**, only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

Coverage for Sinkhole Loss includes stabilization of the **Building** (including land stabilization) and repair to the foundation, provided such work is in accordance with the requirements of Florida Insurance Law and in accordance with the recommendation of a professional engineer and with notice to the Insured. The professional engineer must be selected or approved by the Companies. However, until the Insured enters into a contract for performance of building stabilization or foundation repair in accordance with the recommendations of the professional engineer as set forth in a report from the Companies:

1) The Companies will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the **Building**; and

2) The Companies' payment for Sinkhole Loss to Covered Property may be limited to the Actual Cash Value of the loss to such property.

The Insured must enter into a contract for the performance of building stabilization and/or foundation repair in accordance with the aforementioned recommendations, within 90 days after the Companies notify the Insured that there is coverage for Sinkhole Loss. After the Insured has entered into such contract, the Companies will pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred.

However, if the professional engineer determines, prior to the Insured entering into the aforementioned contract or prior to the start of repair work, that the repairs will exceed the applicable Limit of Insurance, the Companies must either complete the recommended repairs or pay that Limit of Insurance upon such determination. If the aforementioned determination is made during the course of repair work and the Companies have begun making payments

for the work performed, the Companies must either complete the recommended repairs or pay only the remaining portion of the applicable Limit of Insurance upon such determination. The most the Companies will pay for the total of all Sinkhole Loss, including **Building** and land stabilization and foundation repair, is the applicable Limit of Insurance on the affected **Building**.

The stabilization and all other repairs to the Covered Property must be completed within 12 months after entering into the contract for the performance of these repairs, unless:

> 1) There is a mutual agreement between the Insured and the Companies;
>
> 2) The claim is involved with the neutral evaluation process;
>
> 3) The claim is in litigation; or
>
> 4) The claim is under appraisal or mediation.

b. Sinkhole Loss does not include:

> 1) Sinking or collapse of land into man-made underground cavities; or
>
> 2) Earthquake.

c. With respect to a claim for alleged Sinkhole Loss, the following provision is added:

> Following receipt by the Companies of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if the Companies deny the claim, the Companies will notify the Insured of his right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department). For alleged Sinkhole Loss to commercial residential or farm residential properties, this program applies instead of any mediation procedure set forth elsewhere in this policy, but does not invalidate the Appraisal Condition.
>
> Either party may file a request with the Department for neutral evaluation; the other party must comply with such request. The Companies will pay reasonable costs associated with the neutral evaluation, regardless of which party makes the request. But if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party must bear the costs of those services. The neutral evaluator will be selected from a list maintained by the Department. The recommendation of the neutral evaluator will not be binding on either party.
>
> Participation in the neutral evaluation program does not change the Insured's right to file suit against the Companies, except that the time for filing suit is extended for a period of 60 days following the conclusion of the neutral evaluation process or five years, whichever is later.

d. Coverage for Sinkhole Loss does not increase the applicable Limit of Insurance. Even if loss or damage qualifies under, or includes, both Catastrophic Ground Cover Collapse (addressed elsewhere) and Sinkhole Loss, only one Limit of Insurance will apply to such loss or damage.

e. The following provision is added to the REQUIREMENTS IN CASE OF LOSS Condition:

A claim for Sinkhole Loss, including but not limited to initial, supplemental and reopened claims is barred unless notice of claim is provided to the Companies in accordance with the terms of this policy within two years after the Insured knew or reasonably should have known about the Sinkhole Loss.

The following definitions are added with respect to the coverage provided for Sinkhole loss:

1) "Structural damage" means a covered **Building**, regardless of the date of its construction, has experienced the following:

   a) Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior **Building** structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

   b) Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" and that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

   c) Damage that results in listing, leaning, or buckling of the exterior load bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

   d) Damage that results in the building, or any portion of the **Building** containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such **Building** as defined within the Florida Building Code; or

   e) Damage occurring on or after October 15, 2005, that qualifies as substantial structural damage as defined in the Florida Building Code.

2) "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3) "Primary structural system" means an assemblage of "primary structural members".

f. If the Companies deny the claim for Sinkhole Loss without performing testing under section 627.7072, Florida Statutes, the Insured may demand testing by communicating such demand to the Companies in writing within 60 days after the Insured receives the Companies' denial of the claim. The Insured is responsible for 50% of the testing costs, or $2,500, whichever is less. If the Companies' professional engineer or geologist provides written certification, pursuant to section 627.7073, that there is sinkhole loss, the Companies will reimburse the Insured for the testing costs.

g. The Insured may not accept a rebate from any person performing repairs for Sinkhole Loss. If the Insured receives a rebate, coverage under this Policy is void and the Insured must refund the amount of the rebate to the Companies.

h. If the Companies deny the claim for Sinkhole Loss upon receipt of written certification from a professional engineer or geologist, pursuant to section 627. 7073, that there is no Sinkhole loss or that the cause of the damage was not Sinkhole activity, and if the Sinkhole claim was submitted without good faith grounds for submitting such claim, the Insured shall reimburse the Companies for 50% of the actual costs of the analyses and services provided under sections 627.7072 and 627.7073, or $2,500, whichever is less. The Insured is not required to pay such reimbursement unless the Insured requested the analysis and services and the Companies, before ordering the analysis, informed the Insured in writing of the potential for reimbursement and gave the Insured the opportunity to withdraw the claim.

i. As a precondition to accepting payment for Sinkhole loss, the Insured must file with the county clerk of court, a copy of any Sinkhole report regarding the property which was prepared on behalf or at the Insured's request. The Insured will bear the cost of filing and recording the sinkhole report.

CC. **Smoke** means loss or damage ensuing from a sudden and accidental release of Smoke.  The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

DD. **Special Flood Hazard Areas** means areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA) and shall only include those Flood Zones that are prefixed A or V.

EE. **Tier 1** and **Tier 2**:  Shall be defined as all locations situated within Tier 1 or Tier 2 Counties, Parishes or Independent Cities as specified below:

| | |
|---|---|
| Alabama: | Tier 1: Baldwin and Mobile. |
| | Tier 2: Covington, Escambia, Geneva, and Houston. |
| Connecticut: | Tier 1: Fairfield, Middlesex, New Haven, and New London. |
| | Tier 2: None. |
| Delaware: | Tier 1: Sussex. |
| | Tier 2: Kent. |
| Florida: | Tier 1: All counties. |
| | Tier 2: None. |
| Georgia: | Tier 1: Bryan, Camden, Chatham, Glynn, Liberty, and Mcintosh. |
| | Tier 2: Brantley, Charlton, Effingham, Long, and Wayne. |
| Hawaii: | Tier 1: All counties. |
| | Tier 2: None. |
| Louisiana: | Tier 1: Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St Bernard, St Martin (South), St Mary, St Tammany, Terrebonne, and Vermilion. |
| | Tier 2: Acadia, Ascension, Assumption, Calcasieu, Iberville, Jefferson Davis, Lafayette, St Charles, St James, St John The Baptist, St Martin (North), Tangipahoa, and Washington. |
| Massachusetts: | Tier 1: Barnstable, Bristol, Dukes, Essex, Nantucket, Norfolk, Plymouth, and Suffolk. |
| | Tier 2: Middlesex. |

| | |
|---|---|
| <u>Maryland:</u> | Tier 1: Worcester. |
| | Tier 2: Calvert, Dorchester, St Mary's, Somerset, and Wilcomico. |
| <u>Maine:</u> | Tier 1: Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, and York. |
| | Tier 2: None. |
| <u>Mississippi:</u> | Tier 1: Hancock, Harrison, and Jackson. |
| | Tier 2: George, Pearl River, and Stone. |
| <u>New Hampshire:</u> | Tier 1: Rockingham and Strafford. |
| | Tier 2: None. |
| <u>New Jersey:</u> | Tier 1: Atlantic, Cape May, Monmouth, and Ocean. |
| | Tier 2: Burlington, Cumberland, Essex, Hudson, Middlesex, and Union. |
| <u>New York:</u> | Tier 1: Kings, Nassau, Queens, Richmond, and Suffolk. |
| | Tier 2: Bronx, New York, and Westchester. |
| <u>North Carolina:</u> | Tier 1: Beaufort, Bertie, Brunswick, Camden, Carteret, Chowan, Currituck, Dare, Hyde, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans Tyrrell, and Washington. |
| | Tier 2: Bladen, Columbus, Craven, Duplin, Gates, Hertford, Jones, Lenoir, Martin, Pitt, and Sampson. |
| <u>Rhode Island:</u> | Tier 1: Newport, and Washington. |
| | Tier 2: Bristol, and Kent. |
| <u>South Carolina:</u> | Tier 1: Beaufort, Charleston, Colleton, Georgetown, Horry, and Jasper. |
| | Tier 2: Berkeley, Dillon, Dorchester, Florence, Hampton, Marion, and Williamsburg. |
| <u>Texas:</u> | Tier 1: Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Refugio, San Patricio, and Willacy. |
| | Tier 2: Bee, Brooks, Fort Bend, Goliad, Hardin, Harris, Hidalgo, Jackson, Jim Wells, Liberty, Live Oak, Orange, Victoria, and Wharton. |
| <u>Virginia:</u> | Tier 1: Accomack, Chesapeake, Gloucester, Hampton, Isle of Wight, James City, Lancaster, Mathews, Middlesex, Newport News, Norfolk, Northampton, Northumberland, Poquoson, Portsmouth, Suffolk, Surry, Virginia Beach City, Westmoreland, Williamsburg City, and York. |
| | Tier 2: None. |

FF. **Total Insurable Values (TIV):** The Total Insurable Values shall include all Covered Property (Real & Personal Property) and Time Element values reported on the Statement of Values on file with the Program Manager.

GG. **Unit of Insurance**: The following shall be considered a separate "unit" of insurance:

1. Each separate **Building** or Structure;
2. Contents in each Separate **Building** or Structure;
3. Property in the Yard or open at each scheduled **Location**;

4.   Business Income/Extra Expense in each Separate **Building** or Structure.

The above definition is to be used in the determination of the DEDUCTIBLE where a percent (%) of TIV of each separate "unit" DEDUCTIBLE applies at the time when such loss occurs.

HH.  **Valuable Papers and Records** means documents that are written, printed or otherwise inscribed. These include:

1.   Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2.   Legal and financial agreements, such as deeds and mortgages;

3.   Addressograph plates; and

4.   Any electrically produced data, such as printouts, punched cards, tapes or discs.

**Valuable Papers and Records** does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

II.  **Vandalism and Malicious Mischief** means willful and malicious damage to, or destruction of, Covered Property.  Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking in or exiting of burglars.

JJ.  **Warranty:**

1. "Warranty" means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the Companies' liability hereunder, the existence of fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of loss or damage within the coverage of the contract.

2. A breach of warranty shall not void an insurance contract or defeat recovery hereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract.  If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not void such contract or defeat recovery hereunder with respect to any kind of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.

KK.  **Windstorm or Hail:**  Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under this peril for loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not.

## <u>Compass Change- Earned Premium</u>

**This endorsement changes the policy. Please read carefully.**

**This endorsement modifies insurance provided under the following:**
**Compass Commercial Property Form 04 18**

It is understood and agreed that this policy is amended as follows:
- Section VII, F is deleted in its entirety and replaced with the following:

F.  CANCELLATION AND ADDITIONS OR DELETIONS:

1.  This Policy can be canceled by the First Named Insured by providing the Companies with:
    a.  An advanced written request for cancellation stating when the cancellation shall be effective, and
    b.  The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2.  This Policy may be canceled by the Companies by giving to the Insured at least ninety (90) days written notice of cancellation or in the case of non-payment of premium or material misstatement, at least ten (10) days written notice of cancellation.

3.  The cancellation will be effective even if the Companies have not made or offered a refund.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  If this Policy is canceled, the Companies will send the First Named Insured any premium refund due.

5.  Earned Premium:
    a.  For **Locations** NOT "Exposed to Hurricanes", if the Insured cancels this Policy or removes a **Location,** the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the Policy.

    b.  For **Locations** "Exposed to Hurricanes", if the Insured cancels this Policy, removes a      **Location** or reduces the amount of insurance on a **Location** and coverage existed any time during the period of June 1st to November 1st, the amount of premium the Companies will return will be the Unearned Premium for the **Location**. The Unearned Premium is the **Location** premium times the Unearned Factor noted below:

AR Compass Change- AR EP 04 20

| Days Policy in Force | Unearned Factor |
|---|---|
| 1-90 | 65.0% |
| 91-180 | 50.0% |
| 181-210 | 30.0% |
| 211-240 | 15.0% |
| 241-270 | 7.5% |
| 271-300 | 5.0% |
| 301-330 | 2.5% |
| 331 or more | 0.0% |

c.  However, subject to receipt of closing documents within 30 days of closing, this Policy allows pro-rata return premium for locations sold, but not for loss of a management contract (unless the management contract is lost due to the sale of the property).

d.  For **Locations** "Exposed to Hurricanes", if added (or coverage increased at an existing **Location** which is "Exposed to Hurricanes") during the term of the Policy and coverage exists at any time during the period of June 1st to November 1st, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in b. above. Otherwise, it shall be pro-rata.

   However, subject to receipt of closing documents, this Policy allows pro-rata additional premium for **Locations** purchased during the policy term.

e.  **Locations** of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in b. above.  **Locations** of differing kind or quality or **Locations** in Dade, Broward or Palm Beach counties of Florida must be approved by the Program Manager prior to attachment.

f.  If a **Location** is "Exposed to Hurricanes", the provisions of this clause replace any short rate provisions stipulated in this Policy, all subject to the Minimum Earned Premium provisions.

g.  "Exposed to Hurricanes" is defined to include any Location within 100 miles of the closest salt water of the Atlantic Ocean or the Gulf of Mexico.

h.  Coverage cannot be increased nor additional **Locations** added if they are "Exposed to Hurricanes" and a **Named Storm** is in existence, unless with the express written consent of the Program Manager.

AR Compass Change- AR EP 04 20

i.   Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the Policy.

j.   Proof of mailing will be sufficient proof of notice of cancellation.

k.   In the event of a total loss or constructive total loss to Covered Property by a Covered Cause of Loss, the premium applicable to that Covered Property shall be fully earned and no return premium will be due to the Insured.

All other terms and conditions remain unchanged.

AR Compass Change- AR EP 04 20

# Compass Change- Property Cyber and Data Endorsement

**This endorsement changes the policy. Please read carefully.**

**This endorsement modifies insurance provided under the following:**
**Compass Commercial Property Form 04 18**

**This endorsement does not bear on the following form if it is also attached to this policy:**
**Cyber Suite Coverage Form (AR Cyber)**

It is understood and agreed that this policy is amended as follows:
1. The following Compass clauses are deleted:
   a. Section II- Covered Causes of Loss, B. Exclusions, 16. Electronic Data & Media
   b. Section IV- Valuations, E. Electronic Data and Media
   c. Section VIII- Policy Definitions, L. Electronic Data and Media
2. The following LMA 5400 clause shall apply:

## PROPERTY CYBER AND DATA ENDORSEMENT

1    Notwithstanding any provision to the contrary within this Policy or any endorsement thereto this Policy excludes any:

1.1    Cyber Loss, unless subject to the provisions of paragraph 2;

1.2    loss, damage, liability, claim, cost, expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any loss of use, reduction in functionality, repair, replacement, restoration or reproduction  of any Data, including any amount pertaining to the value of such Data, unless subject to the provisions of paragraph 3;

regardless of any other cause or event contributing concurrently or in any other sequence thereto.

2    Subject to all the terms, conditions, limitations and exclusions of this Policy or any endorsement thereto, this Policy covers physical loss or physical damage to property insured under this Policy caused by any ensuing fire or explosion which directly results from a Cyber Incident, unless that Cyber Incident is caused by, contributed to by, resulting from, arising out of or in connection with a Cyber Act including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act.

3    Subject to all the terms, conditions, limitations and exclusions of this Policy or any endorsement thereto, should Data Processing Media owned or operated by the Insured suffer physical loss or physical damage insured by this Policy, then this Policy will cover the cost to repair or replace the Data Processing Media itself plus the costs of copying the Data from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling the Data. If such media is not repaired, replaced or restored the basis of valuation shall be the cost of the blank Data Processing Media. However, this Policy excludes any amount pertaining to the value of such Data, to the Insured or any other party, even if such Data cannot be recreated, gathered or assembled.

4    In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

AR Compass Change- PCDE 02 20

5       This endorsement supersedes and, if in conflict with any other wording in the Policy or any endorsement thereto having a bearing on Cyber Loss, Data or Data Processing Media, replaces that wording.

**Definitions**

6       Cyber Loss means any loss, damage, liability, claim, cost or expense of whatsoever nature directly or indirectly caused by, contributed to by, resulting from, arising out of or in connection with any Cyber Act or Cyber Incident including, but not limited to, any action taken in controlling, preventing, suppressing or remediating any Cyber Act or Cyber Incident.

7       Cyber Act means an unauthorised, malicious or criminal act or series of related unauthorised, malicious or criminal acts, regardless of time and place, or the threat or hoax thereof involving access to, processing of, use of or operation of any Computer System.

8       Cyber Incident means:

   8.1      any error or omission or series of related errors or omissions involving access to, processing of, use of or operation of any Computer System; or

   8.2      any partial or total unavailability or failure or series of related partial or total unavailability or failures to access, process, use or operate any Computer System.

9       Computer System means:

   9.1      any computer, hardware, software, communications system, electronic device (including, but not limited to, smart phone, laptop, tablet, wearable device), server, cloud or microcontroller including any similar system or any configuration of the aforementioned and including any associated input, output, data storage device, networking equipment or back up facility,

   owned or operated by the Insured or any other party.

10      Data means information, facts, concepts, code or any other information of any kind that is recorded or transmitted in a form to be used, accessed, processed, transmitted or stored by a Computer System.

11      Data Processing Media means any property insured by this Policy on which Data can be stored but not the Data itself.


LMA5400
11 November 2019


All other terms and conditions remain unchanged.


AR Compass Change- PCDE 02 20

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LLOYD'S OF LONDON AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**, THE FOLLOWING CLAUSES (SERVICE OF SUIT and APPLICABLE LAW) SHALL APPLY:

## Service of Suit Clause (U.S.A.)
### NMA 1998 4/24/86 (USA date)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon

| | |
|---|---|
| 1. California Insureds:<br>Foley & Lardner, LLP<br>555 California Street, Suite 1700<br>San Francisco, CA 94104-1520<br>USA | 2. All other Insureds:<br>Lloyd's America, Inc.<br>Attention: Legal Department<br>280 Park Avenue, East Tower, 25th Floor<br>New York, NY 10017<br>USA |

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to have a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

## APPLICABLE LAW (U.S.A.)
### LMA5021 9/14/2005 (USA date)

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA).

LLOYDS - SOS 10 19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INDIAN HARBOR INSURANCE COMPANY AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY INDIAN HARBOR INSURANCE COMPANY, THE FOLLOWING CLAUSES SHALL APPLY:

## SERVICE OF PROCESS ENDORSEMENT

When a cause of action arises in any of the states listed below, service of process applies as shown below for that state.

### ALABAMA Service of Process Clause
The Commissioner of Insurance of the State of Alabama is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Alabama to whom such process shall be forwarded by the Commissioner of Insurance.

### ALASKA Service of Process Clause
The Director of Insurance of the State of Alaska is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Alaska to whom such process shall be forwarded by the Director of Insurance.

### ARIZONA Service of Process Clause
The Director of Insurance of the State of Arizona is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Arizona to whom such process shall be forwarded by the Director of Insurance.

### ARKANSAS Service of Process Clause
The Commissioner of Insurance of the State of Arkansas is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Arkansas to whom such process shall be forwarded by the Commissioner of Insurance.

### CALIFORNIA Service of Suit Clause
The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Vivian Imperial c/o C T Corporation System, 818 West 7th Street, Suite 930, Los Angeles, CA  90017 as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

### COLORADO Service of Process Clause
The Commissioner of Insurance of the State of Colorado is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Colorado to whom such process shall be forwarded by the Commissioner of Insurance.

© 2018 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

### CONNECTICUT Service of Process Clause

The Commissioner of Insurance of the State of Connecticut is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Connecticut to whom such process shall be forwarded by the Commissioner of Insurance.

### DISTRICT OF COLUMBIA Service of Process Clause

The Commissioner of Insurance of the District of Columbia is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in the District of Columbia to whom such process shall be forwarded by the Commissioner of Insurance.

### DELAWARE Service of Process Clause

The Commissioner of Insurance of the State of Delaware is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Delaware to whom such process shall be forwarded by the Commissioner of Insurance.

### FLORIDA Service of Process Clause

The Commissioner of Insurance of the State of Florida is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120 as its agent in Florida to whom such process shall be forwarded by the Commissioner of Insurance.

### GEORGIA Service of Process

The Commissioner of Insurance of the State of Georgia is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Georgia to whom such process shall be forwarded by the Commissioner of Insurance.

### HAWAII Service of Process Clause

The Commissioner of Insurance of the State of Hawaii is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Hawaii to whom such process shall be forwarded by the Commissioner of Insurance.

### IOWA Service of Process Clause

The Commissioner of Insurance of the State of Iowa is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Iowa to whom such process shall be forwarded by the Commissioner of Insurance.

### IDAHO Service of Process Clause

The Director of Insurance of the State of Idaho is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Idaho to whom such process shall be forwarded by the Director of Insurance.

### ILLINOIS Service of Process Clause

The Director of Insurance of the State of Illinois is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120 as its agent in Illinois to whom such process shall be forwarded by the Director of Insurance.

### INDIANA Service of Process Clause
The Commissioner of Insurance of the State of Indiana is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Indiana to whom such process shall be forwarded by the Commissioner of Insurance.

### KANSAS Service of Process Clause
The Commissioner of Insurance of the State of Kansas is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Kansas to whom such process shall be forwarded by the Commissioner of Insurance.

### KENTUCKY Service of Process Clause
The Secretary of State of Kentucky is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120 as its agent in Kentucky to whom such process shall be forwarded by the Secretary of State.

### LOUISIANA Service of Process Clause
The Secretary of the State of Louisiana is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Louisiana to whom such process shall be forwarded by the Secretary of State.

### MAINE Service of Process Clause
The Acting Superintendent of Insurance of the State of Maine is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates CT Corporation System, 128 State Street, #3, Augusta, ME 04330, as its agent in Maine to whom such process shall be forwarded by the Acting Superintendent of Insurance.

### MARYLAND Service of Process Clause
The Commissioner of Insurance of the State of Maryland is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Maryland to whom such process shall be forwarded by the Commissioner of Insurance.

### MASSACHUSETTS Service of Process Clause
The Commissioner of Insurance of the State of Massachusetts is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120 as its agent in Massachusetts to whom such process shall be forwarded by the Commissioner of Insurance.

### MICHIGAN Service of Process Clause
The Commissioner of Insurance of the State of Michigan is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, MI 48170-4675, as its agent in Michigan to whom such process shall be forwarded by the Commissioner of Insurance.

### MINNESOTA Service of Process Clause
The Commissioner of Commerce of the State of Minnesota is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Minnesota to whom such process shall be forwarded by the Commissioner of Commerce.

© 2018 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

**MISSISSIPPI Service of Process Clause**

The Commissioner of Insurance of the State of Mississippi is hereby designated the true and lawful agent of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Mississippi to whom such process shall be forwarded by the Commissioner of Insurance.

**MISSOURI Service of Process Clause**

The Director of the Department of Insurance of the State of Missouri is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Missouri to whom such process shall be forwarded by the Director of the Department of Insurance.

**MONTANA Service of Process Clause**

The Commissioner of Insurance of the State of Montana is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Montana to whom such process shall be forwarded by the Commissioner of Insurance.

**NEBRASKA Service of Process Clause**

The Director of Insurance of the State of Nebraska is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Nebraska to whom such process shall be forwarded by the Director of Insurance.

**NEVADA Service of Process Clause**

The Commissioner of Insurance of the State of Nevada is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Nevada to whom such process shall be forwarded by the Commissioner of Insurance.

**NEW HAMPSHIRE Service of Process Clause**

The Commissioner of Insurance of the State of New Hampshire is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in New Hampshire to whom such process shall be forwarded by the Commissioner of Insurance.

**NEW JERSEY Service of Process Clause**

The Commissioner of Insurance of the State of New Jersey is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in New Jersey to whom such process shall be forwarded by the Commissioner of Insurance.

**NEW MEXICO Service of Process Clause**

The Superintendent of Insurance of the State of New Mexico is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in New Mexico to whom such process shall be forwarded by the Superintendent of Insurance.

**NEW YORK Service of Process Clause**

The Superintendent of Insurance of the State of New York is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in New York to whom such process shall be forwarded by the Superintendent of Insurance.

### NORTH CAROLINA Service of Process Clause

The Commissioner of Insurance of the State of North Carolina is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in North Carolina to whom such process shall be forwarded by the Commissioner of Insurance.

### NORTH DAKOTA Service of Process Clause

The Commissioner of Insurance of the State of North Dakota is hereby designated the true and lawful attorney of the Insurer upon whom must be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in North Dakota to whom such process shall be forwarded by the Commissioner of Insurance.

### OHIO Service of Process Clause

The Superintendent of Insurance of the State of Ohio is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Ohio to whom such process shall be forwarded by the Superintendent of Insurance.

### OKLAHOMA Service of Process Clause

The Commissioner of Insurance of the State of Oklahoma is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Oklahoma to whom such process shall be forwarded by the Commissioner of Insurance.

### OREGON Service of Process Clause

The Commissioner of Insurance of the State of Oregon is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Oregon to whom such process shall be forwarded by the Commissioner of Insurance.

### PENNSYLVANIA Service of Process Clause

The Commissioner of Insurance of the State of Pennsylvania is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Pennsylvania to whom such process shall be forwarded by the Commissioner of Insurance.

### PUERTO RICO Service of Process Clause

The Commissioner of Insurance of Puerto Rico is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates: Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Puerto Rico to whom such process shall be forwarded by the Commissioner of Insurance.

### RHODE ISLAND Service of Process Clause

The Commissioner of Insurance of the State of Rhode Island is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates CT Corporation System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914, as its agent in Rhode Island to whom such process shall be forwarded by the Commissioner of Insurance.

### SOUTH CAROLINA Service of Process Clause

The Director of Insurance of the State of South Carolina is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in South Carolina to whom such process shall be forwarded by the Director of Insurance.

### SOUTH DAKOTA Service of Process Clause

The Director of Insurance of the State of South Dakota is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in South Dakota to whom such process shall be forwarded by the Director of Insurance.

### TENNESSEE Service of Process Clause

The Commissioner of Insurance of the State of Tennessee is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Tennessee to whom such process shall be forwarded by the Commissioner of Insurance.

### TEXAS Service of Process Clause

The Commissioner of Insurance of the State of Texas is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Texas to whom such process shall be forwarded by the Commissioner of Insurance.

### UTAH Service of Process Clause

The Commissioner of Insurance and Lieutenant Governor of the State of Utah are hereby designated the true and lawful agents of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Utah to whom such process shall be forwarded by the Commissioner of Insurance or Lieutenant Governor.

### VERMONT Service of Process Clause

The Secretary of the State of Vermont is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates CT Corporation System, 17 G W Tatro Drive, Jeffersonville, VT 05464-9919, as its agent in Vermont to whom such process shall be forwarded by the Secretary of State.

### VIRGINIA Service of Process Clause

The Clerk of the Commissioner of Insurance of the State of Virginia is hereby designated the true and lawful agent of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Virginia to whom such process shall be forwarded by the Clerk of the Commissioner of Insurance.

### WASHINGTON Service of Process Clause

The Commissioner of Insurance of the State of Washington is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Washington to whom such process shall be forwarded by the Commissioner of Insurance.

### WEST VIRGINIA Service of Process Clause

The Secretary of State of West Virginia is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy. The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in West Virginia to whom such process shall be forwarded by the Secretary of State.

**WISCONSIN Service of Process Clause**

The Commissioner of Insurance and the Department of Financial Institutions of the State of Wisconsin are hereby designated the true and lawful attorneys of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Wisconsin to whom such process shall be forwarded by the Commissioner of Insurance or the Department of Financial Institutions.

**WYOMING Service of Process Clause**

The Commissioner of Insurance of the State of Wyoming is hereby designated the true and lawful attorney of the Insurer upon whom may be served all lawful process in any action, suit or proceeding arising out of this Policy.  The Insurer further designates Sarah Mims, General Counsel, 505 Eagleview Boulevard, Suite 100, Exton, PA 19341-1120, as its agent in Wyoming to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

All other terms and conditions of this Policy remain unchanged.

© 2018 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## FRAUD NOTICE

| Alabama | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof. |
|---|---|
| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |
| **New York** | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.<br><br>**WARNING: All Workers Compensation Insurance:**<br>Any person or entity who makes any material false statement or representation, who willfully and knowingly omits or conceals any material information, or who employs any device, scheme, or artifice, or who aids and abets any person for the purpose of:<br>1.  obtaining any benefit or payment,<br>2.  increasing any claim for benefit or payment, or<br>3.  obtaining workers' compensation coverage under this act, shall be guilty of a felony punishable pursuant to Section 1663 of Title 21 of the Oklahoma Statutes. |
| **Pennsylvania** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |

© 2019 X.L. America, Inc.  All Rights Reserved.<br>May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

© 2019 X.L. America, Inc.  All Rights Reserved.
May not be copied without permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# QBE SPECIALTY INSURANCE COMPANY
# SERVICE OF PROCESS ENDORSEMENT

When a cause of action arises in any of the states listed below, service of process applies as shown below for that state. As used in this endorsement, "the Company" shall mean QBE Specialty Insurance Company.

### ALABAMA Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Alabama as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104 as the person to whom the Commissioner shall mail process.

### ALASKA Service of Process Clause

Upon any cause of action arising in Alaska under this contract, the Company may be sued. The Company appoints the Director of Insurance for the State of Alaska as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Director, or his successors in office, shall be lawful service upon the Company. The Company further designates CT Corporation System, 9360 Glacier Highway, Suite 202, Juneau, AK 99801 as the person to whom the Director is authorized to mail such process or a true copy thereof.

### ARIZONA Service of Process Clause

Upon any cause of action arising in Arizona under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Arizona by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 3800 North Central Avenue, Suite 460, Phoenix, AZ 85012, as the person to whom the Director shall mail process.

### ARKANSAS Service of Process Clause

Upon any cause of action arising in Arkansas under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Arkansas and his successors in office by the clerk of the court in which the action is brought.  The Company further designates The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201 as the person to whom the Commissioner shall mail process.

### CALIFORNIA Service of Suit Clause

The Company hereby designates CT Corporation System, 818 West 7th Street, Suite 930, Los Angeles, California, 90017 as its true and lawful attorney in and for the State of California, upon whom all lawful process may be served in any action, suit or proceeding instituted in California by or on behalf of any insured or beneficiary against the Company arising out of this insurance policy, provided a copy of any process, suit, complaint or summons is sent by certified or registered mail to: 55 Water Street, 19th Floor, New York, NY 10041.

### COLORADO Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance for the State of Colorado as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

© QBE, 2020

## CONNECTICUT Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose. The Company appoints the Commissioner of Insurance for the State of Connecticut as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates CT Corporation System, 67 Burnside Avenue, East Hartford, CT 06108 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

## DELAWARE Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Delaware as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as the person to whom the Commissioner shall mail process.

## DISTRICT OF COLUMBIA Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the District of Columbia as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 1015 15th Street, NW, Suite 1000, Washington, DC 20005 as the person to whom the Commissioner shall mail process.

## FLORIDA Service of Process Clause

The Company hereby designates the Chief Financial Officer of the Department of Financial Services as its agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324 as the person to whom the Chief Financial Officer shall mail process.

## GEORGIA Service of Process

Upon any cause of action under this policy, the Company may be sued in the superior court of the county in which the cause of action arose. The Company appoints the Georgia Commissioner of Insurance as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates CT Corporation System, 289 South Culver Street, Lawrenceville, GA 30046 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

## HAWAII Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose. The Company appoints the Commissioner of Insurance for the State of Hawaii as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates The Corporation Company, Inc., 1136 Union Mall, Suite 301, Honolulu, HI 96813 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

## IDAHO Service of Process Clause

Upon any cause of action arising in Idaho under this contract, the Company may be sued in the district court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of the Department of Insurance of the State of Idaho. The Company further designates CT Corporation System, 921 S. Orchard Street, Suite G, Boise, ID 83705 as the person to whom the Director shall mail process.

## ILLINOIS Service of Process Clause

The Company hereby designates the Director of the Illinois Department of Insurance and his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604 as the person to whom the Director shall mail process.

### INDIANA Service of Process Clause

Upon any cause of action arising in Indiana under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Indiana by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204-1708 as the person to whom the Commissioner shall mail process.

### IOWA Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Iowa as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 400 East Court Avenue, Suite 110, Des Moines, Iowa 50309 as the person to whom the Commissioner shall mail process.

### KANSAS Service of Process Clause

Upon any cause of action arising in Kansas under this policy, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Kansas and his successor or successors in office. The Company further designates The Corporation Company, Inc., 112 S.W. Seventh Street, Suite 3C, Topeka, KS 66603 as the person to whom the Commissioner shall mail process.

### KENTUCKY Service of Process Clause

Upon any cause of action arising in Kentucky under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Kentucky Secretary of State by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601 as the person to whom the Secretary of State shall mail process.

### LOUISIANA Service of Process Clause

Upon any cause of action arising in Louisiana under this contract, the Company may be sued in the district court of the parish in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Louisiana Secretary of State. The Company further designates CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816 as the person to whom the Secretary of State shall mail process.

### MAINE Service of Process Clause

Upon any cause of action arising in this State under this policy, the Company may be sued in the Superior Court. Service of legal process against the Company may be made in any such action by service of two copies upon the designated agent. The Company further designates CT Corporation System, 128 State Street, #3, Augusta, ME 04330 as the agent.

### MARYLAND Service of Process Clause

Upon any cause of action arising in Maryland under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Insurance Commissioner of the State of Maryland by the clerk of the court in which the action is brought. The Company further designates The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, MD 21093 as the person to whom the Commissioner shall mail process.

### MASSACHUSETTS Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Massachusetts as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110 as the person to whom the Commissioner shall mail process.

### MICHIGAN Service of Process Clause

Upon any cause of action arising in Michigan under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of Insurance, c/o Resident Agent, of the State of Michigan by the clerk of the court in which the action is brought. The Company further designates The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, MI 48170 as the person to whom the Commissioner shall mail process.

### MINNESOTA Service of Process Clause

Upon any cause of action arising in Minnesota under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Commerce of the State of Minnesota by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, Inc., 1010 Dale Street North, Saint Paul, MN 55117 as the person to whom the Commissioner shall mail process.

### MISSISSIPPI Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Mississippi as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232 as the person to whom the Commissioner shall mail process.

### MISSOURI Service of Process Clause

Upon any cause of action arising in Missouri under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Missouri and his successors in office by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 120 South Central Avenue, Clayton, MO 63105 as the person to whom the Director shall mail process.

### MONTANA Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance of the State of Montana as its attorney for acceptance of the service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 3011 American Way, Missoula, MT 59808 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### NEBRASKA Service of Process Clause

Upon any cause of action arising in Nebraska under this policy, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Nebraska.  The Company further designates CT Corporation System, 5601 South 59th Street, Suite C, Lincoln, NE 68516 as the person to whom the Director shall mail process.

### NEVADA Service of Process Clause

Upon any cause of action arising in Nevada under this contract, the Company may be sued in a district court of Nevada.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Nevada or the Commissioner's authorized representative.  The Company further designates The Corporation Trust Company of Nevada, 701 South Carson Street, Suite 200, Carson City, NV 89701 as the person to whom the Commissioner shall mail process.

### NEW HAMPSHIRE Service of Process Clause

Upon any cause of action arising in New Hampshire under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of New Hampshire by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 2½ Beacon Street, Concord, NH 03301-4447 as the person to whom the Commissioner shall mail process.

### NEW JERSEY Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of New Jersey as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates CT Corporation System, 820 Bear Tavern Road, West Trenton, NJ 08628 as the person to whom the Commissioner shall mail process.

### NEW MEXICO Service of Process Clause

Upon any cause of action arising in New Mexico under this contract, the Company may be sued in the district court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Superintendent of Insurance of the State of New Mexico by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 206 South Coronado Avenue, Espanola, NM 87532 as the person to whom the Superintendent shall mail process.

**NEW YORK Service of Process Clause**

The Company hereby designates the Superintendent of Financial Services of the State of New York, and his successors in office, as its true and lawful attorney upon whom all lawful process may be served in any action, suit, or proceeding instituted in this State by or on behalf of the insured or any beneficiary against the Company arising out of this policy of insurance. The Company further designates CT Corporation System, 28 Liberty Street, New York, NY 10005 as the person to whom the Superintendent shall mail process.

**NORTH CAROLINA Service of Process Clause**

The Company hereby designates the Commissioner of Insurance of the State of North Carolina, and his successor(s) in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 160 Mine Lake Court, Suite 200, Raleigh, NC 27615 as the person to whom the Commissioner shall mail process.

**NORTH DAKOTA Service of Process Clause**

The Company hereby designates the Commissioner of Insurance of the State of North Dakota as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 120 West Sweet Avenue, Bismarck, ND 58504 as the person to whom the Commissioner shall mail process.

**OHIO Service of Process Clause**

Upon any cause of action arising in Ohio under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Superintendent of Insurance of the State of Ohio by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, OH 43219 as the person to whom the Superintendent shall mail process.

**OKLAHOMA Service of Process Clause**

Upon any cause of action arising in Oklahoma under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Oklahoma by the clerk of the court in which the action is brought. The Company further designates The Corporation Company, 1833 South Morgan Road, Oklahoma City, OK 73128 as the person to whom the Commissioner shall mail process.

**OREGON Service of Process Clause**

Upon any cause of action arising in Oregon under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose. The Company further designates CT Corporation System, 780 Commercial Street SE, Suite 100, Salem, OR 97301 as the person to whom the process shall be mailed.

**PENNSYLVANIA Service of Process Clause**

Upon any cause of action arising in Pennsylvania under this contract, the Company may be sued in the court of the county in which the cause of action arose. The Company hereby designates the Commissioner of Insurance of the Commonwealth of Pennsylvania as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). The Company further designates CT Corporation System, 600 North Second Street, Suite 401, Harrisburg, PA 17101 as the person to whom the Commissioner shall mail process.

**RHODE ISLAND Service of Process Clause**

Upon any cause of action arising in Rhode Island under this policy, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Rhode Island by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914 as the person to whom the Commissioner shall mail process.

**SOUTH CAROLINA Service of Process Clause**

The Company hereby designates the Director of Insurance of the State of South Carolina as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 2 Office Park Court, Suite 103, Columbia, SC 29223 as the person to whom the Director shall mail process.

### SOUTH DAKOTA Service of Process Clause

Any cause of action against the Company arising in South Dakota under this policy shall be brought in the circuit court for the county in which the cause of action arose.  Service of legal process against the Company may be made in any such action by service upon the Director of Insurance of the State of South Dakota and his successors in office.  The Company further designates CT Corporation System, 319 South Coteau Street, Pierre, SD 57501 as the person to whom the Director shall mail a copy of the process.

### TENNESSEE Service of Process Clause

The Company hereby designates the Commissioner of Commerce and Insurance of the State of Tennessee as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates CT Corporation System, 300 Montvue Road, Knoxville, TN 37919 as the person to whom the Commissioner shall mail process.

### TEXAS Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Texas as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201 as the person to whom the Commissioner shall mail process.

### UTAH Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of Utah as its agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 1108 East South Union Avenue, Midvale, UT 84047 as the person to whom the Commissioner shall mail process.

### VERMONT Service of Process Clause

The Company hereby designates the Secretary of State of Vermont as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates CT Corporation System, 17 G W Tatro Drive, Jeffersonville, VT 05464 as the person to whom the Secretary of State shall mail process.

### VIRGINIA Service of Process Clause

The Company hereby designates the Clerk of the Virginia State Corporation Commission as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060 as the person to whom the Clerk of the Commission shall mail process.

### WASHINGTON Service of Process Clause

Upon any cause of action arising in Washington under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Washington by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 711 Capitol Way South, Suite 204, Olympia, WA 98501 as the person to whom the Commissioner shall mail process.

### WEST VIRGINIA Service of Process Clause

Upon any cause of action arising in West Virginia under this policy, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Secretary of State of West Virginia by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 1627 Quarrier Street, Charleston, WV 25311-2124 as the person to whom the Secretary of State shall mail process.

### WISCONSIN Service of Process Clause

Upon any cause of action arising in Wisconsin under this policy the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Wisconsin.  The Company further designates CT Corporation System, 301 South Bedford Street, Suite 1, Madison, WI 53703 as the person to whom the Commissioner shall mail process.

**WYOMING Service of Process Clause**

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance of the State of Wyoming as its attorney for acceptance of the service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 1908 Thomas Avenue, Cheyenne, WY 82001 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## STEADFAST INSURANCE COMPANY AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **STEADFAST INSURANCE COMPANY**, THE FOLLOWING CLAUSES SHALL APPLY:

# Service Of Suit and In Witness Clause

1. **The following Service Of Suit and In Witness Clause applies to all policies written in Alabama, Alaska, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia or Wyoming:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1299 Zurich Way, Schaumburg, Illinois 60196, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy. This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

2. **The following Service Of Suit and In Witness Clause applies to all policies written in Arizona, Virginia or Washington:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1299 Zurich Way, Schaumburg, Illinois 60196, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.

In Witness Whereof, the Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

3. **The following Service Of Suit and In Witness Clause applies to all policies written in California:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1299 Zurich Way, Schaumburg, Illinois 60196, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director

of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates Carpenter & Moore Insurance Services, Inc., 111 Pine Street, Suite 777, San Francisco, California 94111 as whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, the Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

4.  **The following Service Of Suit and In Witness Clause applies to all policies written in Delaware:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Zurich American Insurance Company of Illinois, 1299 Zurich Way, Schaumburg, Illinois 60196, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

5. **The following Service Of Suit and In Witness Clause applies to all policies written in District of Columbia:**

   **Service Of Suit**

   In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1299 Zurich Way, Schaumburg, Illinois 60196, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

   Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates Douglas A. Henry, c/o CT Corporation, 1025 Vermont Avenue, N.W., Washington, DC 20005 as the person to whom the said officer is authorized to mail such process or a true copy thereof.

   **In Witness Clause**

   In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

   In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

# Disclosure Statement



It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# OFAC Notice and Sanction Limitation Clauses

## Office of Foreign Assets Control ("OFAC") Regulations

## Advisory notice to policyholders regarding the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons."  This list can be located on the United States Treasury's web site – http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions.  When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC.  Other limitations on premiums and payments also apply.

Includes copyrighted material of Insurance Service Office, Inc. with its permission                U-GU-1041-A (3/11)

## Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100   9/15/2010 (USA date)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VARIOUS COMPANIES' SERVICE OF SUIT CLAUSES

WITH RESPECT TO THE COVERAGE PROVIDED BY:

> GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; OR
> HDI GLOBAL SPECIALTY SE; OR
> UNITED SPECIALTY INSURANCE COMPANY; OR
> LEXINGTON INSURANCE COMPANY; OR
> OLD REPUBLIC UNION INSURANCE COMPANY; OR
> GEOVERA SPECIALTY INSURANCE COMPANY; OR
> TRANSVERSE SPECIALTY INSURANCE COMPANY; OR
> TRANSVERSE INSURANCE COMPANY.

THE FOLLOWING APPLICABLE CLAUSES SHALL APPLY TO THE INDICATED COMPANY(IES), PROVIDED THAT COMPANY IS PARTICIPATING ON THE POLICY:

### Service of Suit Clause(s)

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:

> **General Security Indemnity Company of Arizona**
> 28 Liberty Street, Suite 5400
> New York, NY 10005
> Attn.: Rodolphe Herve, CEO
> With Copy to:
> 28 Liberty Street, Suite 5400
> New York., NY 10005
> Attn.: Maxine Verne, General Legal Counsel

> **HDI Global Specialty SE**
> Mendes & Mount, LLP
> 750 Seventh Avenue
> New York, New York 10019
> T: (212) 261-8339
> F: (212) 261-8750

> **United Specialty Insurance Company**
> 1900 L. Don Dodson Drive
> Bedford, Texas 76021
> Attn.: Terry L. Ledbetter

**Lexington Insurance Company**
   99 High Street
   Boston, MA 02110
   Facsimile:  (866) 753-8411
   Attn.:  Division Executive, Commercial Property
   <u>With copies to:</u>
   AIG Property Casualty U.S.    and    Lexington Insurance Company
   175 Water Street - 18th Floor          99 High Street
   New York, NY 10038                    Boston, MA 02110
   Facsimile:  (212) 458-7080            Facsimile: (617) 772-4588
   Attn.:  General Counsel               Attn.: General Counsel

**Old Republic Union Insurance Company**
   Old Republic Specialty Insurance Underwriters, Inc.
   c/o Office of General Counsel
   370 North Michigan Avenue
   Chicago, IL 60601

**GeoVera Specialty Insurance Company**
   GeoVera Holdings, Inc.
   1455 Oliver Road
   Fairfield, CA 94534
   Attn: Robert Hagedorn, General Counsel

**Transverse Specialty Insurance Company or Transverse Insurance Company**
   155 Village Boulevard, Ste 205
   Princeton, NJ 08540
   Attn: Corporate Secretary

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured (or Reinsured) to have a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

# CYBER SUITE COVERAGE

## <u>SUPPLEMENTAL DECLARATIONS</u>

**<u>CYBER SUITE AGGREGATE LIMIT</u>**    $100,000
Annual Aggregate Limit

**<u>CYBER SUITE DEDUCTIBLE</u>**    $1,000
Per Occurrence

**<u>IDENTITY RECOVERY LIMIT</u>**    $25,000
Annual Aggregate Per "Identity Recovery Insured"

**<u>SUBLIMITS</u>**    Sublimits below are Per Occurrence, unless otherwise indicated.

### <u>DATA COMPROMISE RESPONSE EXPENSES</u>

| | |
|---|---|
| 1st Party Named Malware: | $50,000 |
| Forensic IT Review: | $50,000 |
| Legal Review: | $50,000 |
| Public Relations Services: | $ 5,000 |
| Regulatory Fines and Penalties: | $50,000 |
| PCI Fines and Penalties: | $50,000 |

### <u>COMPUTER ATTACK and CYBER EXTORTION</u>

| | |
|---|---|
| Loss of Business: | $50,000 |
| Public Relations: | $ 5,000 |
| Cyber Extortion: | $10,000 |

### <u>DATA COMPROMISE LIABILITY</u>

| | |
|---|---|
| 3rd Party Named Malware | $50,000 |
| | Any one "Personal Data Compromise" |

### <u>IDENTITY RECOVERY</u>

| | |
|---|---|
| Lost Wages and Child and Elder Care Expenses: | $5,000 |
| Mental Health Counseling: | $1,000 |
| Miscellaneous Unnamed Costs: | $1,000 |

# <u>Cyber Suite Coverage Form</u>

Throughout this Coverage Form (hereinafter referred to as "Cyber Coverage"), the words "you" and "your" refer to the Named Insured(s) shown in the Cyber Suite Coverage Form Supplemental Declarations of this Cyber Coverage and any other person(s) or organization(s) qualifying as a Named Insured under this Cyber Coverage. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotations have special meaning. Refer to DEFINITIONS.

The terms and conditions of the Cancellation Clause of the Common Policy Conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this Cyber Coverage, unless specifically stated otherwise in an endorsement(s) attached hereto.

## A. COVERAGE

This section lists the coverages that apply if indicated in the Cyber Suite Coverage Form Supplemental Declarations.

### 1. Data Compromise Response Expenses

a. Data Compromise Response Expenses applies only if all of the following conditions are met:

   (1) There has been a "personal data compromise"; and

   (2) Such "personal data compromise" took place in the "coverage territory"; and

   (3) Such "personal data compromise" is first discovered by you during the "policy period"; and

   (4) Such "personal data compromise" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

b. If the conditions listed in a. above have been met, then we will provide coverage for the following expenses when they arise directly from such "personal data compromise" and are necessary and reasonable. Items **(4)** and **(5)** below apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under item **(3)** below.

   (1) **Forensic IT Review**

   We will pay for a professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

   This does not include costs to analyze, research or determine any of the following:

   (a) Vulnerabilities in systems, procedures or physical security;

   (b) Compliance with Payment Card Industry or other industry security standards; or

   (c) The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

   If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

   (2) **Legal Review**

   We will pay for a professional legal counsel review of the "personal data compromise" and how you should best respond to it.

   If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

AR CYBER 03 18      © 2017 The Hartford Steam Boiler Inspection and Insurance Company.

All rights reserved.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(3) **Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

(4) **Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals". Services **(c)** and **(d)** below apply only to "affected individuals" from "personal data compromise" events involving "personally identifying information".

(a) **Informational Materials**

A packet of loss prevention and customer support information.

(b) **Help Line**

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in (c) and (d) below.

(c) **Credit Report and Monitoring**

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

(d) **Identity Restoration Case Management**

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

(5) **Public Relations**

We will pay for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships.

This includes necessary and reasonable costs to implement public relations recommendations of such firm. This may include advertising and special promotions designed to retain your relationship with "affected individuals". However, we will not pay for:

(a) Promotions provided to any of your directors or employees; or

(b) Promotion costs exceeding $25 per "affected individual".

(6) **Regulatory Fines and Penalties**

We will pay for any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction.

(7) **PCI Fines and Penalties**

We will pay for any Payment Card Industry fine or penalty imposed under a contract to which you are a party. PCI Fines and Penalties do not include any increased transaction costs.

## 2. Computer Attack and Cyber Extortion

a. Computer Attack applies only if all of the following conditions are met:

(1) There has been a "computer attack"; and

(2) Such "computer attack" occurred in the "coverage territory"; and

(3) Such "computer attack" is first discovered by you during the "policy period"; and

(4) Such "computer attack" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first discovered by you.

b. If the conditions listed in a. above have been met, then we will provide you the following coverages for "loss" directly arising from such "computer attack".

 © 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(1) **Data Restoration**

We will pay your necessary and reasonable "data restoration costs".

(2) **Data Re-creation**

We will pay your necessary and reasonable "data re-creation costs".

(3) **System Restoration**

We will pay your necessary and reasonable "system restoration costs".

(4) **Loss of Business**

We will pay your actual "business income and extra expense loss".

(5) **Public Relations**

If you suffer a covered "business income and extra expense loss", we will pay for the services of a professional public relations firm to assist you in communicating your response to the "computer attack" to the media, the public and your customers, clients or members.

c. Cyber Extortion applies only if all of the following conditions are met:

(1) There has been a "cyber extortion threat"; and

(2) Such "cyber extortion threat" is first made against you during the "policy period"; and

(3) Such "cyber extortion threat" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first made against you.

d. If the conditions listed in c. above have been met, then we will pay for your necessary and reasonable "cyber extortion expenses" arising directly from such "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in advance by us. We will not unreasonably withhold our approval.

e. You must make every reasonable effort not to divulge the existence of this Cyber Extortion coverage.

## 3. Data Compromise Liability

a. Data Compromise Liability applies only if all of the following conditions are met:

(1) During the "policy period" or any applicable Extended Reporting Period, you first receive notice of one of the following:

(a) A "claim" brought by or on behalf of one or more "affected individuals"; or

(b) A "regulatory proceeding" brought by a governmental entity.

(2) Such "claim" or "regulatory proceeding" must arise from a "personal data compromise" that:

(a) Took place during the "coverage term";

(b) Took place in the "coverage territory"; and

(c) Was submitted to us and insured under Data Compromise Response Expenses.

(3) Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

b. If the conditions listed in a. above have been met, then we will pay on your behalf any covered:

(1) "Loss" directly arising from the "claim"; or

(2) "Defense costs" directly arising from a "regulatory proceeding".

c. All "claims" and "regulatory proceedings" arising from a single "personal data compromise" or interrelated "personal data compromises" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

## 4. Network Security Liability

a. Network Security Liability applies only if all of the following conditions are met:

(1) During the "policy period" or any applicable Extended Reporting Period, you first receive

notice of a "claim" which arises from a "network security incident" that:

    (a) Took place during the "coverage term"; and

    (b) Took place in the "coverage territory"; and

  (2) Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

b. If the conditions listed in a. above have been met, then we will pay on your behalf any covered "loss" directly arising from the "claim".

c. All "claims" arising from a single "network security incident" or interrelated "network security incidents" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

### 5. Electronic Media Liability

a. Electronic Media Liability applies only if all of the following conditions are met:

  (1) During the "policy period" or any applicable Extended Reporting Period, you first receive notice of a "claim" which arises from an "electronic media incident" that:

    (a) Took place during the "coverage term"; and

    (b) Took place in the "coverage territory"; and

  (2) Such "claim" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

b. If the conditions listed in a. above have been met, then we will pay on your behalf any covered "loss" directly arising from the "claim".

c. All "claims" arising from a single "electronic media incident" or interrelated "electronic media incidents" will be deemed to have been made at the time that notice of the first of those "claims" is received by you.

### 6. Identity Recovery

a. Identity Recovery applies only if all of the following conditions are met:

  (1) There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Form; and

  (2) Such "identity theft" took place in the "coverage territory"; and

  (3) Such "identity theft" is first discovered by the "identity recovery insured" during the "policy period"; and

  (4) Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

b. If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

  (1) **Case Management Service**

    We will pay for the services of an "identity recovery case manager" as needed to respond to the "identity theft";

    and

  (2) **Expense Reimbursement**

    We will pay for reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

## B. EXCLUSIONS

The following additional exclusions apply to this coverage:

We will not pay for costs or loss arising from the following:

1. Nuclear reaction or radiation or radioactive contamination, however caused.

All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. War and military action including any of the following and any consequence of any of the following:

    a. War, including undeclared or civil war;

    b. Warlike action by military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    c. Insurrection, rebellion, revolution, usurped power, political violence or action taken by governmental authority in hindering or defending against any of these.

3. Failure or interruption of or damage to the internet or an internet service provider.

4. Any attack on, incident involving, or loss to any computer or system of computers that is not a "computer system".

5. Costs to research or correct any deficiency.

6. Any fines or penalties other than those explicitly covered under Data Compromise Response Expenses.

7. Any criminal investigations or proceedings.

8. Your intentional or willful complicity in a covered loss event.

9. Your reckless disregard for the security of your computer system or data, including confidential or sensitive information of others in your care, custody or control.

10. Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by you.

11. Any "personal data compromise", "computer attack", "cyber extortion threat" or "wrongful act" occurring before the "coverage term".

12. That part of any "claim" seeking any non-monetary relief. However, this exclusion does not apply to "defense costs" arising from an otherwise insured "wrongful act".

13. The propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers in connection with hardware or software created, produced or modified by you for sale, lease or license to third parties.

14. Any threat, extortion or blackmail including, but not limited to, ransom payments and private security assistance. Extortion as used in this exclusion is all types of extortion except a "cyber extortion threat" as defined and covered under the Computer Attack and Cyber Extortion coverage in this Coverage Form.

15. Any oral or written publication of material, if done by you or at your direction with knowledge of its falsity.

16. "Property damage" or "bodily injury" other than mental anguish or mental injury alleged in a "claim" covered under Electronic Media Liability.

17. The theft of a professional or business identity.

18. Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion will not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

19. An "identity theft" that is not reported in writing to the police.

## C. LIMITS OF INSURANCE

1. **Aggregate Limits**

   Except for post-judgment interest, the Cyber Suite Aggregate Limit shown in the Cyber Suite Coverage Form Supplemental Declarations is the most we will pay for all "loss" under all applicable coverage sections, except Identity Recovery, in any one "policy period" or any applicable Extended Reporting Period.  The Cyber Suite Aggregate Limit shown in the Cyber Suite Coverage Form Supplemental Declarations applies regardless of the number of insured events first discovered or "claims" or "regulatory proceedings" first received during the "policy period" or any applicable Extended Reporting Period.

All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

The Identity Recovery Coverage is subject to the Identity Recovery Limit as shown in the Cyber Suite Supplemental Declarations.

## 2. Coverage Sublimits

### a. Data Compromise Sublimits

The most we will pay under Data Compromise Response Expenses for Forensic IT Review, Legal Review, Public Relations, Regulatory Fines and Penalties and PCI Fines and Penalties coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages shown in the Cyber Suite Coverage Form Supplemental Declarations.

The most we will pay under Data Compromise Response Expenses coverage for loss arising from any "malware-related compromise" is the 1st Party Named Malware sublimit indicated for this Coverage Form. For the purpose of the 1st Party Named Malware sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise".

These sublimits are part of, and not in addition to, the Cyber Suite Aggregate Limit shown in the Cyber Suite Coverage Form Supplemental Declarations. Public Relations coverage is also subject to a limit per "affected individual" as described in **A.1.b.(5)**.

The most we will pay under Data Compromise Liability coverage for loss arising from any "malware-related compromise" is the 3rd Party Named Malware sublimit indicated for this Coverage Form. For the purpose of the 3rd Party Named Malware sublimit, all "malware-related compromises" that are caused, enabled or abetted by the same virus or other malicious code are considered to be a single "personal data compromise". This sublimit is part of, and not in addition to, the limit or limits applicable to the Data Compromise Liability coverage.

### b. Computer Attack and Cyber Extortion Sublimits

The most we will pay under Computer Attack and Cyber Extortion for Loss of Business and Public Relations coverages for "loss" arising from any one "computer attack" is the applicable sublimit for each of those coverages shown in the Cyber Suite Coverage Form Supplemental Declarations. The most we will pay under Computer Attack and Cyber Extortion for Cyber Extortion coverage for "loss" arising from any one "cyber extortion threat" is the applicable sublimit shown in the Cyber Suite Coverage Form Supplemental Declarations. These sublimits are part of, and not in addition to, the Cyber Suite Aggregate Limit shown in the Cyber Suite Coverage Form Supplemental Declarations.

### c. Identity Recovery Sublimits

The following provisions are applicable only to the Identity Recovery Coverage.

(1) Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Services do not reduce the aggregate limit for Identity Recovery.

(2) Costs covered under item d. (Legal Costs) of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit for Identity Recovery.

(3) Costs covered under item e. (Lost Wages) and item f. (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the Lost Wages and Child and Elder Care sublimit shown in the Cyber Suite Coverage Form Supplemental Declarations. This sublimit is part of, and not in addition to, the aggregate limit for Identity Recovery. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

(4) Costs covered under item g. (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the Mental Health Counseling sublimit shown in the Cyber Suite Coverage Form Supplemental Declarations. This sublimit is part of, and not in addition to, the aggregate limit for Identity Recovery. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

(5) Costs covered under item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the Miscellaneous Unnamed Costs sublimit shown in the

Cyber Suite Coverage Form Supplemental Declarations. This sublimit is part of, and not in addition to, the aggregate limit for Identity Recovery. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

### 3. Application of Limits

a. A "computer attack", "cyber extortion threat", "personal data compromise" or "identity theft" may be first discovered by you in one "policy period" but it may cause insured "loss" in one or more subsequent "policy periods". If so, all insured "loss" arising from such "computer attack", "cyber extortion threat", "personal data compromise" or "identity theft" will be subject to the limit of insurance applicable to the "policy period" when the "computer attack", "cyber extortion threat", "personal data compromise" or "identity theft" was first discovered by you.

b. You may first receive notice of a "claim" or "regulatory proceeding" in one "policy period" but it may cause insured "loss" in one or more subsequent "policy periods". If so, all insured "loss" arising from such "claim" or "regulatory proceeding" will be subject to the limit of insurance applicable to the "policy period" when notice of the "claim" or "regulatory proceeding" was first received by you.

c. The limit of insurance for the Extended Reporting Periods (if applicable) will be part of, and not in addition to, the limit of insurance for the immediately preceding "policy period".

d. Coverage for Services to Affected Individuals under Data Compromise Response Expenses is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals". Notwithstanding, coverage for Identity Restoration Case Management services initiated within such one year period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

## D. DEDUCTIBLES

1. We will not pay for "loss" until the amount of the insured "loss" exceeds the deductible amount shown in the Cyber Suite Coverage Form Supplemental Declarations. We will then pay the amount of "loss" in excess of the applicable deductible amount, subject to the applicable limits shown in the Cyber Suite Coverage Form Supplemental Declarations. You will be responsible for the applicable deductible amount.

2. The deductible will apply to all:

a. "Loss" arising from the same insured event or interrelated insured events under Data Compromise Response Expenses or Computer Attack and Cyber Extortion.

b. "Loss" resulting from the same "wrongful act" or interrelated "wrongful acts" insured under Data Compromise Liability, Network Security Liability or Electronic Media Liability.

3. Insurance coverage under Identity Recovery is not subject to a deductible.

## E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### 1. Bankruptcy

The bankruptcy or insolvency of you or your estate, will not relieve you or us of any obligation under this Coverage Form.

### 2. Defense And Settlement

a. We shall have the right and the duty to assume the defense of any applicable "claim" or "regulatory proceeding" against you. You shall give us such information and cooperation as we may reasonably require.

b. You shall not admit liability for or settle any "claim" or "regulatory proceeding" or incur any defense costs without our prior written consent.

c. At the time a "claim" or "regulatory proceeding" is first reported to us, you may request that we appoint a defense attorney of your choice. We will give full consideration to any such request.

d. If you refuse to consent to any settlement recommended by us and acceptable to the

© 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

claimant, we may then withdraw from your defense by tendering control of the defense to you. From that point forward, you shall, at your own expense, negotiate or defend such "claim" or "regulatory proceeding" independently of us. Our liability shall not exceed the amount for which the claim or suit could have been settled if such recommendation was consented to, plus defense costs incurred by us, and defense costs incurred by you with our written consent, prior to the date of such refusal.

e.   We will not be obligated to pay any "loss" or "defense costs", or to defend or continue to defend any "claim" or "regulatory proceeding" after the applicable limit of insurance has been exhausted.

f.   We will pay all interest on that amount of any judgment within the applicable limit of insurance which  accrues:

   (1)  After entry of judgment; and

   (2)  Before we pay, offer to pay or deposit in court that part of the judgment within the applicable limit of  insurance or, in any case, before we pay or offer to pay the entire applicable limit of insurance.

   These interest payments will be in addition to and not part of the applicable limit of insurance.

## 3.   Due Diligence

You agree to use due diligence to prevent and mitigate "loss" insured under this Coverage Form. This  includes, but is not limited to, complying with, and requiring your vendors to comply with, reasonable and  industry-accepted protocols for:

a.   Providing and maintaining appropriate physical security for your premises, "computer systems" and  hard copy files;

b.   Providing and maintaining appropriate computer and Internet security;

c.   Maintaining and updating at appropriate intervals backups of computer data;

d.   Protecting transactions, such as processing credit card, debit card and check payments; and

e.   Appropriate disposal of files containing "personally identifying information", "personally sensitive  information" or "third party corporate data", including shredding hard copy files and destroying  physical media used to store electronic data.

## 4.   Duties in the Event of a Claim, Regulatory Proceeding or Loss

a.   If, during the "policy period", incidents or events occur which you reasonably believe may give rise  to a "claim" or "regulatory proceeding" for which coverage may be provided hereunder, such belief being based upon either written notice from the potential claimant or the potential claimant's  representative; or notice of a complaint filed with a federal, state or local agency; or upon an oral  "claim", allegation or threat, you shall give written notice to us as soon as practicable and either:

   (1)  Anytime during the "policy period"; or

   (2)  Anytime during the extended reporting periods (if applicable).

b.   If a "claim" or "regulatory proceeding" is brought against you, you must:

   (1)  Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received;

   (2)  Provide us with written notice, as soon as practicable, but in no event more than 60 days after  the date the "claim" or "regulatory proceeding" is first received by you;

   (3)  Immediately send us copies of any demands, notices, summonses or legal papers received in  connection with the "claim" or "regulatory proceeding";

   (4)  Authorize us to obtain records and other information;

   (5)  Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

   (6)  Assist us, upon our request, in the enforcement of any right against any person or organization  which may be liable to you because of "loss" or "defense costs" to which this insurance may  also apply; and

All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(7) Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

c. In the event of a "personal data compromise", "identity theft", "computer attack" or "cyber extortion threat" insured under this coverage form, you and any involved "identity recovery insured" must see that the following are done:

(1) Notify the police if a law may have been broken.

(2) Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise", "identity theft" , "computer attack" or "cyber extortion threat". Include a description of any property involved.

(3) As soon as possible, give us a description of how, when and where the "personal data compromise", "identity theft", "computer attack" or "cyber extortion threat" occurred.

(4) As often as may be reasonably required, permit us to:

(a) Inspect the property proving the "personal data compromise", "identity theft", "computer attack" or "cyber extortion threat";

(b) Examine your books, records, electronic media and records and hardware;

(c) Take samples of damaged and undamaged property for inspection, testing and analysis; and

(d) Make copies from your books, records, electronic media and records and hardware.

(5) Send us signed, sworn proof of "loss" containing the information we request to investigate the "personal data compromise", "identity theft", "computer attack" or "cyber extortion threat". You must do this within 60 days after our request. We will supply you with the necessary forms.

(6) Cooperate with us in the investigation or settlement of the "personal data compromise", "identity theft", "computer attack" or "cyber extortion threat".

(7) If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

(8) Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our prior written consent.

(9) Promptly send us any legal papers or notices received concerning the "loss".

d. We may examine you under oath at such times as may be reasonably required, about any matter relating to this insurance or the "claim", "regulatory proceeding" or "loss", including your books and records. In the event of an examination, your answers must be signed.

e. You may not, except at your own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

## 5. Extended Reporting Periods

a. You will have the right to the Extended Reporting Periods described in this section, in the event of a "termination of coverage".

b. If a "termination of coverage" has occurred, you will have the right to the following:

(1) At no additional premium, an Automatic Extended Reporting Period of 30 days immediately following the effective date of the "termination of coverage" during which you may first receive notice of a "claim" or "regulatory proceeding" arising directly from a "wrongful act" occurring before the end of the "policy period" and which is otherwise insured by this Coverage Form; and

(2) Upon payment of the additional premium of 100% of the full annual premium associated with the relevant coverage, a Supplemental Extended Reporting Period of one year immediately following the effective date of the "termination of coverage" during which you may first receive notice of a "claim" or "regulatory proceeding" arising directly from a "wrongful act" occurring before the end of the "policy period" and which is otherwise insured by this Coverage Form.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 30 days after the effective date of "termination of coverage". The additional premium for the Supplemental Extended Reporting Period will

© 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

If there is other insurance that applies to the same "loss", this insurance, provided during the Supplemental Extended Reporting Period, shall apply only as excess insurance after all other applicable insurance has been exhausted.

## 6. Identity Recovery Help Line

For assistance, if Identity Recovery applies, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-844-378-3176**.

The Identity Recovery Help Line can provide the "identity recovery insured" with:

a. Information and advice for how to respond to a possible "identity theft"; and

b. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the Coverage Form. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses".

## 7. Legal Action Against Us

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within two years after the date the "loss" or "identity theft" is first discovered by you, or the date on which you first receive notice of a "claim" or "regulatory proceeding".

## 8. Legal Advice

We are not your legal advisor. Our determination of what is or is not insured under this Coverage Form does not represent advice or counsel from us about what you should or should not do.

## 9. Other Insurance

If there is other insurance that applies to the same "loss", this Coverage Form shall apply only as excess insurance after all other applicable insurance has been exhausted.

## 10. Pre-Notification Consultation

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under Data Compromise Response Expenses for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under the Service Providers condition below. You must provide the following at our pre-notification consultation with you:

a. The exact list of "affected individuals" to be notified, including contact information.

b. Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

c. The scope of services that you desire for the "affected individuals". For example, coverage may be

structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Data Compromise Response Expenses limit of insurance.

### 11. Service Providers

a. We will only pay under this Coverage Form for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Form. We will not unreasonably withhold such approval.

b. Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

(1) Such alternate service provider must be approved by us;

(2) Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

(3) Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

### 12. Services

The following conditions apply as respects any services provided to you or any "affected individual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Form:

a. The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

b. All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

c. We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

d. Except for the services of an "identity recovery case manager" under Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Form. Those firms work for you.

## F. DEFINITIONS

1. **"Affected Individual"** means any person who is your current, former or prospective customer, client, patient, member, owner, student, director or employee and whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Form. This definition is subject to the following provisions:

a. "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

b. An "affected individual" must have a direct relationship with your interests as insured under this policy. The following are examples of individuals who would not meet this requirement:

(1) If you aggregate or sell information about individuals as part of your business, the individuals about whom you keep such information do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

(2) If you store, process, transmit or transport records, the individuals whose "personally identifying information" or "personally sensitive information" you are storing, processing, transmitting or transporting for another entity do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of yours.

(3) You may have operations, interests or properties that are not insured under this policy.

AR CYBER 03 18          © 2017 The Hartford Steam Boiler Inspection and Insurance Company.

All rights reserved.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Individuals who have a relationship with you through such other operations, interests or properties do not qualify as "affected individuals". However, specific individuals may qualify as "affected individuals" for another reason, such as being an employee of the operation insured under this policy.

   **c.** An "affected individual" may reside anywhere in the world.

2. **"Authorized Representative"** means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

3. **"Authorized Third Party User"** means a party who is not an employee or a director of you who is authorized by contract or other agreement to access the "computer system" for the receipt or delivery of services.

4. **"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

5. **"Business Income and Extra Expense Loss"** means the loss of Business Income and Extra Expense actually incurred during the Period of Restoration.

   **a.** As used in this definition, Business Income means the sum of:

      (1) Net income (net profit or loss before income taxes) that would have been earned or incurred; and

      (2) Continuing normal and necessary operating expenses incurred, including employee and director payroll.

   **b.** As used in this definition, Extra Expense means the additional cost you incur to operate your business over and above the cost that you normally would have incurred to operate your business during the same period had no "computer attack" occurred.

   **c.** As used in this definition, Period of Restoration means the period of time that begins at the time that the "computer attack" is discovered by you and continues until the earlier of:

      (1) The date that all data restoration, data re-creation and system restoration directly related to the "computer attack" has been completed; or

      (2) The date on which such data restoration, data re-creation and system restoration could have been completed with the exercise of due diligence and dispatch.

6. **"Claim"**

   **a.** "Claim" means:

      (1) A written demand for monetary damages or non-monetary relief, including injunctive relief;

      (2) A civil proceeding commenced by the filing of a complaint;

      (3) An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent;

      (4) Any other alternative dispute resolution proceeding in which such damages are claimed and to which you must submit or to which we agree you should submit to;

   arising from a "wrongful act" or a series of interrelated "wrongful acts" including any resulting appeal.

   **b.** "Claim" does not mean or include:

      (1) Any demand or action brought by or on behalf of someone who is:

         (a) Your director;

         (b) Your owner or part-owner; or

         (c) A holder of your securities,

      in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual"; or

      (2) A "regulatory proceeding".

   **c.** Includes a demand or proceeding arising from a "wrongful act" that is a "personal data compromise" only when:

      (1) The proceeding is brought by one or more "affected individuals";

© 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) The claimant alleges that one or more "affected individuals" suffered damages; and

(3) The "personal data compromise" giving rise to the proceeding was covered under Data Compromise Response Expenses section of this Coverage Form, and you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Data Compromise Response Expenses in connection with such "personal data compromise".

7. **"Computer Attack"** means one of the following involving the "computer system":

   a. An "unauthorized access incident";

   b. A "malware attack"; or

   c. A "denial of service attack" against a "computer system".

8. **"Computer System"** means a computer or other electronic hardware that is owned or leased by you and operated under your control.

9. **"Coverage Term"** means the increment of time:

   a. Commencing on the earlier of the first inception date of this Cyber Coverage or the first inception date of any coverage substantially similar to that described in this coverage form and held immediately prior to this Cyber coverage; and

   b. Ending upon the "termination of coverage".

10. **"Coverage Territory"** means:

   a. With respect to Data Compromise Response Expenses, Computer Attack and Cyber Extortion, and Identity Recovery, "coverage territory" means anywhere in the world.

   b. With respect to Data Compromise Liability, Network Security Liability and Electronic Media Liability, "coverage territory" means anywhere in the world, however "claims" must be brought within the United States (including its territories and possessions) or Puerto Rico.

11. **"Cyber Extortion Expenses"** means:

   a. The cost of a negotiator or investigator retained by you in connection with a "cyber extortion threat"; and

   b. Any amount paid by you in response to a "cyber extortion threat" to the party that made the "cyber extortion threat" for the purposes of eliminating the "cyber extortion threat" when such expenses are necessary and reasonable and arise directly from a "cyber extortion threat". The payment of "cyber extortion expenses" must be approved in advance by us. We will not pay for "cyber extortion expenses" that have not been approved in advance by us. We will not unreasonably withhold our approval.

12. **"Cyber Extortion Threat"** means:

   a. "Cyber extortion threat" means a demand for money from you based on a credible threat, or series of related credible threats, to:

      (1) Launch a "denial of service attack" against the "computer system" for the purpose of denying "authorized third party users" access to your services provided through the "computer system" via the Internet;

      (2) Gain access to a "computer system" and use that access to steal, release or publish "personally identifying information", "personally sensitive information" or "third party corporate data";

      (3) Alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system";

      (4) Launch a "computer attack" against a "computer system" in order to alter, damage or destroy electronic data or software while such electronic data or software is stored within a "computer system"; or

      (5) Cause you to transfer, pay or deliver any funds or property using a "computer system" without your authorization.

   b. "Cyber extortion threat" does not mean or include any threat made in connection with a legitimate commercial dispute.

13. **"Data Re-creation Costs"**

   a. "Data re-creation costs" means the costs of an outside professional firm hired by you to

 © 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

research, re- create and replace data that has been lost or corrupted and for which there is no electronic source available or where the electronic source does not have the same or similar functionality to the data that has been lost or corrupted.

  b.  "Data re-creation costs" does not mean or include costs to research, re-create or replace:

  (1) Software programs or operating systems that are not commercially available; or

  (2) Data that is obsolete, unnecessary or useless to you.

14. **"Data Restoration Costs"**

  a.  "Data restoration costs" means the costs of an outside professional firm hired by you to replace electronic data that has been lost or corrupted. In order to be considered "data restoration costs", such replacement must be from one or more electronic sources with the same or similar functionality to the data that has been lost or corrupted.

  b.  "Data restoration costs" does not mean or include costs to research, re-create or replace:

  (1) Software programs or operating systems that are not commercially available; or

  (2) Data that is obsolete, unnecessary or useless to you.

15. **"Defense Costs"**

  a.  "Defense costs" means reasonable and necessary expenses consented to by us resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against you. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

  b.  "Defense costs" does not mean or include the salaries or wages of your employees or directors, or your loss of earnings.

16. **"Denial of Service Attack"** means an intentional attack against a target computer or network of computers designed to overwhelm the capacity of the target computer or network in order to deny or impede authorized users from gaining access to the target computer or network through the Internet.

17. **"Electronic Media Incident"** means an allegation that the display of information in electronic form by you on a website resulted in:

  a.  Infringement of another's copyright, title, slogan, trademark, trade name, trade dress, service mark or service name;

  b.  Defamation against a person or organization that is unintended; or

  c.  A violation of a person's right of privacy, including false light and public disclosure of private facts;

18. **"Identity Recovery Case Manager"** means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

19. **"Identity Recovery Expenses"** means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

  a.  **Re-Filing Costs**

  Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

  b.  **Notarization, Telephone and Postage Costs**

  Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of the "identity recovery insured's" efforts to report an "identity theft" or amend or rectify records as to the "identity recovery insured's" true name or identity as a result of an "identity theft".

  c.  **Credit Reports**

  Costs for credit reports from established credit bureaus.

 © 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

d. **Legal Costs**

Fees and expenses for an attorney approved by us for the following:

(1) The defense of any civil suit brought against an "identity recovery insured".

(2) The removal of any civil judgment wrongfully entered against an "identity recovery insured".

(3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

(4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

(5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

e. **Lost Wages**

Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

f. **Child and Elder Care Expenses**

Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

g. **Mental Health Counseling**

Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

h. **Miscellaneous Unnamed Costs**

Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

(1) Such costs include:

(a) Costs by the "identity recovery insured" to recover control over his or her personal identity.

(b) Deductibles or service fees from financial institutions.

(2) Such costs do not include:

(a) Costs to avoid, prevent or detect "identity theft" or other loss.

(b) Money lost or stolen.

(c) Costs that are restricted or excluded elsewhere in this Coverage Form or policy.

20. **"Identity Recovery Insured"** means the following:

a. When the entity insured under this Coverage Form is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured entity.

b. When the entity insured under this Coverage Form is a partnership, the "identity recovery insureds" are the current partners.

c. When the entity insured under this Coverage Form is a corporation or other form of organization, other than those described in a. or b. above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if, and only if, there is no one who has such an ownership position, then the "identity recovery insured" will be:

(1) The chief executive of the insured entity; or

(2) As respects a religious institution, the senior ministerial employee.

An "identity recovery insured" must always be an individual person. If the entity insured under this Coverage Form is a legal entity, that legal entity is not an "identity recovery insured".

21. **"Identity Theft"**

   a.  "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

   b.  "Identity theft" does not mean or include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

22. **"Loss"**

   a.  With respect to Data Compromise Response Expenses, "loss" means those expenses enumerated in Data Compromise Response Expenses, paragraph b.

   b.  With respect to Computer Attack, "loss" means those expenses enumerated in Computer Attack, paragraph b.

   c.  With respect to Cyber Extortion, "loss" means "cyber extortion expenses".

   d.  With respect to Data Compromise Liability, Network Security Liability and Electronic Media Liability, "loss" means "defense costs" and "settlement costs".

   e.  With respect to Identity Recovery, "loss" means those expenses enumerated in Identity Recovery, paragraph b.

23. **"Malware Attack"**

   a.  "Malware attack" means an attack that damages a "computer system" or data contained therein arising from malicious code, including viruses, worms, Trojans, spyware and keyloggers.

   b.  "Malware attack" does not mean or include damage from shortcomings or mistakes in legitimate electronic code or damage from code installed on your "computer system" during the manufacturing process or normal maintenance.

24. **"Malware-Related Compromise"** means a "personal data compromise" that is caused, enabled or abetted by a virus or other malicious code that, at the time of the "personal data compromise", is named and recognized by the CERT® Coordination Center, McAfee®, Secunia, Symantec or other comparable third party monitors of malicious code activity.

25. **"Network Security Incident"** means a negligent security failure or weakness with respect to a "computer system" which allowed one or more of the following to happen:

   a.  The unintended propagation or forwarding of malware, including viruses, worms, Trojans, spyware and keyloggers. Malware does not include shortcomings or mistakes in legitimate electronic code;

   b.  The unintended abetting of a "denial of service attack" against one or more other systems; or

   c.  The unintended loss, release or disclosure of "third party corporate data".

26. **"Personal Data Compromise"** means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

   a.  At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

      (1)  You; or

      (2)  A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, processing, transmission or transportation of such information.

   b.  "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, provided that the failure to use appropriate safeguards was accidental and not reckless or deliberate.

   c.  "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been

© 2017 The Hartford Steam Boiler Inspection and Insurance Company.
All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

lost, stolen,  accidentally released or accidentally published, even if there is no firm proof.

    d.  All incidents of "personal data compromise" that are discovered at the same time or arise from the  same cause will be considered one "personal data compromise".

27. **"Personally Identifying Information"**

    a.  "Personally identifying information" means information, including health information, that could be  used to commit fraud or other illegal activity involving the credit, access to health care or identity of  an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social  Security numbers or account numbers.

    b.  "Personally identifying information" does not mean or include information that is otherwise available  to the public, such as names and addresses.

28. **"Personally Sensitive Information"**

    a.  "Personally sensitive information" means private information specific to an individual the release of  which requires notification of "affected individuals" under any applicable law.

    b.  "Personally sensitive information" does not mean or include "personally identifying information".

29. **"Policy Period"** means the period commencing on the effective date shown in the Policy Declarations. The "policy period" ends on the expiration date or the cancellation date of this Coverage Form, whichever comes first.

30. **"Property Damage"** means

    a.  Physical injury to or destruction of tangible property including all resulting loss of use; or

    b.  Loss of use of tangible property that is not physically injured.

31. **"Regulatory Proceeding"** means an investigation, demand or proceeding alleging a violation of law or  regulation arising from a "personal data compromise" brought by, or on behalf of, the Federal Trade Commission, Federal Communications  Commission or other administrative or regulatory agency, or any federal, state, local or foreign  governmental entity in such entity's regulatory or official capacity.

32. **"Settlement Costs"**

    a.  "Settlement costs" means the following, when they arise from a "claim":

        (1)  Damages, judgments or settlements; and

        (2)  Attorney's fees and other litigation costs added to that part of any judgment paid by us, when  such fees and costs are awarded by law or court order; and

        (3)  Pre-judgment interest on that part of any judgment paid by us.

    b.  "Settlement costs" does not mean or include:

        (1)  Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly  covered under Data Compromise Response Expenses;

        (2)  Punitive and exemplary damages;

        (3)  The multiple portion of any multiplied damages;

        (4)  Taxes; or

        (5)  Matters which may be deemed uninsurable under the applicable law.

    c.  With respect to fines and penalties, the law of the  jurisdiction most favorable to the insurability of those fines,  or penalties will control for the  purpose of resolving any dispute between us and you regarding whether the fines,  or  penalties specified in this definition above are insurable under this Coverage Form,  provided that such jurisdiction:

        (1)  Is where those fines, or penalties were awarded or imposed;

        (2)  Is where any "wrongful act" took place for which such fines, or penalties were  awarded or imposed;

        (3)  Is where you are incorporated or you have your principal place of business; or

        (4)  Is where we are incorporated or have our principal place of business.

33. **"System Restoration Costs"**

    a.  "System restoration costs" means the costs of an outside professional firm hired by you to do any of  the following in order to restore your computer system to its pre-"computer attack" level

All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

of functionality:

    (1) Replace or reinstall computer software programs;

    (2) Remove any malicious code; and

    (3) Configure or correct the configuration of your computer system.

b.  "System restoration costs" does not mean or include:

    (1) Costs to increase the speed, capacity or utility of a "computer system" beyond what existed immediately prior to the "computer attack";

    (2) Labor costs of your employees or directors;

    (3) Any costs in excess of the actual cash value of your computer system; or

    (4) Costs to repair or replace hardware.

34. **"Termination of Coverage"** means:

a.  You or we cancel this coverage;

b.  You or we refuse to renew this coverage; or

c.  We renew this coverage on an other than claims-made basis or with a retroactive date later than the date of the first inception of this coverage or any coverage substantially similar to that described in this coverage form.

35. **"Third Party Corporate Data"**

a.  "Third party corporate data" means any trade secret, data, design, interpretation, forecast, formula, method, practice, credit or debit card magnetic strip information, process, record, report or other item of information of a third party not an insured under this Coverage Form which is not available to the general public and is provided to you subject to a mutually executed written confidentiality agreement or which you are legally required to maintain in confidence.

b.  "Third party corporate data" does not mean or include "personally identifying information" or "personally sensitive information".

36. **"Unauthorized Access Incident"** means the gaining of access to a "computer system" by:

**a.**  An unauthorized person or persons; or

**b.**  An authorized person or persons for unauthorized purposes.

37. **"Wrongful Act"**

a.  With respect to Data Compromise Liability, "wrongful act" means a "personal data compromise".

b.  With respect to Network Security Liability, "wrongful act" means a "network security incident".

c.  With respect to Electronic Media Liability, "wrongful act" means an "electronic media incident".

ALL OTHER PROVISIONS OF THIS POLICY APPLY.

## **Calendar Year Named Storm Deductible**

The Named Storm Wind/Hail Deductible, as described elsewhere in this policy, will apply anew in each calendar year.  If the policy period does not coincide with the calendar year, then a separate Named Storm Wind/Hail Deductible will apply to loss or damage that occurs during each calendar year in which the policy is in force.  For example, if the policy period is from July 1 of calendar year 1 to June 30 of calendar year 2, a separate Named Storm Wind/Hail Deductible applies to loss or damage occurring from July 1 to December 31 of calendar year 1 and to loss or damage occurring from January 1 to June 30 of calendar year 2.

When a Named Storm results in loss or damage that exhausts the Named Storm Wind/Hail Deductible, then that Named Storm Wind/Hail Deductible will not apply to loss or damage from a subsequent Named Storm in the same calendar year.  In such case, the Deductible that applies to loss or damage from each subsequent Named Storm in that calendar year shall be the "All Other Wind/Hail" Deductible.

When a Named Storm results in loss or damage that does not exhaust the Named Storm Wind/Hail Deductible, then the Named Storm Wind/Hail Deductible applicable to a subsequent Named Storm in the same calendar year shall be the greater of:

   a)   the All Other Wind/Hail Deductible; or
   b)   the remaining amount of the Named Storm Wind/Hail Deductible.   In this situation, the remaining amount of the Named Storm Wind/Hail Deductible is determined by subtracting the amount(s) of the aforementioned loss or damage from the Named Storm Wind/Hail Deductible.

All other terms and conditions remain unchanged.

AR CYNS 08 14

## Compass Sinkhole Loss Extension

It is understood and agreed that this policy is amended as follows:

1.  The words "**Sinkhole Loss**" are deleted from the **Earth Movement** definition in Section VIII.J.5. of the Compass 04 18 Form.

2.  The Compass Form is extended to cover **Sinkhole Loss**, as defined under Section VIII.BB.

All other terms and conditions remain unchanged.

AR Compass Sinkhole 04 18

## TERRORISM ENDORSEMENT

**The extension of coverage as provided by this endorsement shall also be subject to all of the other terms and conditions contained in this policy and any other endorsements attached to this Policy.**

## PROPERTY SECTION

### Insuring Clause

Subject to the exclusions, limits and conditions hereinafter contained, this Insurance insures Real and Personal Property against direct physical loss or physical damage by an Act of Terrorism, as herein defined, occurring during the period of this Policy as stated in the Declarations Page.

For the purpose of this Insurance, an Act of Terrorism means an act, including the use of force or violence, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s), committed for political, religious or ideological purposes including the intention to influence any government and/or to put the public in fear for such purposes.

### Losses Excluded

IN ADDITION TO THE EXCLUSIONS STATED ELSEWHERE IN THIS POLICY, THIS EXTENSION OF COVERAGE DOES NOT INSURE AGAINST:

1.   Loss or damage arising directly or indirectly from nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination, however such nuclear detonation, nuclear reaction, nuclear radiation or radioactive contamination may have been caused.

2.   Loss or damage occasioned directly or indirectly by war, invasion or warlike operations (whether war be declared or not), hostile acts of sovereign or government entities, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power or martial law or confiscation by order of any Government or public authority.

3.   Loss by seizure or illegal occupation.

4.   Loss or damage caused by confiscation, requisition, detention, legal or illegal occupation, embargo, quarantine, or any result of any order of public or government authority which deprives the Insured of the use or value of its property, nor for loss or damage arising from acts of contraband or illegal transportation or illegal trade.

5.   Loss or damage directly or indirectly arising from or in consequence of the discharge of pollutants or contaminants, which pollutants and contaminants shall include but not be limited to any solid, liquid, gaseous or thermal irritant, contaminant of toxic or hazardous substance or any substance the presence, existence or release of which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6.   Loss or damage by chemical or biological release or exposure of any kind.

7.   Loss or damage by attacks by electronic means, including computer hacking or the introduction of any form of computer virus.

8.   Loss or damage caused by vandals or other persons acting maliciously or by way of protest or strikes, riots or civil commotion unless physical loss or damage is caused directly by an Act of Terrorism.

9.   Loss or increased cost occasioned by any Public or Civil Authority's enforcement of any ordinance or law regulating the reconstruction, repair or demolition of any property insured hereunder; unless this ordinance or law extension is also covered by the Policy's other insured perils.

10.   Any consequential loss or damage caused by any other ensuing cause.

11.   Loss of use, delay or loss of markets, however caused or arising, and despite any preceding loss insured hereunder.

12.   Loss or damage caused by cessation, fluctuation or variation in, or insufficiency of, water, gas or electricity supplies and telecommunications of any type or service.

13.   Loss or increased cost as a result of threat or hoax, in the absence of physical damage due to an Act of Terrorism.

14.   Loss or damage caused by or arising out of burglary, house - breaking, theft or larceny or caused by any person taking part therein.

15.   Loss, damage, cost or expense or whatsoever nature directly or indirectly caused by, resulting from or in connection with any actual or threatened existence, growth, release, transmission, migration, dispersal, or exposure to Mold, Spores, or Fungus, regardless of any other cause or event contributing concurrently or in any other sequence to the loss. Mold, Spores, or Fungus means any mold, spores or fungus of any type that can cause or threaten physical damage, deterioration, loss of use or loss of value or marketability, to any tangible property whatsoever. This includes, but is not limited to, any type(s) of Mold, Spores, or Fungus that are damaging or potentially damaging to tangible property. Nor does this policy apply to the cost of removal, disposal, decontamination or replacement of insured property which has been contaminated by Mold, Spores, or Fungus and by law and civil authority must be restored, disposed of, or decontaminated. In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

## Property Excluded

IN ADDITION TO THE PROPERTY EXCLUDED ELSEWHERE IN THIS POLICY, THIS EXTENSION OF COVERAGE SHALL ALSO EXCLUDE THE FOLLOWING:

1.   Property located in the downtown business districts (specific zip codes) of:
      Boston, MA: 02108, 02109, 02110, 02111, 02112, 02113, 02114, 02203, 02205, 02210, 02211, 02212 & 02222.
      San Francisco, CA: 94104, 94105 & 94111.
      Washington, DC: 20001, 20002, 20003, 20004, 20005, 20006, 20024, 20036, 20037, 20045, 20059, 20201, 20204, 20220, 20240, 20260, 20319, 20401, 20407, 20410, 20418, 20500, 20503, 20515, 20530, 20549 & 20560.
      Manhattan, NY: 10002, 10004, 10005, 10006, 10007, 10013, 10038, 10048, 10280 & 10282.

2.   Buildings with values greater than $250,000,000.

3.   Buildings or locations where animal testing is conducted.

4.   Embassies and Government owned & occupied buildings. State and Local Municipalities and/or Hospitals do not apply to this exclusion.

5.   Abortion Clinics.

6.   Property located in the U.S. Virgin Islands.

7.   Property in Transit not on the Insured's premises.

## Onus of Proof

In any claim and/or action, suit or proceeding to enforce a claim for loss under this policy, the burden of proving that the loss is recoverable under this Policy and that no limitation or exclusion of this policy applies and the quantum of loss shall fall upon the Insured.

## Sum Insured

The Underwriters hereon shall not be liable for more than the sum insured stated in the Supplemental Declarations Page in respect of each occurrence.

## Deductible

Each occurrence shall be adjusted separately and from the amount of each such adjusted loss the sum stated in the Deductible Endorsement shall be deducted.

## Occurrence

The term "Occurrence" shall mean any one loss and/or series of losses arising out of and directly occasioned by one Act or series of Acts of Terrorism for the same purpose or cause.  The duration and extent of any one "Occurrence" shall be limited to all losses sustained by the Insured at the property insured herein during any period of 72 consecutive hours arising out of the same purpose or cause.  However, no such period of 72 consecutive hours may extend beyond the expiration of this policy unless the Insured shall first sustain direct physical damage by an Act of Terrorism prior to expiration and within said period of 72 consecutive hours nor shall any period of 72 consecutive hours commence prior to the attachment of this Policy.

## Conditions

1.  Protection Maintenance

    It is agreed that any protection provided for the safety of the insured property shall be maintained in good order throughout the currency of this Policy and shall be in use at all relevant times, and that such protection shall not be withdrawn or varied to the detriment of the interests of the Underwriters without their consent.

2.  Rights of Third Parties Exclusion

    This Policy is effected solely between the Insured and Underwriters.  This Policy shall not confer any benefits on any third parties, including shareholders, and no such third party may enforce any term of this Policy.  The Contract (Rights of Third Parties) Act 1999 is expressly excluded from this Policy.

    This clause shall not affect the rights of the Insured.  Any Loss Payees and/or Mortgagees shall be included in loss payments, as their interests may appear..

3.  Arbitration Clause

    All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

    Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent.  Within thirty days of receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

    Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred. If the Arbitrators cannot agree to an Umpire, either may request the selection to be made by a judge of a New York court.

    Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

    The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

    Each party will pay its chosen Arbitrator, and also bear the other expenses of the Arbitration and Umpire equally.

    The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

    The Arbitration Tribunal may not award exemplary, punitive, multiple, consequential, or other damages of a similar nature.

    A decision agreed to by any two members of the Arbitration Tribunal shall be binding. The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same. If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

**BUSINESS INTERRUPTION SECTION**

In consideration of the premium paid, and subject to the EXCLUSIONS, CONDITIONS AND LIMITATIONS of the Policy to which this Extension is attached, and also to the FOLLOWING ADDITIONAL CONDITIONS and EXCLUSIONS, this Policy is extended to cover loss resulting from necessary Interruption of Business, relating only to the premises affected by the Act of Terrorism, caused by Direct Physical Loss or Damage of an Act of Terrorism, as covered by the Policy to which this Extension is attached, to property insured by this Policy.  This Policy is also extended to cover loss resulting from Interruption of Business (if covered) to an Insured's covered Location due to INTERRUPTION BY CIVIL OR MILITARY AUTHORITY or INGRESS & EGRESS, from an Act of Terrorism, to real property not owned by the Insured; and only for the SUBLIMITS OF LIABILITY stated elsewhere in this policy; however, in no event to exceed $1,000,000 per occurrence.

**Conditions**

Direct Damage

No claim shall be payable under this Extension unless and until a claim has been paid, or liability admitted, in respect of Direct Physical Loss or Damage by an Act of Terrorism to property insured under the Policy to which this Extension is attached and which gave rise to Interruption of Business.

This Condition shall not apply if no such payment shall have been made, or liability admitted, solely owing to the operation of a Deductible in said Policy which excludes liability for losses below a specified amount.

This Condition shall be amended to include Direct Physical Loss or Damage to real property not owned by the Insured, but only as respects INTERRUPTION BY CIVIL OR MILITARY AUTHORITY or INGRESS & EGRESS if covered under this policy.

**Exclusions**

IN ADDITION TO THE EXCLUSIONS STATED ELSEWHERE IN THIS POLICY, THIS EXTENSION DOES NOT INSURE AGAINST:

1.    Increase in loss resulting from interference at the insured premises, by strikers or other persons, with rebuilding, repairing or replacing the property or with the resumption or continuation of operation.

2.    Increase in loss caused by the suspension, lapse, or cancellation of any lease, licence, contract, or order, unless such results directly from the insured Interruption of Business, and then Underwriters shall be liable for only such loss as affects the Insured's earnings during, and limited to, the period of indemnity covered under this Policy.

3.    Increase in loss caused by the enforcement of any ordinance or law regulating the use, reconstruction, repair or demolition of any property insured hereunder; unless this ordinance or law extension is also covered by the Policy's other insured perils.

4.    Loss of market or other consequential loss, except as respects loss resulting from Interruption of Business (if covered), to an Insured's covered Location due to INTERRUPTION BY CIVIL OR MILITARY AUTHORITY and/or INGRESS & EGRESS, from an Act of Terrorism to real property not owned by the Insured.

5.    Loss as a result of physical or mental or bodily injury to any person.

All other terms and conditions remain unchanged.

AR TERR 07 20                                                                                                                          4

## Louisiana Notices

**IMPORTANT INFORMATION REQUIRED BY THE
LOUISIANA DEPARTMENT OF INSURANCE**

**Fire Insurance Policy Coverage Disclosure Summary**
(other than Homeowners)

**Or**

**Commercial Insurance Policy Coverage Disclosure Summary**
This form is promulgated pursuant to LSA-R.S. 22:1319

**THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGES OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS AND OBLIGATIONS.**

**\*\* READ YOUR INSURANCE POLICY
FOR COMPLETE POLICY TERMS AND CONDITIONS\*\***

**COVERAGE(S) FOR WHICH PREMIUM WAS PAID**
Real & Personal Property
Time Element

**DEDUCTIBLES**

This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.

- You may be able to reduce your premium by increasing your deductible. Contact your producer (agent) or insurer for details.

NOTICE:  This policy does set forth a separate deductible for covered losses caused by hurricane; wind; named storm as defined in the policy.

Separate Deductible Example - Hurricane, Wind or Named Storm Damage.

If applicable, the following illustrates how a separate deductible applying to hurricane, wind or named storm damage is applied under your policy:

The following assumes no co-insurance penalty, no Business Income coverage and a 2% per building named storm  (including hurricane) deductible.  The amounts  of loss   to the damaged  property  are  $50,000 (building)  and $20,000  (business personal property).

| | | |
|---|---|---|
| Limits of insurance on building | $ | 100,000.00 |
| Limits of insurance on the business personal property | $ | 50,000.00 |
| Total amount of loss to building and business personal property | $ | 70,000.00 |
| Less 2% deductible ($150,000 x .02) | -$ | 3,000.00 |
| Net payment to Insured for loss | $ | 67,000.00 |

However, the loss may be subject to minimum named storm (including hurricane) Deductible amount.  If the policy has a  $ 50,000   minimum named  storm (including hurricane) Deductible, the net payment to the Insured is $20,000.00

The All Other Wind Deductible (not named storm or hurricane), may be a flat deductible such as $50,000 or $100,000.

## TO SEE EXACTLY HOW YOUR SEPARATE HURRICANE, WIND OR NAMED STORM DEDUCTIBLE WILL APPLY, PLEASE REFER TO YOUR POLICY.

## LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

FLOOD - Flood damage _ _  is _X_  is not covered,  regardless of how caused, when flood is the peril that causes the loss.  Flood water includes, but is not limited  to, storm surge, waves,  tidal water, overflow  of  a  body  of water, whether driven by wind or not.

Flood Insurance  may  be  available through the National Flood Insurance Program (NFIP). NFIP flood insurance may  provide coverage for  damage to your dwelling or building and/or contents subject to the coverage limits and terms of the policy.

Excess Flood Insurance  may be  available under a separate policy, from this or another insurer, if the amount of the primary flood insurance is not enough to cover the value of your property.

- You may contact your producer (agent) or insurer  for  more  information on the NFIP and excess flood insurance.

MOLD - Damage caused solely by mold is not covered under this policy.

**FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS**

LA Notice
LSW1667A
01/01/10

## Louisiana Surplus Lines insurance from Unauthorized Insurers

## NOTICE

This insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code. In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific _types of_ policies issued by insurance _companies_ authorized to do business in Louisiana.

LA SLN 11 13

## **Contact and Complaints Notice**

If you should have questions or concerns about your policy, or if you feel that you have not been offered excellent service please first contact your insurance agent through whom this insurance was placed. Your agent will be able to advise and provide assistance in many cases.

If you are unable to resolve your concern and wish to contact us about a complaint or for further assistance you may reach us at:

By email:
      Complaints@AmRISC.com

By telephone:
      252-247-8760 local number to Morehead City, NC office
      877-284-4900 toll free number to Morehead City, NC office

By mail:
      AmRISC, LLC
      Complaints Department
      20405 State Highway 249
      Suite 430
      Houston, TX 77070

AmRISC, LLC, including its subsidiary divisions, is the managing general agent and/or Correspondent and/or Program Manager that has placed your insurance policy with the insurance carrier(s) listed on your policy declarations page.

We strive to provide excellent service to all of our customers and will take all concerns seriously and will endeavor to resolve all questions or complaints promptly.

AR CAC 01 20

**U.S. Terrorism Risk Insurance Act of 2002 as amended**
**Not Purchased Clause**

*This Clause is issued in accordance with the terms and conditions of the "U.S. Terrorism Risk Insurance Act of 2002" as amended as summarized in the disclosure notice.*

It is hereby noted that the Underwriters have made available coverage for "insured losses" directly resulting from an "act of terrorism" as defined in the "U.S. Terrorism Risk Insurance Act of 2002", as amended ("TRIA") and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly resulting from any "act of terrorism" as defined in TRIA except to the extent, if any, otherwise provided by this policy.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

LMA5390

09 January 2020

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

A. The following definition is added with respect to the provisions of this endorsement:

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

The Companies will not pay for loss or damage caused directly or indirectly by a "Certified Act of Terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. **Exception Covering Certain Fire Losses**

As respects to property located in states that have Standard Fire Policy or similar laws mandating that insurance Companies provide coverage for "fire following" any Certified Acts of Terrorism, the following exception to the exclusion in Paragraph **B.** applies:

If a "Certified Act of Terrorism" results in fire, the Companies will pay for the loss or damage caused by that fire.  Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or

AR TRIA EXCL 03 21

endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Companies have met their insurer deductible under the Terrorism Risk Insurance Act, the Companies shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D. **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War and Military Action Exclusion.

All other terms and conditions remain unchanged.

AR TRIA EXCL 03 21

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

**ENDORSEMENT 5**

This endorsement, effective on _____02/17/2022_____ , at 12:01 A.M. standard time, forms a part of:

Account No.   868399

| | |
|---|---|
| Certain Underwriters at Lloyds, London | AMR-56365-05 |
| Indian Harbor Insurance Company | AMP7531173-05 |
| QBE Specialty Insurance Company | MSP-23280-05 |
| Steadfast Insurance Company | CPP1009980-05 |
| General Security Indemnity Company of Arizona | 10T029659-06889-21-05 |
| United Specialty Insurance Company | USI-19829-05 |
| Lexington Insurance Company | LEX-014709549-05 |
| HDI Global Specialty SE | HAN-16628-05 |
| Old Republic Union Insurance Company | ORAMPR002325-04 |
| GeoVera Specialty Insurance Company | GVS-14140-00 |
| Transverse Specialty Insurance Company | TSAMPR0003612-00 |

Issued to:   Dupuy Storage & Forwarding, LLC

By:   See Contract Allocation Endorsement AR CA

_____
Authorized Representative

It is understood and agreed that the following Additional Named Insureds shall apply:

    Colley Real Estate LLC
    Decatur Street Services LLC
    Dupuy Storage Florida, LLC
    Dupuy Storage Houston, LLC
    Houston Tea & Beverage, LLC
    RTI Logistics, LLC

All other terms and conditions of the policy shall remain unchanged.

Printed/Issued On:  **02/18/2022**

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 4

This endorsement, effective on    07/16/2021    , at 12:01 A.M. standard time, forms a part of:

Account No.    868399

| | |
|---|---|
| Certain Underwriters at Lloyds, London | AMR-56365-05 |
| Indian Harbor Insurance Company | AMP7531173-05 |
| QBE Specialty Insurance Company | MSP-23280-05 |
| Steadfast Insurance Company | CPP1009980-05 |
| General Security Indemnity Company of Arizona | 10T029659-06889-21-05 |
| United Specialty Insurance Company | USI-19829-05 |
| Lexington Insurance Company | LEX-014709549-05 |
| HDI Global Specialty SE | HAN-16628-05 |
| Old Republic Union Insurance Company | ORAMPR002325-04 |
| GeoVera Specialty Insurance Company | GVS-14140-00 |
| Transverse Specialty Insurance Company | TSAMPR0003612-00 |

Issued to:    Dupuy Storage & Forwarding, LLC

By:    See Contract Allocation Endorsement AR CA

Authorized Representative

It is understood and agreed that Endorsement #3 is deleted in its entirety and is considered null and void.

All other terms and conditions of the policy shall remain unchanged.

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

**ENDORSEMENT 3**

This endorsement, effective on        01/01/2022        , at 12:01 A.M. standard time, forms a part of:

Account No.    868399

| | |
|---|---|
| Certain Underwriters at Lloyds, London | AMR-56365-05 |
| Indian Harbor Insurance Company | AMP7531173-05 |
| QBE Specialty Insurance Company | MSP-23280-05 |
| Steadfast Insurance Company | CPP1009980-05 |
| General Security Indemnity Company of Arizona | 10T029659-06889-21-05 |
| United Specialty Insurance Company | USI-19829-05 |
| Lexington Insurance Company | LEX-014709549-05 |
| HDI Global Specialty SE | HAN-16628-05 |
| Old Republic Union Insurance Company | ORAMPR002325-04 |
| GeoVera Specialty Insurance Company | GVS-14140-00 |
| Transverse Specialty Insurance Company | TSAMPR0003612-00 |

Issued to:   Dupuy Storage & Forwarding, LLC

By:          See Contract Allocation Endorsement AR CA

Authorized Representative

In consideration of a total additional premium of $955.00, it is understood and
agreed the policy is amended as follows:

1. The following location is added:

   9036A Scranton Street
   Houston, TX, 77075
   Values - Contents: $250,000

2. Item A.2. Limit of Liability on form COMPASS SUP DECL 04 18 "Compass Supplemental
   Declarations" is deleted in its entirety and replaced with the following:

   A.2. $50,448,230 maximum limit of liability.

3. Form AR CA 03 18 "Contract Allocation Endorsement" is deleted in its entirety and
   replaced with the attached revised AR CA 03 18 "Contract Allocation Endorsement".

Printed/Issued On:  **01/18/2022**

Page 2

4. The breakdown of the additional premium is as follows:

| | |
|---|---|
| AMR-56365-05: | $130.00 |
| AMP7531173-05: | $23.00 |
| MSP-23280-05: | $173.00 |
| CPP1009980-05: | $155.00 |
| 10T029659-06889-21-05: | $62.00 |
| USI-19829-05: | $62.00 |
| LEX-014709549-05: | $84.00 |
| HAN-16628-05: | $47.00 |
| ORAMPR002325-04: | $47.00 |
| GVS-14140-00: | $65.00 |
| TSAMPR0003612-00: | $107.00 |

All other terms and conditions of the policy shall remain unchanged.

Printed/Issued On: **01/18/2022**

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  1/1/2022
Endorsement No:  3

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".
The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.
The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $100,000 excess of | Deductibles | CYB | QBE21 | QBE | MSP-23280-05 | $100,000 | 100.0000% | $0.000 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | GSI21 | GSI | 10T029659-05889-21-05 | $3,279,135 | 6.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | GSI21 | GSI | 10T029659-05889-21-05 | $3,279,135 | 6.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | XLA21-TECH | IndianH | AMP7531173-05 | $1,261,206 | 2.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | XLA21-TECH | IndianH | AMP7531173-05 | $1,261,206 | 2.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | B123021AMR1022 | Lloyds | AMR-56365-05 | $756,723 | 1.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,765,688 | 3.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | B123021AMR253-2 | Lloyds | AMR-56365-05 | $3,531,376 | 7.0000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | B123021AMR1022 | Lloyds | AMR-56365-05 | $756,723 | 1.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | NW,Q | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,765,688 | 3.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | NW,Q | B123021AMR252 | Lloyds | AMR-56365-05 | $3,531,376 | 7.0000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | STF21-TECH | Steadfast | CPP1009980-05 | $8,323,958 | 16.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | STF21-TECH | Steadfast | CPP1009980-05 | $8,323,958 | 16.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | GVS21 | GVS | GVS-14140-00 | $3,531,376 | 7.0000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | GVS21 | GVS | GVS-14140-00 | $3,531,376 | 7.0000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | HAN21 | HAN | HAN-16626-05 | $2,522,412 | 5.0000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | HAN21 | HAN | HAN-16626-05 | $2,522,412 | 5.0000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | LEX21 | LEX | LEX-014709549-05 | $4,540,341 | 9.0000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | LEX21 | LEX | LEX-014709549-05 | $4,540,341 | 9.0000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | QBE21 | QBE | MSP-23280-05 | $9,332,923 | 18.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | QBE21 | QBE | MSP-23280-05 | $9,332,923 | 18.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | ORU21 | ORU | ORAMPR002325-04 | $2,522,412 | 5.0000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | ORU21 | ORU | ORAMPR002325-04 | $2,522,412 | 5.0000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | TSIC21 | TSIC | TSAMPR0003612-00 | $5,801,546 | 11.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | TSIC21 | TSIC | TSAMPR0003612-00 | $5,801,546 | 11.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | AR EXCL NW | USI21 | USI | USI-19829-05 | $3,279,135 | 6.5000% | $0.213 |
| $50,448,230 excess of | Deductibles | NW,Q | USI21 | USI | USI-19829-05 | $3,279,135 | 6.5000% | $0.542 |
| $50,448,230 excess of | Deductibles | T | B123020AMR917-2 | Lloyds | AMR-56365-05 | $50,448,230 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | HAN | HDI Global Specialty SE |
| | Named Storm Flood | NF | ORU | Old Republic Union Insurance Company |
| | Flood | F | GVS | GeoVera Specialty Insurance Company |
| | All Other Flood | AOF | TSIC | Transverse Specialty Insurance Company |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber/Data Compromise or Cyber Suite | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #           <u>868399</u>

by

_[signature]_

Authorized Signature

## CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:** 868399

**Certificate #:** AMR-56365-05

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 510 | KLN |
| 2987 | BRT |
| 510 | KLN |
| 1886 | QBP |
| 33 | HIS |
| 1880 | TMK |
| 1618 | KII |
| 510 | KLN |
| 1880 | TMK |
| 2988 | BRT |
| 1225 | AES |
| 2121 | ARG |

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

**ENDORSEMENT 2**

This endorsement, effective on          07/16/2021          , at 12:01 A.M. standard time, forms a part of:

Account No.   868399

| | |
|---|---|
| Certain Underwriters at Lloyds, London | AMR-56365-05 |
| Indian Harbor Insurance Company | AMP7531173-05 |
| QBE Specialty Insurance Company | MSP-23280-05 |
| Steadfast Insurance Company | CPP1009980-05 |
| General Security Indemnity Company of Arizona | 10T029659-06889-21-05 |
| United Specialty Insurance Company | USI-19829-05 |
| Lexington Insurance Company | LEX-014709549-05 |
| HDI Global Specialty SE | HAN-16628-05 |
| Old Republic Union Insurance Company | ORAMPR002325-04 |
| GeoVera Specialty Insurance Company | GVS-14140-00 |
| Transverse Specialty Insurance Company | TSAMPR0003612-00 |

Issued to:     Dupuy Storage & Forwarding, LLC

By:            See Contract Allocation Endorsement AR CA

_____

Authorized Representative

In consideration of a total additional premium of $5,169.00, it is understood and agreed
the policy is amended as follows:

1. The following location is amended:

   13601 Old Gentilly Road
   New Orleans, LA, 70126
   Building Values are increased from $2,800,000 to $3,500,000.

2. The Total Insurable Value is increased to $50,198,230 from $49,498,230, as per
   the latest Statement of Values on file.

3. Item A.2. Limit of Liability on Form COMPASS SUP DECL 04 18 "Compass Supplemental
   Declarations" is deleted in its entirety and replaced with the following:

   A.2. $50,198,230 maximum limit of liability.

4. Form AR CA 03 18 "Contract Allocation Endorsement" is deleted in its entirety and
   replaced with the attached revised AR CA 03 18 "Contract Allocation Endorsement".

Page 2

5. The breakdown of the total additional premium is as follows:

| | |
|---|---|
| AMR-56365-05: | $695.00 |
| AMP7531173-05: | $127.00 |
| MSP-23280-05: | $941.00 |
| CPP1009980-05: | $839.00 |
| 1OT029659-06889-21-05: | $331.00 |
| USI-19829-05: | $331.00 |
| LEX-014709549-05: | $457.00 |
| HAN-16628-05: | $254.00 |
| ORAMPR002325-04: | $254.00 |
| GVS-14140-00: | $356.00 |
| TSAMPR0003612-00: | $584.00 |

All other terms and conditions of the policy remain unchanged.

## CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  7/16/2021
Endorsement No: 2

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".
The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.
The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $100,000 excess of | Deductibles | CYB | QBE21 | QBE | MSP-23280-05 | $100,000 | 100.0000% | $0.000 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | GSI21 | GSI | 10T029659-06889-21-05 | $3,262,885 | 6.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | GSI21 | GSI | 10T029659-06889-21-05 | $3,262,885 | 6.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | XLA21-TECH | IndianH | AMP7531173-05 | $1,254,956 | 2.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | XLA21-TECH | IndianH | AMP7531173-05 | $1,254,956 | 2.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | B123021AMR1022 | Lloyds | AMR-56365-05 | $752,973 | 1.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,756,938 | 3.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | B123021AMR253-2 | Lloyds | AMR-56365-05 | $3,513,876 | 7.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | B123021AMR1022 | Lloyds | AMR-56365-05 | $752,973 | 1.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | NW,Q | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,756,938 | 3.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | NW,Q | B12302\1AMR252 | Lloyds | AMR-56365-05 | $3,513,876 | 7.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | STF21-TECH | Steadfast | CPP1009980-05 | $8,282,708 | 16.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | STF21-TECH | Steadfast | CPP1009980-05 | $8,282,708 | 16.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | GVS21 | GVS | GVS-14140-00 | $3,513,876 | 7.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | GVS21 | GVS | GVS-14140-00 | $3,513,876 | 7.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | HAN21 | HAN | HAN-16628-05 | $2,509,912 | 5.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | HAN21 | HAN | HAN-16628-05 | $2,509,912 | 5.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | LEX21 | LEX | LEX-014709549-05 | $4,517,841 | 9.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | LEX21 | LEX | LEX-014709549-05 | $4,517,841 | 9.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | QBE21 | QBE | MSP-23280-05 | $9,286,673 | 18.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | QBE21 | QBE | MSP-23280-05 | $9,286,673 | 18.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | ORU21 | ORU | ORAMPR002325-04 | $2,509,912 | 5.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | ORU21 | ORU | ORAMPR002325-04 | $2,509,912 | 5.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | TSIC21 | TSIC | TSAMPR0003612-00 | $5,772,796 | 11.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | TSIC21 | TSIC | TSAMPR0003612-00 | $5,772,796 | 11.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | USI21 | USI | USI-19829-05 | $3,262,885 | 6.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | USI21 | USI | USI-19829-05 | $3,262,885 | 6.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | T | B123020AMR917-2 | Lloyds | AMR-56365-05 | $50,198,230 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| **SYMBOLS USED HEREIN:** | **CAUSE OF LOSS** | **SYMBOL** | **CODE** | **COMPANY** |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | HAN | HDI Global Specialty SE |
| | Named Storm Flood | NF | ORU | Old Republic Union Insurance Company |
| | Flood | F | GVS | GeoVera Specialty Insurance Company |
| | All Other Flood | AOF | TSIC | Transverse Specialty Insurance Company |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber/Data Compromise or Cyber Suite | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| **Risk** | **Basis of Limits** |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #                    <u>868399</u>

by

*[signature]*

Authorized Signature

**CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List**

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**   868399

**Certificate #:**   AMR-56365-05

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 510 | KLN |
| 2987 | BRT |
| 510 | KLN |
| 1886 | QBP |
| 33 | HIS |
| 1880 | TMK |
| 1618 | KII |
| 510 | KLN |
| 1880 | TMK |
| 2988 | BRT |
| 1225 | AES |
| 2121 | ARG |

## CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  8/29/2021

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".
The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.
The security is as noted below.

| LAYER OF PARTICIPATITION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATITION | | rate |
|---|---|---|---|---|---|---|---|---|
| $100,000 excess of | Deductibles | CYB | QBE21 | QBE | MSP-23280-05 | $100,000 | 100.0000% | $0.000 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | GSI21 | GSI | 10T029659-05889-21-05 | $3,262,885 | 6.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | GSI21 | GSI | 10T029659-05889-21-05 | $3,262,885 | 6.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | XLA21-TECH | IndianH | AMP7531173-05 | $1,254,956 | 2.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | XLA21-TECH | IndianH | AMP7531173-05 | $1,254,956 | 2.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | B123021AMR1022 | Lloyds | AMR-56365-05 | $752,973 | 1.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,756,938 | 3.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | B123021AMR253-2 | Lloyds | AMR-56365-05 | $3,513,876 | 7.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | B123021AMR1022 | Lloyds | AMR-56365-05 | $752,973 | 1.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | NW,Q | B123021AMR1348 | Lloyds | AMR-56365-05 | $1,756,938 | 3.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | NW,Q | B123021AMR252 | Lloyds | AMR-56365-05 | $3,513,876 | 7.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | STF21-TECH | Steadfast | CPP1009980-05 | $8,282,708 | 16.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | STF21-TECH | Steadfast | CPP1009980-05 | $8,282,708 | 16.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | GVS21 | GVS | GVS-14140-00 | $3,513,876 | 7.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | GVS21 | GVS | GVS-14140-00 | $3,513,876 | 7.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | HAN21 | HAN | HAN-16628-05 | $2,509,912 | 5.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | HAN21 | HAN | HAN-16628-05 | $2,509,912 | 5.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | LEX21 | LEX | LEX-014709549-05 | $4,517,841 | 9.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | LEX21 | LEX | LEX-014709549-05 | $4,517,841 | 9.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | QBE21 | QBE | MSP-23280-05 | $9,286,673 | 18.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | QBE21 | QBE | MSP-23280-05 | $9,286,673 | 18.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | ORU21 | ORU | ORAMPR002325-04 | $2,509,912 | 5.0000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | ORU21 | ORU | ORAMPR002325-04 | $2,509,912 | 5.0000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | TSIC21 | TSIC | TSAMPR0003612-00 | $5,772,796 | 11.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | TSIC21 | TSIC | TSAMPR0003612-00 | $5,772,796 | 11.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | AR EXCL NW | USI21 | USI | USI-19829-05 | $3,262,885 | 6.5000% | $0.214 |
| $50,198,230 excess of | Deductibles | NW,Q | USI21 | USI | USI-19829-05 | $3,262,885 | 6.5000% | $0.543 |
| $50,198,230 excess of | Deductibles | T | B123020AMR917-2 | Lloyds | AMR-56365-05 | $50,198,230 | 100.0000% | $0.000 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils.  The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved.  Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security.  Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts.  The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyds |
| | Broad | BR | IndianH | Indian Harbor Insurance Company |
| | Special | SP | QBE | QBE Specialty Insurance Co. |
| | All Risk excl F/Q | AR | Steadfast | Steadfast Insurance Company |
| | Difference in Conditions | DIC | GSI | General Security Indemnity Company of Arizona |
| | Windstorm and Hail | WH | USI | United Specialty Insurance Company |
| | Named Windstorm | NW | LEX | Lexington Insurance Company |
| | All Other Windstorm | AOW | HAN | HDI Global Specialty SE |
| | Named Storm Flood | NF | ORU | Old Republic Union Insurance Company |
| | Flood | F | GVS | GeoVera Specialty Insurance Company |
| | All Other Flood | AOF | TSIC | Transverse Specialty Insurance Company |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | | |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber/Data Compromise or Cyber Suite | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | Any One Occurrence |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          <u>868399</u>

by

Authorized Signature

## CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:** 868399

**Certificate #:** AMR-56365-05

| Syndicate Number | Syndicate Abbreviation |
| --- | --- |
| 510 | KLN |
| 2987 | BRT |
| 510 | KLN |
| 1886 | QBP |
| 33 | HIS |
| 1880 | TMK |
| 1618 | KII |
| 510 | KLN |
| 1880 | TMK |
| 2988 | BRT |
| 1225 | AES |
| 2121 | ARG |